UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

ABBOTT LABORATORIES, ABBOTT : 
DIABETES CARE INC., and ABBOTT :
DIABETES CARE SALES CORPORATION, :     15 Civ. 05826 (CBA) (MDG)
                                         :
                   Plaintiffs, :     **SECOND AMENDED COMPLAINT**
                                         :     **AND JURY DEMAND**
        -against- :
                                           :

ADELPHIA SUPPLY USA; YUDAH NEUMAN :
A/K/A LENNY NEUMAN; REUVEN SOBEL :
A/K/A CHAIM SOBEL; MOSES NEUMAN; :
SAVE RITE MEDICAL.COM LLC; MARC :
KAPLAN; MATRIX DISTRIBUTORS, INC.; :
CHRISTOPHER BENEVENT; SETH GRUMET; :
H&H WHOLESALE SERVICES, INC.; :
HOWARD GOLDMAN; LORI GOLDMAN; :
PAPOUTSANIS USA, LLC D/B/A VIP :
INTERNATIONAL – DROGARIS; GEORGE :
DROGARIS; OSD CAPITAL, INC. F/K/A :
FARNES ENTERPRISES CORPORATION; :
OVERSTOCKDRUGSTORE.COM LLC D/B/A/ :
SIMPLEMED SUPPLY; RICK EVENSON; :
BUDGET HEALTH CORPORATION D/B/A :
BUDGET DRUGS PHARMACY; LORI BLUE; :
ANTHONY MEOLA; MARK D. HENKIN; :
DREAM CEREAL INC. D/B/A :
DIABETESSUPPLIES4LESS.COM; DOUGLAS :
HAUCK; BERKELEY DRUGS INC.; MAJID :
HAMEED; EUGENE HA; CAREWAY :
PHARMACY INC.; ANATOLIY FAIN; :
HARRICO-GALLER DRUG CORPORATION; :
JOHN GALLAGHER; HABER J&N INC. D/B/A :
THE MODERN CHEMIST; NAOMI HABER; :
JERRY HABER; NORSTRAND PHARMACY, :
LLC D/B/A VANDERVEER PHARMACY; :
SARATHCHANDRA ADUSUMALLI; :
HEMAGIRI GAYAM; LEV RX CORP. D/B/A :
KIRA'S PHARMACY; KIRA LEVKOUSKAYA; :
ELIYAHUS PHARMACY, INC.; ILIAS :
                                           :
                                           :
                                           :

MLABASATI; GLOBAL CARE PHARMACY,       :
INC.; D.K.Y. ENTERPRISES, INC. D/B/A 8TH   :
AVENUE PHARMACY; KIM PING JIM; TGIS   :
PHARMACY, INC. D/B/A SUNRISE FAMILY   :
PHARMACY; SAJID JAVED; BAY PHARMACY :
INC.; IRENE PIKER; B & T MARLBORO       :
PHARMACY, INC.; ANATOLY                 :
GOROKHOVSKY; LARKE DRUGS, INC. D/B/A :
110 PHARMACY & SURGICAL; PRASAD       :
VENIGALLA; LA RUCHE PHARMACY, INC.;   :
SUNIL B. PATEL; ESTATES PHARMACY, INC.;:
MOHAMMED NURUDDIN; NOVEX AMERICA;:
DENNIS CANTOR; TRI-STATE MEDICAL       :
SUPPLIES EQUIP. CORP.; ERWIN           :
GANZFRIED; MORDECHAI KRITZLER;         :
VALUE WHOLESALE, INC.; DIANE BROWN;   :
MEDICAL DISCOUNT SERVICES, INC.; BRIAN:
MESIKA; DARRYL SCHREIBER; XPRESS       :
MEDICAL SUPPLIES CORP.; MOHAMMED     :
PATEL; ZUBEDA MOTI; MUHAMMAD ARIF;   :
SAPS DRUG WHOLESALE, INC.; VILAS       :
ASMIN; RAJESH AMIN; NIMESH AMIN;       :
IXTHUS MEDICAL SUPPLY, INC.; KARL       :
KUNSTMAN; COMPLY USA INC.; IRANY NIR; :
OFEK MESSIKA; KIMBERLY PASZKIEWICZ;   :
DRUGPLACE, INC.; PAUL LEIGHT; KEVIN     :
SINGER; HMF DISTRIBUTING INC.;          :
WHOLESALE DIABETIC SUPPLIES INC.;       :
ROSS TRAGER; MATTHEW FRANK; PRIMED   :
PHARMACEUTICALS LLC; VINCENT           :
MONDENADO; MATTHEW ZEIGLER; NE       :
MEDICAL SUPPLY USA, INC.; DANIELLE       :
WAYNE; NICK WAYNE; TAS MEDICAL         :
SUPPLY, INC.; TZVI SKLARZ; PRODUCT       :
PERFORMANCE COMPANY, INC.; JERROLD   :
HERMAN; STEPHEN HERMAN; MED-PLUS,     :
INC.; ROGER MEZHIBOVSKY; DELRAY         :
MARKETING, LLC; STEVE MICHAELS;         :
DIABETIC PHARMACY SOLUTIONS, LLC;       :
KARL BUCHOLZ; GLOBE WANTED;             :
MASSALAH TRADING U.S.A. LTD.; SAAD     :
(SAM) HADDAD HAVEMEYER PHARMACY     :
INC.; MICHAEL BASSANELL; and JOHN DOES :
1-10,                                     :
                                          :
                        Defendants.       :
                                          :
--------------------------------------------------------------x

Plaintiffs Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation (collectively, "Abbott"), by and through their attorneys, Patterson Belknap Webb & Tyler LLP, for their Complaint against Defendants Adelphia Supply USA; Yudah Neuman a/k/a Lenny Neuman; Reuven Sobel a/k/a Chaim Sobel; Moses Neuman; Save Rite Medical.com LLC; Marc Kaplan; Matrix Distributors, Inc.; Christopher Benevent; Seth Grumet; H&H Wholesale Services, Inc.; Howard Goldman; Lori Goldman; Papoutsanis USA, LLC d/b/a VIP International – Drogaris; George Drogaris; Overstockdrugstore.com LLC d/b/a/ SimpleMed Supply; Rick Evenson; Budget Health Corporation d/b/a Budget Drugs Pharmacy; Lori Blue; Anthony Meola; Mark D. Henkin; Dream Cereal Inc. d/b/a Diabetessupplies4less.com; Douglas Hauck; Berkeley Drugs Inc.; Majid Hameed; Eugene Ha; Careway Pharmacy Inc.; Anatoliy Fain; Harrico-Galler Drug Corporation; John Gallagher; Haber J&N Inc. d/b/a The Modern Chemist; Naomi Haber; Jerry Haber; Norstrand Pharmacy, LLC d/b/a Vanderveer Pharmacy; Sarathchandra Adusumalli; Hemagiri Gayam; Lev RX Corp. d/b/a Kira's Pharmacy; Kira Levkouskaya; Eliyahus Pharmacy, Inc.; Ilias Mlabasati; Global Care Pharmacy, Inc.; D.K.Y. Enterprises, Inc. d/b/a 8th Avenue Pharmacy; Kim Ping Jim; TGIS Pharmacy, Inc. d/b/a Sunrise Family Pharmacy; Sajid Javed; Bay Pharmacy Inc.; Irene Piker; B & T Marlboro Pharmacy, Inc.; Anatoly Gorokhovsky; Larke Drugs, Inc. d/b/a 110 Pharmacy & Surgical; Prasad Venigalla; La Ruche Pharmacy, Inc.; Sunil B. Patel; Estates Pharmacy, Inc.; Mohammed Nuruddin; Novex America; Dennis Cantor; Tri-State Medical Supplies Equip. Corp.; Erwin Ganzfried; Mordechai Kritzler; Albert Kritzler; Value Wholesale, Inc.; Medical Discount Services, Inc.; Medical Discount Services, LLC d/b/a Medical Wholesale Supplies; Brian Mesika; Xpress Medical Supplies Corp.; Muhammad Arif; SAPS Drug Wholesale, Inc.; Vilas Amin; Rajesh Amin; Nimesh Amin; Ixthus Medical Supply, Inc.; Karl Kunstman; Comply

-3-

USA Inc.; Irany Nir; Ofek Messika; Kimberly Paszkiewicz; Drugplace, Inc. d/b/a International Consumer Corp; Nachman Neil Feig; Able Wholesalers of Tennessee; Paul Leight; Kevin Singer; HMF Distributing Inc.; Wholesale Diabetic Supplies Inc.; Matthew Frank; Primed Pharmaceuticals LLC; Matthew Zeigler; N.E. Medical Supply USA, Inc.; Danielle Wayne; Nick Wayne; TAS Medical Supply, Inc.; Tzvi Sklarz; Product Performance Company, Inc.; Jerrold Herman; Stephen Herman; Med-Plus, Inc.; Roger Mezhibovsky; Delray Marketing, LLC; Steve Michaels; Diabetic Pharmacy Solutions, LLC; Karl Bucholz; Globe Wanted; Massalah Trading U.S.A. Ltd.; Saad (Sam) Haddad; Havemeyer Pharmacy Inc.; Michael Bassanell; Amexpo International, LLC; Hironori Mitsuishi; Bob-Bila Distributors, Inc.; Goolam Sheikh; Coolrelic, Inc.; Ralph Amato; E-Pharm Wholesalers, Inc.; Eduardo Gil; G&P Supplies, Inc.; Harmanpreet Bal; Gurpreet Singh; Bishan Singh Ghotra; Deals2000 LLC d/b/a Justdiabeticteststrips.com; Steven W. Laba; Lightbox Medical LLC; Jonathon Nikolas Woods; Magchop, LLC; Kenneth Ruiz; Noemi Ruiz; YS Marketing Inc. f/k/a NuMed Pharma Inc.; Joel Silberstein; Pharma Supply, Inc.; Oliver Suess; Steven Thuss; Power Distribution Enterprises LLC; Stephen M. Krause; Savoy Medical Products, LLC d/b/a Savoy Medical Supply Co.; Guy Savia; Medworld Supply Inc. f/k/a SP Dist. Inc.; Shie Greenfield; Chaim Greenfield; Kimberly Stevens d/b/a Strips2Cash; TDC Pharmaceutical Corporation, Inc. d/b/a Vital Health Pharmacy; Vinh Huynh; Hannah Nguyen; Dedac Nguyen; TDP Trading, Inc.; Terrific Care LLC d/b/a Deanwood Nursing; Tori Goldstein; YX Enterprices Corp; Yuxin Xie; Z Worldwide, Inc.; Sam Zighelboim; Pharmacy Wholesale Services Inc. a/k/a Professional Pharmacy Wholesale Services Inc.; Douglas Parker Rudderham; Advanced Pharmacy LLC; Gregory Peter Santulli; Benjamin Walvoord; Advanced Scripts Inc.; Larry E. Smith; Carepointe Health Care Corporation; Gregory S. Dixon; Childrens Clinic Pharmacy; Manifest Pharmacy LLC; Priority Care Pharmacy LLC a/k/a Priority Healthcare Corp.; Konie Minga; Goodlife Pharmacy Inc.; Fifty50 Medical, LLC;

George (Rick) Lynch; Stampmatic; Deepak Munshi; NPR BioMedical Inc.; Paritosh Mazumder; Pranam Healthcare LLC d/b/a San Pedro Pharmacy Inc.; Krunal Vasani; Keyur Shah; Lehigh Pharmacy & Supplies, Inc. d/b/a Cape Pharmacy & Supplies; Stephen M. Krause; Marleny Canete; M & L Brothers Pharmacy, Inc.; Leslie Stewart Jones; Medical Care Supplies Inc.; Perfecto F. Hallon; Physician Choice Pharmacy LLC; Jason Grama; Casharim Trading a/k/a Cashrim; Raanan Cohen; Express Chemist; John Seal; Dennis Charles Pay; Rosemary Elizabeth Ann Pay; FCL Health Solutions Ltd.; Kulbir Singh Sohi; Jasvir Singh Sohi; Globalmed Limited a/k/a Globalmed Pharmaceutical Wholesaler; Paul Michael Capper; Product Trade Services Ltd.; Nigel Huw Bush; David John Tipp; Smartway Pharmaceuticals Ltd.; Smartway PW Holdings Ltd.; Kiri Patel; Bhanumati Patel; Danny Katz; David Strathy d/b/a Bargain Pawn; Gregory Sargent; NWHOLESALEDEALS, INC.; Hsiu Sargent; Thomas Gulik; Insight Design, Inc.; Anthony Kvenvold; Wynne Treanor-Kvenvold; Carl C. Telander; Attila Kekesi; Pat Kekesi; Astute Healthcare Limited d/b/a e-net solution; Hetasveeben Mahendrabhai Vanapariya; Jigal Patel a/k/a Jignal Patel; MISAR LLC; Brian Boeshart; Leslie Boeshart; Jacqueline Herrera; Valley Liquidation Services LLC d/b/a VLS, LLC; Patricia Herman; Clinton Herman; Jennifer Herman; Sherwood Prime, Inc. d/b/a Sherwood Medical Supplies; Nouri Ftiha; Premier Equipment Solutions, Inc.; Peter E. Sutulov; Trusted Medical Supply, LLC; Dwayne Porter; Danjal Hansen; Product Ltd.; Erik Berg; Tiffany Riggs; Leonid Beigelman; National Medical Management Inc.; Issa Kashou; Edward Connell; Yusuf Muse a/k/a Yusuf Mohamed; Ran Lev; Sharine Xuan; Chaoying Xuan; Brian McClelland; James H. Redecopp; Christopher Aarons; Avi Frankman; Johnny K. Chan; Ashraf Awad; Jiri Svec; Ella Sela d/b/a ELLA'S VISION; Konstantinos Polychronopoulos; Joseph Karas; Laurynas Lemesovas; Tadas Lemesovas; Luis Santiago; Spyridon Psonis d/b/a Parapharmacy Store; N Hosking & S Duffell d/b/a Towers Pharmacy; Simon R. Duffell; Neil J. Hosking;  Raleigh Paolella-Titschinger; Al Gray d/b/a S

D.'FROG; Manish Mittal; Absolute Freight Services, Inc.; Luis Soto; 86th Street Community Pharmacy; Gary Kagan; Vickie Martino; Amin Pharmacy, Inc.; Monsur Chowdhury; Desai's Pharmacy Inc.; Bhagvat Jani; N A & S Drugs, Inc. d/b/a Falcon Health-Mart Drugs; Diptibahen Patel; Lafayette Drugs, Inc.; William Semaan; Medex Supply Distributors Inc.; Chaya Braish; Moshe Braish; East Tremont Pharmacy Inc.; Lubna Arshad; Mohammad Arshad; An-Noor Pharmacy Inc.; Stephanie Huq; Mohammad Mujjahid ul Huq; Delwar Kahn; 6122 Pharmacy, Inc.; Kong Cheung a/k/a Kong Carl Cheung Tung; Bell Apothecary, Inc.; Joyce Mogil; Mark Mogil; Shrinathji Rx Inc. d/b/a Lansdale Rx Pharmacy; Alpeshkumar Vasani; Maulik Shah; Bridesburg Pharmacy; Shenay Ussein; Nessin Ussein; Gabecare Direct Rx, Inc.; Santa Zawaideh; Discover Pharmacy Inc.; Nader Parsian; Glendale Prescription Center, Inc.; Steven Tammara; Randy Tammara; Oxford Pharmacy, Inc.; Jenny Nguyen; Thuy Pham a/k/a Dennis Pham a/k/a Huy Pham; QRx Pharmacy and Healthcare Supplies, Inc. d/b/a QRx2 Pharmacy & Medical Supplies Inc.; Sayed Raza a/k/a Syed Hasan; Total Pharmacy Inc. d/b/a EZ Pharmacy; Nabila Chaudhry; Qaiser Chaudhry; and John Does 1-10[1], allege as follows:

## NATURE OF THE ACTION

1.      This is an action for trademark and trade dress infringement, fraud, racketeering, unfair competition, and other illegal and wrongful acts brought against Defendants who have imported, distributed, and sold in the United States diverted international blood glucose test strips that are illegal to sell in the United States.

2.      Abbott sells medical equipment for diabetic patients, including the well-known FreeStyle® and FreeStyle Lite® blood glucose test strips (collectively, "FreeStyle test

---

[1] The original and first amended complaints in this action named Shmuel Lezell, Kevin Plumb, Robert Newmyer, John Fandetti, Maria Fandetti, Vincent Mondenado; Darryl Schreiber; Diane Brown; Ross Trager; OSD Capital, Inc.; Mohammed Patel; and Zubeda Moti as defendants.  Those defendants have been dismissed from the case without prejudice pursuant to Fed. R. Civ. P. 41 and therefore are not listed in the caption of this Complaint.

strips"), which are used by diabetics to monitor their blood glucose levels.  Millions of individuals with diabetes use FreeStyle test strips on a daily basis to monitor their blood sugar and help them control their disease.

       3.      In disregard of the law, Defendants are conspiring to import diverted international FreeStyle test strips whose labeling has not been cleared by regulators for sale in the United States and is likely to confuse U.S. consumers.

       4.      The Defendants are passing these unapproved test strips off to unsuspecting U.S. consumers to receive insurance reimbursements that they are not entitled to. In doing so, Defendants have defrauded and continue to defraud Abbott, other manufacturers of test strips, and insurance companies, third-party payors, and Medicaid and Medicare.

       5.      At the center of this conspiracy are wholesalers (the "Distributor Defendants") who import, market, and distribute large volumes of diverted international FreeStyle test strips for distribution to pharmacies (including the "Pharmacy Defendants" named below) throughout the United States.  The Pharmacy Defendants are marketing and selling the diverted FreeStyle test strips to U.S. consumers and submitting fraudulent reimbursement claims to insurance companies, Medicare, Medicaid, and other third-party payors, claiming to have sold domestic FreeStyle test strips, which, unlike diverted international test strips, are eligible for reimbursement.

       6.      These false submissions caused—and continue to cause—Abbott to pay out, wrongfully, millions of dollars in rebates.

       7.      Due to the differences between U.S. and international insurance, reimbursement, and rebate practices, Abbott sells FreeStyle test strips outside the United States at markedly lower list prices.  Defendants capitalize on these pricing differences to receive undeserved reimbursement payments from insurers.  Defendants further know that Abbott pays

-7-

rebates to insurers for those undeserved reimbursement payments.  The Distributor Defendants and Pharmacy Defendants have a long-standing relationship, through which they agreed to purchase diverted FreeStyle test strips from foreign countries at these lower prices and then dispense them to consumers at higher U.S. retail prices for the purpose of receiving fraudulent reimbursement payments from the consumers' insurers.  The Pharmacy Defendants complete the scheme, selling diverted international FreeStyle test strips to U.S. consumers whose test strip prescriptions are covered by a prescription benefit.  This prescription benefit covers the test strips' full retail price—minus any copayment by the consumer.  The prescription benefit reimbursements then being paid by the insurance companies are significantly higher than what Defendants actually paid for the diverted international product.  Defendants are reaping significant profits as a result.

8.   By diverting FreeStyle test strips meant for international sale, Defendants receive *both* lower-priced product *and* improper full-price U.S. reimbursements from insurers for selling FreeStyle test strips that do not qualify for those reimbursements.  Defendants' sales of diverted FreeStyle test strips do not qualify for the full U.S.-price prescription-benefit reimbursements obtained from the insurers because those reimbursements cover only retail U.S. FreeStyle test strips sold to consumers with a prescription, and not FreeStyle test strips diverted from international markets.

9.   Defendants are accomplishing this fraud by submitting falsified reimbursement claims to insurance companies and knowingly causing falsified rebate claims to be submitted to Abbott.  This boosts their profits at Abbott's loss.  But Abbott and the insurance companies are not the only victims of Defendants' conspiracy.

10.   Most troubling, Defendants' victims include the unsuspecting U.S. consumers who are purchasing diverted international FreeStyle test strips.

8780757v.1

11.     FreeStyle test strips intended for sale outside the United States, while functionally the same as FreeStyle test strips packaged and cleared for sale in the United States, are in fact not authorized for sale in the United States by the Food and Drug Administration ("FDA").  Diverted international test strips are not labeled to meet the FDA's requirements and are not sold by Abbott to U.S. customers.  Moreover, every box of retail FreeStyle test strips packaged for retail sale in the United States bear a specific National Drug Code ("NDC") number.  The NDC number is required for reimbursement.  Diverted international FreeStyle test strips do not have an NDC number and are not eligible for reimbursement in the United States.

12.     There are numerous material differences in package labeling and instructions for use between U.S. FreeStyle test strips and diverted international FreeStyle test strips.  These differences include:

- Every retail box of U.S. FreeStyle test strips has an NDC number.  Boxes of FreeStyle test strips packaged for sale outside the United States do not have an NDC number and are not eligible for marketing, promotional, reimbursement, or rebate advantages offered by Abbott or third-party payors in the United States.

- The instructional inserts for U.S. FreeStyle test strips and international FreeStyle test strips provide conflicting instructions as to where on the body a blood sample can be taken to perform a blood glucose test.  U.S. FreeStyle test strips are cleared by the FDA for testing at only three test sites:  finger; upper arm; and palm.  Diverted international test strips are approved for testing at a broader range of sites, including the back of hand, forearm, calf, and thigh.

- Every box of U.S. FreeStyle test strips provides a U.S. toll-free customer care phone number.  Diverted international FreeStyle test strips do not provide the U.S. toll-free number and instead have international numbers that are not generally accessible from the United States.

- U.S. FreeStyle test strips are accompanied by instructions written in English and Spanish.  Several FreeStyle test strips that are packaged for international sale do not include English or Spanish instructions; others include additional foreign languages.

- The handling and use instructions for diverted international FreeStyle test strips utilize units of measurement that are not used in U.S. FreeStyle test

strips instructions.

- The outer package labeling for U.S. and international FreeStyle test strips state the range of temperatures in which they can be safely stored. However, temperatures on the outside product packaging for diverted international FreeStyle test strips are displayed in degrees Centigrade, whereas the outside product packaging for U.S. FreeStyle test strips display degrees Fahrenheit and Centigrade.

- Packaging for diverted international FreeStyle test strips contains various symbols that are unfamiliar to U.S. consumers. The symbols are not present on U.S. retail FreeStyle test strip packaging and are prohibited by the FDA for use on in-home consumer-use packaging.

- The outer package label of U.S. FreeStyle test strips provides several FDA-required written warnings and instructions, including "Do not reuse" and "For *in vitro* diagnostic use". The outer package label of international FreeStyle test strips does not provide these written warnings.

13. These material differences render diverted international FreeStyle test strips misbranded and confusing. Some of them also raise potential health and safety concerns for diabetic users of FreeStyle test strips. And because the packaging of international FreeStyle test strips is not cleared by the FDA and includes instructions that have been specifically rejected by the FDA, sale of diverted international FreeStyle test strips can constitute a felony.[2]

14. Abbott takes great care to ensure that U.S. FreeStyle test strips are shipped to wholesalers and distributors under certain conditions designed to maintain the safety and integrity of the products. With diverted international FreeStyle test strips, like the ones sold by Defendants, Abbott has no assurance that such products are shipped and handled under optimum conditions.

15. Defendants' unauthorized importation, advertisement, and subsequent

---

[2] A medical device is "misbranded" if it is "false or misleading in any particular" or if its labeling does not offer "adequate directions for use." 21 U.S.C. § 352(a), (f). The sale of misbranded medical devices in the United States is a criminal offense under the Federal Food, Drug and Cosmetics Act. 21 U.S.C. §§ 331, 333, 352. Where, as here, the sale is done with an intent to defraud or mislead, the offense is punishable by up to three years' imprisonment. 21 U.S.C. § 331, 333. Also, as discussed below, the Defendants' actions constitute mail and wire fraud. 18 U.S.C. § 1343, 1341.

distribution causes, or is likely to cause, consumer confusion, mistake, and deception to the detriment of Abbott, as well as to the detriment of consumers, insurance companies, third-party payors, and Medicaid and Medicare.  As a result of Abbott's extensive branding, marketing, sales, and quality control efforts in the United States and around the world, patients in the United States expect a certain quality, packaging, and overall image from Abbott for FreeStyle test strips.  When such patients encounter the diverted international FreeStyle test strips, which bear certain of Abbott's trademarks but which are materially different from what U.S. patients expect, they are likely to be confused and, indeed, disappointed.  In addition, because Abbott's products are crucial to the health and well-being of the diabetic patients who rely on FreeStyle test strips for blood glucose testing, the material differences between diverted international FreeStyle test strips and U.S. FreeStyle test strips may pose risks to the unknowing and unsuspecting purchasers of diverted international FreeStyle test strips.  And the advertisement and sales of diverted international FreeStyle test strips cause great damage to Abbott and the goodwill of Abbott's valuable trademarks.

16.     As a result of their pattern of illegal acts, and as set forth further below, Defendants are liable to Abbott not only for fraud, trademark and trade dress infringement, and other common law claims, but also under the federal Racketeering Influenced and Corrupt Organizations Act ("RICO").

17.     Abbott initiated this lawsuit on October 9, 2015 by filing a complaint and moving for a temporary restraining order ("TRO") and a preliminary injunction to bar the named defendants from purchasing, selling, or otherwise using in commerce diverted international FreeStyle test strips.

18.     Also on October 9, 2015, the Honorable Dora L. Irizzary, United States District Judge for the Eastern District of New York, granted Abbott a TRO, finding that Abbott

had "amply demonstrated . . . a likelihood of success on the merits of their claims" and that "defendants['] actions have and will cause plaintiffs irreparable harm."

19.     After limited expedited discovery, the Honorable Carol Bagley Amon, Chief United States District Judge for the Eastern District of New York, held a two-day evidentiary hearing and granted Abbott's request for a preliminary injunction.  Chief Judge Amon found that Abbott "made clear showings that it is likely to succeed on the merits" of its trademark infringement claims and that "absent preliminary relief, [Abbott] will suffer irreparable harm."

20.     On November 20, 2015, Abbott amended its complaint, naming and seeking a TRO and preliminary injunction against over 50 additional Defendants.  Chief Judge Amon granted Abbott's second request for a TRO and, after holding a hearing on December 15, 2015, granted Abbott's request for a preliminary injunction against the newly-added defendants. Holding that the Court's prior findings "apply with equal force" to the new defendants, Chief Judge Amon rejected any new arguments as "not persuasive."

## PARTIES

### Plaintiffs

21.     Plaintiff Abbott Laboratories is a publicly-traded global healthcare company with a market value in excess of $60 billion and is organized under the laws of the State of Illinois, with its principal place of business at Abbott Park, Illinois.  Abbott Laboratories is engaged in the business of manufacturing and marketing health care products.

22.     Plaintiff Abbott Diabetes Care Inc. is a corporation organized under the laws of the State of Delaware, with its principal place of business at Alameda, California. Abbott Diabetes Care Inc. is a wholly-owned operating subsidiary of Abbott Laboratories. Abbott Diabetes Care Inc. is engaged in the business of developing and selling blood glucose

8780757v.1

monitoring systems, including blood glucose test strips.

23.     Plaintiff Abbott Diabetes Care Sales Corporation is a corporation organized under the laws of the State of Delaware, with its principal place of business at Alameda, California.  Abbott Diabetes Care Sales Corporation is a wholly-owned operating subsidiary of Abbott Diabetes Care Inc. and is engaged in the business of marketing and selling blood glucose monitoring systems, including blood glucose test strips, in the United States.

**Distributor Defendants**

24.     Defendant Adelphia Supply USA ("Adelphia"), formerly d/b/a Adelphia Supplies, Inc., is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 4111 Fort Hamilton Parkway, Brooklyn, New York 11219.  Upon information and belief, Adelphia also operates out of an adjacent address at 4109 Fort Hamilton Parkway, Brooklyn, New York 11219.

25.     Defendant Yudah Neuman a/k/a Lenny Neuman, upon information and belief, owns and operates Adelphia.  Yudah Neuman resides at 727 East 3rd Street, Unit 1, Brooklyn, New York 11218, with a principal place of business at 4111 Fort Hamilton Parkway, Brooklyn, New York 11219.   Yudah Neuman exercises control over Adelphia and is a moving, conscious, active force behind Adelphia's unlawful conduct.

26.     Defendant Reuven Sobel a/k/a Chaim Sobel is, upon information and belief, a principal and chief executive officer of Adelphia.  Sobel resides at 1251 47th Street, Apt. 1, Brooklyn, New York 11219, with a principal place of business at 4111 Fort Hamilton Parkway, Brooklyn, New York 11219.  Sobel exercises control over Adelphia and is a moving, conscious, active force behind Adelphia's unlawful conduct.

27.     Defendant Moses Neuman is, upon information and belief, an officer or agent of Adelphia.  Moses Neuman resides at 1181 44th Street, Brooklyn, New York 11219,

with a principal place of business at 4111 Fort Hamilton Parkway, Brooklyn, New York 11219. Moses Neuman exercises control over Adelphia and is a moving, conscious, active force behind Adelphia's unlawful conduct.

28.     Defendant Save Rite Medical.com LLC ("Save Rite") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 694 Myrtle Avenue, Suite 145, Brooklyn, New York 11205.

29.     Defendant Marc Kaplan is, upon information and belief, a principal and chief executive officer of Save Rite.  Kaplan resides at 168 10th Street, Brooklyn, New York 11215, with a principal place of business at 694 Myrtle Avenue, Suite 145, Brooklyn, New York 11250.  Kaplan exercises control over Save Rite and is a moving, conscious, active force behind Save Rite's unlawful conduct.

30.     Defendant Matrix Distributors, Inc. ("Matrix") is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business at 110 Tices Lane, Building A, Unit 5B, East Brunswick, New Jersey 08816.  Matrix distributes and sells diverted international FreeStyle test strips to residents of New Jersey.

31.     Defendant Christopher Benevent is, upon information and belief, president, general director, and director of Matrix.  Benevent resides at 430 East 65th Street, Apt. 3L, New York, New York 10065, with a principal place of business at 110 Tices Lane, Building A, Unit 5B, East Brunswick, New Jersey 08816.  Benevent exercises control over Matrix and is a moving, conscious, active force behind Matrix's unlawful conduct.

32.     Defendant Seth Grumet is, upon information and belief, a general partner, director, and president of Matrix.  Grumet resides at 1 Kings Court, Marlboro, New Jersey 07746, with a principal place of business at 110 Tices Lane, Building A, Unit 5B, East Brunswick, New Jersey 08816.  Grumet exercises control over Matrix and is a moving,

conscious, active force behind Matrix's unlawful conduct.

33.    Defendant H&H Wholesale Services, Inc. ("H&H") is, upon information and belief, a corporation organized under the laws of the State of Michigan, with a principal place of business at 1099 Rochester Road, Troy, Michigan 48083.

34.    Defendant Howard Goldman is, upon information and belief, the owner of H&H.  Howard Goldman resides at 2590 Kent Ridge Court, Bloomfield Hills, Michigan 48301, with a principal place of business at 1099 Rochester Road, Troy, Michigan 48083.  Howard Goldman exercises control over H&H and is a moving, conscious, active force behind H&H's unlawful conduct.

35.    Defendant Lori Goldman is, upon information and belief, the spouse of Howard Goldman, and, according to her self-reported LinkedIn profile, the marketing manager of H&H.  Lori Goldman resides at 2590 Kent Ridge Court, Bloomfield Hills, Michigan 48301, with a principal place of business at 1099 Rochester Road, Troy, Michigan 48083.  Lori Goldman exercises control over H&H and is a moving, conscious, active force behind H&H's unlawful conduct.

36.    Defendant Papoutsanis USA, LLC ("Papoutsanis USA") d/b/a VIP International – Drogaris ("VIP International") is, upon information and belief, a limited liability corporation organized under the laws of Florida with principal places of business at 15155 Michelangelo Boulevard #305, Delray Beach, Florida 33446 and 1796 Clove Road, Staten Island, New York 10304.  VIP International/Drogaris, Inc. was a corporation formerly registered under the laws of the State of New York, with a principal place of business at 1874 Clove Road, Staten Island, New York, 10304.

37.    Defendant George Drogaris is, upon information and belief, the owner and president of VIP International.  Drogaris resides and has a principal place of business at 15155

Michelangelo Boulevard #305, Delray Beach, Florida 33446.  Drogaris exercises control over VIP International and is a moving, conscious, active force behind VIP International's unlawful conduct.

38.      Defendant Overstockdrugstore.com LLC ("Overstockdrugstore.com") is, upon information and belief, a corporation organized under the laws of the State of Utah, with a principal place of business at 14832 S. Concorde Park Drive, Riverton, Utah 84065. Overstockdrugstore.com conducts business under the name SimpleMed Supply (collectively, with Overstockdrugstore.com, "SimpleMed"), which is an active "DBA" (Doing Business As) entity in Utah.

39.      Defendant Rick Evenson is, upon information and belief, the chief executive officer of SimpleMed.  Evenson resides at 1739 East Horizon Point Circle, Draper, Utah 84020, with a principal place of business at 14832 S. Concorde Park Drive, Riverton, Utah 84065.  Evenson exercises control over SimpleMed and is a moving, conscious, active force behind SimpleMed's unlawful conduct.

40.      Defendant Budget Health Corporation d/b/a Budget Drugs Pharmacy ("Budget Drugs") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 2500 East Hallandale Beach Boulevard, Suite P, Hallandale Beach, Florida 33009.

41.      Defendant Lori Blue, upon information and belief, is an officer for Budget Drugs.  Blue resides at 1135 Scarlet Oak Street, Hollywood, Florida 33019, with a principal place of business at 2500 East Hallandale Beach Boulevard, Suite P, Hallandale Beach, Florida 33009.  Blue exercises control over Budget Drugs and is a moving, conscious, active force behind Budget Drugs' unlawful conduct.

42.      Defendant Anthony Meola, upon information and belief, is an officer for

-16-

Budget Drugs.  Meola resides at 7641 NW 13th Court, Plantation, Florida 33322, with a principal place of business at 2500 East Hallandale Beach Boulevard, Suite P, Hallandale Beach, Florida 33009.  Meola exercises control over Budget Drugs and is a moving, conscious, active force behind Budget Drugs' unlawful conduct.

43.     Defendant Mark D. Henkin, upon information and belief, is an officer for Budget Drugs.  Henkin resides at 2454 Andros Lane, Fort Lauderdale, Florida 33312, with a principal place of business at 2500 East Hallandale Beach Boulevard, Suite P, Hallandale Beach, Florida 33009.  Henkin exercises control over Budget Drugs and is a moving, conscious, active force behind Budget Drugs' unlawful conduct.

44.     Defendant Dream Cereal Inc. d/b/a Diabetessupplies4less.com ("Diabetes Supplies 4 Less") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 562 East Woolbright Road, Suite 202, Boynton Beach, Florida 33435.

45.     Defendant Douglas Hauck is, upon information and belief, Diabetes Supplies 4 Less's president.  Hauck resides at 125 Marlin Drive, Boynton Beach, Florida 33435. Hauck exercises control over Diabetes Supplies 4 Less and is a moving, conscious, active force behind Diabetes Supplies 4 Less's unlawful conduct.

46.     Defendant Novex America ("Novex") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 4787 Quiet Oaks Trail, Julian, California 92036.

47.     Defendant Dennis Cantor is, upon information and belief, the principal of Novex. Cantor exercises control over Novex and is the moving, conscious, active force behind Novex's unlawful conduct.  Cantor resides at 4787 Quiet Oaks Trail, Julian, California 92036.

48.     Defendant Tri-State Medical Supplies Equip. Corp. ("Tri-State") is, upon

information and belief, a corporation organized under the laws of the state of New York, with a

principal place of business of 907 Driggs Avenue, Suite 2-A, Brooklyn, New York 11211.

49.     Defendant Erwin Ganzfried is, upon information and belief, a principal of

Tri-State.  Ganzfried exercises control over Tri-State and is a moving, conscious, active force

behind Tri-State's unlawful conduct.  Ganzfried resides at 17 Kaufman Ct, Monsey, New York

10952.

50.     Defendant Mordechai Kritzler is, upon information and belief, a principal

of Tri-State.  Mordechai Kritzler exercises control over Tri-State and is a moving, conscious,

active force behind Tri-State's unlawful conduct.  Mordechai Kritzler resides at 5916 19th Ave.,

Apt. 1, Brooklyn, New York 11204.

51.     Defendant Albert Kritzler is, upon information and belief, a principal of

Tri-State.  Albert Kritzler exercises control over Tri-State and is a moving, conscious, active

force behind Tri-State's unlawful conduct.  Albert Kritzler resides at 907 Driggs Avenue, Apt.

2A, Brooklyn, New York 11211.

52.     Defendant Value Wholesale, Inc. ("Value Wholesale") is, upon

information and belief, a corporation organized under the laws of the state of New York, with a

principal place of business of 1316 60th Street, Brooklyn, New York 11219.

53.     Defendant Medical Discount Services, Inc. is, upon information and

belief, a corporation organized under the laws of the State of Florida, with a principal place of

business at 10567 NW 53rd Street, Sunrise, Florida 33351.

54.     Defendant Medical Discount Services, LLC d/b/a Medical Wholesale

Supplies is, upon information and belief, a corporation organized under the laws of the State of

Ohio, with a principal place of business at 600 Superior Avenue, Suite 300, Cleveland, Ohio

44114.

55.     Defendant Brian Mesika is, upon information and belief, a principal of Medical Discount Services, Inc. and Medical Discount Services, LLC (collectively, "Medical Discount Services").  Mesika exercises control over Medical Discount Services and is a moving, conscious, active force behind Medical Discount Services' unlawful conduct.  Mesika resides at 2816 NE 10TH Ter., Wilton Manors, Florida 33334.

56.     Defendant Xpress Medical Supplies Corp., d/b/a Payless Distributors ("Payless") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 5208 Grand Avenue, Room 201, Maspeth, New York 11378.

57.     Defendant Muhammad Arif is, upon information and belief, a principal of Payless.  Arif exercises control over Payless and is a moving, conscious, active force behind Payless's unlawful conduct.  Arif resides at 10 Carriage Lane, Roslyn Heights, New York 11577.

58.     Defendant SAPS Drug Wholesale, Inc. ("SAPS") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 651-55 Timpson Place, Bronx, New York 10455.

59.     Defendant Vilas Amin is, upon information and belief, a principal of SAPS.  Vilas Amin exercises control over SAPS and is a moving, conscious, active force behind SAPS's unlawful conduct.  Vilas Amin resides at 34 Netherwood Dr., Albertson, New York 11507.

60.     Defendant Rajesh Amin is, upon information and belief, a principal of SAPS.  Rajesh Amin exercises control over SAPS and is a moving, conscious, active force behind SAPS's unlawful conduct.  Rajesh Amin resides at 34 Netherwood Dr., Albertson, New York 11507.

61.     Defendant Nimesh Amin is, upon information and belief, a principal of

SAPS.  Nimesh Amin exercises control over SAPS and is a moving, conscious, active force behind SAPS's unlawful conduct.  Nimesh Amin resides at 34 Netherwood Dr., Albertson, New York 11507.

62.     Defendant Ixthus Medical Supply, Inc. ("Ixthus") is, upon information and belief, a corporation organized under the laws of the State of Wisconsin, with a principal place of business of 1006 Vine Street, Union Grove, Wisconsin 53182.

63.     Defendant Karl Kunstman is, upon information and belief, the principal of Ixthus.  Kunstman exercises control over Ixthus and is the moving, conscious, active force behind Ixthus's unlawful conduct.  Kunstman resides at 4730 80th Street, Franksville Wisconsin 53126.

64.     Defendant Comply USA Inc. ("Comply") is, upon information and belief, a corporation organized under the law of the State of Delaware, with a principal place of business of 1140 NE 7th Ave, Unit #4, Fort Lauderdale, Florida 33304.

65.     Defendant Irany Nir is, upon information and belief, a principal of Comply.  Nir exercises control over Comply and is a moving, conscious, active force behind Comply's unlawful conduct.  Nir resides at 4526 Azalia Drive, Tarzana, California 91356.

66.     Defendant Ofek Messika is, upon information and belief, a principal of Comply.  Messika exercises control over Comply and is a moving, conscious, active force behind Comply's unlawful conduct.  Messika resides at 6712 Franrivers Avenue, West Hills, California 91307.

67.     Defendant Kimberly Paszkiewicz is, upon information and belief, a principal of Comply.  Paszkiewicz exercises control over Comply and is a moving, conscious, active force behind Comply's unlawful conduct.  Paszkiewicz resides at 2810 SW 87th Ave Apt. 914, Davie, Florida 33328.

8780757v.1

68.     Defendant Drugplace, Inc. d/b/a International Consumer Corp ("Drugplace") is, upon information and belief, a corporation organized under the laws of the State of Kentucky, with a principal place of business of 321 Matthews Mill Road, Glasgow, Kentucky 42141.  Drugplace also operates out of an address at 7301 W Palmetto Park Road, 105B, Boca Raton, Florida 33433.

69.     Defendant Nachman Neil Feig is, upon information and belief, a principal of Drugplace.  Feig exercises control over Drugplace and is a moving, conscious, active force behind Drugplace's unlawful conduct.  Feig resides at 7172 Valencia Drive, Boca Raton, Florida 33433.

70.     Defendant Able Wholesalers of Tennessee ("Able Wholesalers") is, upon information and belief, a corporation organized under the laws of the State of Tennessee, with a principal place of business of 1329A Baptist World Center, Nashville, Tennessee 37207.

71.     Defendant Paul Leight is, upon information and belief, a principal of Able Wholesalers.  Leight exercises control over Able Wholesalers and is a moving, conscious, active force behind Able Wholesalers's unlawful conduct.  Leight resides at 60 Edgewater Dr., Coral Gables, Florida 33133.

72.     Defendant Kevin Singer is, upon information and belief, a principal of Able Wholesalers.  Singer exercises control over Able Wholesalers and is a moving, conscious, active force behind Able Wholesalers's unlawful conduct.  Singer resides at 3901 Laurel Oak Way, Fort Lauderdale, Florida 33312.

73.     Defendant HMF Distributing Inc. ("HMF") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business of 4530 N. Hiatus Road, Sunrise, Florida 33351.

74.     Defendant Wholesale Diabetic Supplies Inc. ("Wholesale Diabetic") is,

upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business of 4530 N. Hiatus Road, Sunrise, Florida 33351.

75.    Defendant Matthew Frank is, upon information and belief, a principal of HMF and of Wholesale Diabetic.  Frank exercises control over HMF and Wholesale Diabetic and is a moving, conscious, active force behind HMF's and Wholesale Diabetic's unlawful conduct.  Frank has a principal place of business at 4530 N. Hiatus Road, Sunrise, Florida 33351.

76.    Defendant Primed Pharmaceuticals LLC ("Primed") is, upon information and belief, a corporation organized under the law of the State of New Jersey, with a principal place of business of 1301 Corlies Ave, Neptune, New Jersey 07753.  Primed, upon information and belief, also operates out of an address at 4111 Fort Hamilton Parkway, Brooklyn, New York 11219.

77.    Defendant Matthew Zeigler is, upon information and belief, a principal of Primed.  Zeigler exercises control over Primed and is the moving, conscious, active force behind Primed's unlawful conduct.  Zeigler resides at 13 Johnston St., Oakhurst, New Jersey 07755.

78.    Defendant NE Medical Supply USA, Inc. ("NE Medical") is, upon information and belief, a corporation organized under the law of the State of Florida, with a principal place of business of 1721 Blount Road c/o Packman Distribution, Pompano Beach, Florida 33069.

79.    Defendant Danielle Wayne is, upon information and belief, the President of NE Medical.  Danielle Wayne exercises control over NE Medical and is a moving, conscious, active force behind NE Medical's unlawful conduct.  Danielle Wayne resides at 585 Ragged Mountain Drive, Charlottesville, Virginia 22903.

80.    Defendant Nick Wayne is, upon information and belief, a principal of NE Medical.  Nick Wayne exercises control over NE Medical and is a moving, conscious, active

force behind NE Medical's unlawful conduct.  Nick Wayne resides at 585 Ragged Mountain Drive, Charlottesville, Virginia 22903

81.     Defendant TAS Medical Supply, Inc. ("TAS Medical") is, upon information and belief, a corporation organized under the law of the State of New York, with a principal place of business of 1256 55th Street, Brooklyn, New York 11219.

82.     Defendant Tzvi Sklarz is, upon information and belief, the Chief Executive Officer of TAS Medical.  Sklarz exercises control over TAS Medical and is a moving, conscious, active force behind TAS Medical's unlawful conduct.  Sklarz resides at 1256 55th Street, Brooklyn, New York 11219.

83.     Defendant Product Performance Company ("Product Performance") is, upon information and belief, a corporation organized under the laws of the State of New York.

84.     Defendant Jerrold Herman is, upon information and belief, the Chief Executive Officer of Product Performance.  Jerrold Herman exercises control over Product Performance and is a moving, conscious, active force behind Product Performance's unlawful conduct.  Jerrold Herman resides at 24 Tree Hollow Court, Dix Hills, New York 11746.

85.     Defendant Stephen Herman is, upon information and belief, a principal of Product Performance.  Stephen Herman exercises control over Product Performance and is a moving, conscious, active force behind Product Performance's unlawful conduct.  Stephen Herman resides at 31 Tree Hollow Court, Dix Hills, New York 11746.

86.     Defendant Med-Plus Inc. ("Med-Plus") is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business of 39 Mayfield Avenue, Edison, New Jersey 08837.

87.     Defendant Roger Mezhibovsky is, upon information and belief, the Director of Med-Plus.  Mezhibovsky exercises control over Med-Plus and is a moving,

conscious, active force behind Med-Plus's unlawful conduct.  Mezhibovsky has a principal place of business at 39 Mayfield Avenue, Edison, New Jersey 08837.

88.    Defendant Delray Marketing, LLC ("Delray") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business of 20423 State Road 7, Suite 136, Boca Raton, Florida 33498.

89.    Defendant Steve Michaels is, upon information and belief, a principal of Delray.  Michaels exercises control over Delray and is a moving, conscious, active force behind Delray's unlawful conduct.

90.    Defendant Diabetic Pharmacy Solutions, LLC ("DP Solutions") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business of 4733 West Atlantic Avenue, Suite C12, Delray Beach, Florida 33445.

91.    Defendant Karl Bucholz is, upon information and belief, a principal of DP Solutions.  Bucholz exercises control over DP Solutions and is a moving, conscious, active force behind DP Solutions' unlawful conduct.  Bucholz resides at 789 Estuary Way, Delray Beach, Florida 33483.

92.    Defendant Globe Wanted a/k/a Globewanted International ("Globe Wanted") is, upon information and belief, a business operating from 2001 Peppertree St., Durham, North Carolina 27705 and/or 4517 Hillsborough Road, Suite 105B, Durham, North Carolina 27705.

93.    Defendant Massalah Trading U.S.A. Ltd. ("Massalah") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 1804 Plaza Avenue, Suite B, New Hyde Park, New York 11040.

94.    Defendant Saad (Sam) Haddad is, upon information and belief, a principal

of Massalah.  Haddad exercises control over Massalah and is a moving, conscious, active force behind Massalah's unlawful conduct.  Haddad resides at 84 Lee Avenue, Albertson, New York 11507.

95.     Defendant Amexpo International, LLC ("Amexpo") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 7963 NW 33rd St., Miami, Florida 33122.

96.     Defendant Hironori Mitsuishi is, upon information and belief, a principal of Amexpo.  Mitsuishi exercises control over Amexpo and is a moving, conscious, active force behind Amexpo's unlawful conduct.  Mitsuishi resides at 9561 Fontainebleau Blvd. Apt. 404, Miami, Florida 33172.

97.     Defendant Bob-Bila Distributors, Inc. ("Bob-Bila") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 66 Morris Drive, New Hyde Park, New York 11040.

98.     Defendant Goolam Sheikh is, upon information and belief, a principal of Bob-Bila.  Sheikh exercises control over Bob-Bila and is a moving, conscious, active force behind Bob-Bila's unlawful conduct.   Sheikh resides at 66 Morris Drive, New Hyde Park, New York 11040.

99.     Defendant Coolrelic, Inc. ("Coolrelic") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 4503 NW 103rd Ave, Suite 201, Sunrise, Florida 33351.

100.     Defendant Ralph Amato is, upon information and belief, a principal of Coolrelic.  Amato exercises control over Coolrelic and is a moving, conscious, active force behind Coolrelic's unlawful conduct.  Amato resides at 4503 NW 103rd Ave, Suite 201, Sunrise, Florida 33351.

101.     Defendant E-Pharm Wholesalers, Inc. ("E-Pharm") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of 4627 NW 103rd Ave, Sunrise, Florida 33351.

102.     Defendant Eduardo Gil is, upon information and belief, a principal of E-Pharm.  Gil exercises control over E-Pharm and is a moving, conscious, active force behind E-Pharm's unlawful conduct.  Gil resides at 3346 NW 125th Way #137-2, Sunrise, Florida 33323.

103.     Defendant G&P Supplies, Inc. ("G&P Supplies") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 82-64 251st Street, Bellerose, New York 11426.

104.     Defendant Harmanpreet Bal is, upon information and belief, a principal of G&P Supplies.  Bal exercises control over G&P Supplies and is a moving, conscious, active force behind G&P Supplies' unlawful conduct.  Bal resides at 23 Raspberry Trail, Warren, New Jersey 08857.

105.     Defendant Gurpreet Singh is, upon information and belief, a principal of G&P Supplies.  Singh exercises control over G&P Supplies and is a moving, conscious, active force behind G&P Supplies' unlawful conduct.  Singh resides at 23 Raspberry Trail, Warren, New Jersey 08857.

106.     Defendant Bishan Singh Ghotra is, upon information and belief, a principal of G&P Supplies.  Ghotra exercises control over G&P Supplies and is a moving, conscious, active force behind G&P Supplies' unlawful conduct.  Ghotra resides at 82-64 251st Street, Bellerose, New York 11426.

107.     Defendant Deals2000 LLC d/b/a Justdiabeticteststrips.com ("Deals2000") is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business at 11 N. Colonial Drive, Bordentown, New Jersey

08505.

108.    Defendant Steven W. Laba is, upon information and belief, a principal of Deals2000.  Laba exercises control over Deals2000 and is a moving, conscious, active force behind Deals2000's unlawful conduct.  Laba resides at 11 N. Colonial Drive, Bordentown, New Jersey 08505.

109.    Defendant Lightbox Medical LLC ("Lightbox Medical") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 1104 Corporate Way, Sacramento, California 95831.

110.    Defendant Jonathon Nikolas Woods is, upon information and belief, a principal of Lightbox Medical.  Woods exercises control over Lightbox Medical and is a moving, conscious, active force behind Lightbox Medical's unlawful conduct.  Woods resides at 1901 1st Ave Ste. 295, San Diego, California 92101.

111.    Defendant Magchop, LLC ("Magchop") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 4541 NE 15th Avenue, Pompano Beach, Florida 33064.

112.    Defendant Kenneth Ruiz is, upon information and belief, a principal of Magchop.  Kenneth Ruiz exercises control over Magchop and is a moving, conscious, active force behind Magchop's unlawful conduct.  Kenneth Ruiz resides at 4541 NE 15th Avenue, Pompano Beach, Florida 33064.

113.    Defendant Noemi Ruiz is, upon information and belief, a principal of Magchop.  Noemi Ruiz exercises control over Magchop and is a moving, conscious, active force behind Magchop's unlawful conduct.  Noemi Ruiz resides at 4541 NE 15th Avenue, Pompano Beach, Florida 33064.

114.    Defendant YS Marketing Inc. f/k/a NuMed Pharma Inc. ("NuMed") is,

upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 1274 49th Street #402, Brooklyn, New York 11219.  NuMed also operates out of an address at 455 Utica Ave 2nd Floor, Brooklyn, New York 11219.

115.    Defendant Joel Silberstein is, upon information and belief, a principal of NuMed.  Silberstein exercises control over NuMed and is a moving, conscious, active force behind NuMed's unlawful conduct.  Silberstein resides at 90 Ross Street Apt. 2L, Brooklyn, New York 11249.

116.    Defendant Pharma Supply, Inc. ("Pharma Supply") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 3381 Fairlane Farms Road Suite 5, Wellington, Florida 33414.

117.    Defendant Oliver Suess is, upon information and belief, a principal of Pharma Supply.  Suess exercises control over Pharma Supply and is a moving, conscious, active force behind Pharma Supply's unlawful conduct.  Suess resides at 49 Water Hill Way, Fletcher, North Carolina 28732.

118.    Defendant Steven Thuss is, upon information and belief, a principal of Pharma Supply.  Thuss exercises control over Pharma Supply and is a moving, conscious, active force behind Pharma Supply's unlawful conduct.  Thuss resides at 14508 Larkspur Lane, Wellington, Florida 33414.

119.    Defendant Power Distribution Enterprises LLC ("Power Distribution") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 4534 N. Hiatus Road, Sunrise, Florida 33351.

120.    Defendant Stephen M. Krause is, upon information and belief, a principal of Power Distribution.  Krause exercises control over Power Distribution and is a moving, conscious, active force behind Power Distribution's unlawful conduct.  Krause resides at 11787

Bayou Lane, Boca Raton, Florida 33498.

121.     Defendant Savoy Medical Products, LLC d/b/a Savoy Medical Supply Co. ("Savoy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 75 Calebs Path, Hauppauge, New York 11788.

122.     Defendant Guy Savia is, upon information and belief, a principal of Savoy.  Savia exercises control over Savoy and is a moving, conscious, active force behind Savoy's unlawful conduct.  Savia resides at 2593 Norton Place, Bellmore, New York 11710.

123.     Defendant Medworld Supply Inc. f/k/a SP Dist. Inc. ("Medworld") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 168 10th Street, Brooklyn, New York 11215.

124.     Defendant Shie Greenfield is, upon information and belief, a principal of Medworld.  Shie Greenfield exercises control over Medworld and is a moving, conscious, active force behind Medworld's unlawful conduct.  Shie Greenfield resides at 1123 53rd Street, Brooklyn, New York 11219.

125.     Defendant Chaim Greenfield is, upon information and belief, a principal of Medworld.  Chaim Greenfield exercises control over Medworld and is a moving, conscious, active force behind Medworld's unlawful conduct.  Chaim Greenfield resides at 134 S. 9th St. Apt. 5A, Brooklyn, New York 11311.

126.     Defendant Kimberly Stevens d/b/a Strips2Cash, upon information and belief, resides at 1429 Roosevelt Drive, Modesto, California 95350.

127.     Defendant TDC Pharmaceutical Corporation, Inc. d/b/a Vital Health Pharmacy ("Vital Health") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 1172 N. Euclid Street, Anaheim, California 92801.

128.     Defendant Vinh Huynh is, upon information and belief, a principal of Vital Health.  Huynh exercises control over Vital Health and is a moving, conscious, active force behind Vital Health's unlawful conduct.  Huynh resides at 16925 Mount Hutchings St., Fountain Valley, California 92708.

129.     Defendant Hannah Nguyen is, upon information and belief, a principal of Vital Health.  Hannah Nguyen exercises control over Vital Health and is a moving, conscious, active force behind Vital Health's unlawful conduct.  Hannah Nguyen resides at 8518 Cape Canaveral Ave, Fountain Valley, CA 92708.

130.     Defendant Dedac Nguyen is, upon information and belief, a principal of Vital Health.  Dedac Nguyen exercises control over Vital Health and is a moving, conscious, active force behind Vital Health's unlawful conduct.  Dedac Nguyen resides at 8518 Cape Canaveral Ave, Fountain Valley, California 92708.

131.     Defendant TDP Trading, Inc. ("TDP Trading") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 17471 Kennebunk Lane, Huntington Beach, California 92649.  Defendant Dedac Nguyen is a principal of TDP Trading.  Dedac Nguyen exercises control over TDP Trading and is a moving, conscious, active force behind TDP Trading's unlawful conduct.

132.     Defendant Terrific Care LLC d/b/a Deanwood Nursing ("Terrific Care") is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business at 61 Willet Street Building 1, 2nd Floor, Passaic, New Jersey 07055.

133.     Defendant Tori Goldstein is, upon information and belief, a principal of Terrific Care.  Goldstein exercises control over Terrific Care and is a moving, conscious, active force behind Terrific Care's unlawful conduct.  Goldstein resides at 23 Paiken Drive 2, Spring

Valley, New York 10977.

134.    Defendant YX Enterprices Corp ("YX Enterprices") is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business at 2 Egan Ct., Mountainside, New Jersey 07092.

135.    Defendant Yuxin Xie is, upon information and belief, a principal of YX Enterprices.  Xie exercises control over YX Enterprices and is a moving, conscious, active force behind YX Enterprices' unlawful conduct.  Xie resides at 2 Egan Ct., Mountainside, New Jersey 07092.

136.    Defendant Z Worldwide, Inc. ("Z Worldwide") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 18205 Biscayne Blvd., Suite 2201, Aventura, Florida 33160.  Z Worldwide also operates out of an address at 1248 Camellia Lane, Weston, Florida 33326.

137.    Defendant Sam Zighelboim is, upon information and belief, a principal of Z Worldwide.  Zighelboim exercises control over Z Worldwide and is a moving, conscious, active force behind Z Worldwide's unlawful conduct.  Zighelboim resides at 801 N. Venetian Drive Apt. 405, Miami Beach, Florida 33139.

138.    Defendant Pharmacy Wholesale Services Inc. a/k/a Professional Pharmacy Wholesale Services Inc. (collectively, "Pharmacy Wholesale Services") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a registered address at 1209 Orange Street, Corporation Trust Center, Wilmington, Delaware 19801, and a principal place of business at 666 Sherbrooke Street West, Suite 400, Montreal, Quebec H3A 1E7, Canada.  Pharmacy Wholesale Services also operates out of an address at 334 Cornelia Street, Suite 286, Plattsburgh, New York 12901.

139.    Defendant Douglas Parker Rudderham is, upon information and belief, a

principal of Pharmacy Wholesale Services.  Rudderham exercises control over Pharmacy Wholesale Services and is a moving, conscious, active force behind Pharmacy Wholesale Services' unlawful conduct.  Rudderham resides at 1505 Saint Jacques Street, #8, Montreal, Quebec, Canada.

140.    Defendant Advanced Pharmacy LLC ("Advanced Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Georgia, with a principal place of business at 1580 Atkinson Road, Lawrenceville, Georgia 30043.  Advanced Pharmacy also operates out of an address at 107 Kiowa Lane, Piedmont, South Carolina 29673.

141.    Defendant Gregory Peter Santulli is, upon information and belief, a principal of Advanced Pharmacy.  Santulli exercises control over Advanced Pharmacy and is a moving, conscious, active force behind Advanced Pharmacy's unlawful conduct.  Santulli resides at 2365 Bellefonte Avenue 66, Lawrenceville, Georgia 30043.

142.    Defendant Benjamin Walvoord is, upon information and belief, a principal of Advanced Pharmacy.  Walvoord exercises control over Advanced Pharmacy and is a moving, conscious, active force behind Advanced Pharmacy's unlawful conduct.  Walvoord resides at 327 W. Earle Street, Greenville, South Carolina 29609.

143.    Defendant Advanced Scripts Inc. ("Advanced Scripts") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 8222 118th Avenue N, Suite 605, Largo, Florida 33773.

144.    Defendant Larry E. Smith is, upon information and belief, a principal of Advanced Scripts.  Smith exercises control over Advanced Scripts and is a moving, conscious, active force behind Advanced Scripts' unlawful conduct.  Smith resides at 7270 Sawgrass Point Drive N, Pinellas Park, Florida 33782.

145.    Defendant Carepointe Health Care Corporation ("Carepointe") is, upon

information and belief, a corporation organized under the laws of the State of Ohio, with a principal place of business at 8073 Tylersville Road, West Chester, Ohio 45069.

146.     Defendant Gregory S. Dixon is, upon information and belief, a principal of Carepointe.  Dixon exercises control over Carepointe and is a moving, conscious, active force behind Carepointe's unlawful conduct.  Dixon resides at 4193 Jamie Drive, Fairfield, Ohio 45011.

147.     Defendant Childrens Clinic Pharmacy is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 747 52nd Street, Oakland, California 94609.

148.     Defendant Manifest Pharmacy LLC ("Manifest Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a principal place of business at 1018 S. Batesville Road, Building 4A, Greer, South Carolina 29650.  Defendant Benjamin Walvoord is, upon information and belief, a principal of Manifest Pharmacy.  Walvoord exercises control over Manifest Pharmacy and is a moving, conscious, active force behind Manifest Pharmacy's unlawful conduct.

149.     Defendant Priority Care Pharmacy LLC a/k/a Priority Healthcare Corp. ("Priority Care") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a principal place of business at 1600 Highland Drive, Armory, Mississippi 38821.  Priority Care also operates out of an address at 4330 Highway 78 East, Suite 109, Jasper, Alabama 35501.

150.     Defendant Konie Minga is, upon information and belief, a principal of Priority Care.  Minga exercises control over Priority Care and is a moving, conscious, active force behind Priority Care's unlawful conduct.  Minga resides at 906 Rose Lane, Apartment 521, Armory, Mississippi 38821.

8780757v.1

151.    Defendant Goodlife Pharmacy Inc. ("Goodlife Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 8903 Glades Road, Suite G13, Boca Raton, Florida 33424. Defendant Eduardo Gil is, upon information and belief, a principal of Goodlife Pharmacy.  Gil exercises control over Goodlife Pharmacy and is a moving, conscious, active force behind Goodlife Pharmacy's unlawful conduct.

152.    Defendant Fifty50 Medical, LLC ("Fifty50 Medical") is, upon information and belief, a corporation organized under the laws of the State of Delaware, with a principal place of business at 440 Wrangler Drive #500, Coppell, Texas 75019.  Fifty50 Medical also operates out of an address at 1420 Valwood Parkway, Suite 120, Carrollton, Texas 75006. Fifty50 Medical also operates out of an address at 44 Wrangler Suite 500, Coppell, Texas 75019.

153.    Defendant George (Rick) Lynch is, upon information and belief, a principal of Fifty50 Medical.  Lynch exercises control over Fifty50 Medical and is a moving, conscious, active force behind Fifty50 Medical's unlawful conduct.  Lynch resides at 672 W. Peninsula Drive, Coppell, Texas 75019.

154.    Defendant Stampmatic is, upon information and belief, a corporation organized under the laws of the State of New Jersey, with a principal place of business at 909-911 Sanford Avenue, Irvington, New Jersey 07111.

155.    Defendant Deepak Munshi is, upon information and belief, a principal of Stampmatic.  Munshi exercises control over Stampmatic and is a moving, conscious, active force behind Stampmatic's unlawful conduct.  Munshi resides at 909-911 Sanford Avenue, Irvington, New Jersey 07111.

156.    Defendant NPR BioMedical Inc. ("NPR BioMedical") is, upon information and belief, a corporation organized under the laws of the State of California, with a

principal place of business at 351 North Berry Street, Brea, California 92821.

157.    Defendant Paritosh Mazumder is, upon information and belief, a principal of NPR BioMedical.  Mazumder exercises control over NPR BioMedical and is a moving, conscious, active force behind NPR BioMedical's unlawful conduct.  Mazumder resides at 380 W. La Habra Blvd., La Habra, California 90631.

158.    Defendant Pranam Healthcare LLC d/b/a San Pedro Pharmacy Inc. ("San Pedro Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 1381 St. Nicholas Avenue, New York, NY 10033.

159.    Defendant Krunal Vasani is, upon information and belief, a principal of San Pedro Pharmacy.  Krunal Vasani exercises control over San Pedro Pharmacy and is a moving, conscious, active force behind San Pedro Pharmacy's unlawful conduct.  Krunal Vasani resides at 130 Beacon Avenue, Apt. 1, Jersey City, New Jersey 07306.

160.    Defendant Keyur Shah is, upon information and belief, a principal of San Pedro Pharmacy.  Keyur Shah exercises control over San Pedro Pharmacy and is a moving, conscious, active force behind San Pedro Pharmacy's unlawful conduct.  Keyur Shah resides at 26 Yorkshire Road, New Hyde Park, New York 11040.

161.    Defendant Lehigh Pharmacy & Supplies, Inc. d/b/a Cape Pharmacy & Supplies ("Cape Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 307 Del Prado Blvd, North, Suite 3, Cape Coral, Florida 33909.  Defendant Stephen M. Krause is, upon information and belief, a principal of Cape Pharmacy.  Krause exercises control over Cape Pharmacy and is a moving, conscious, active force behind Cape Pharmacy's unlawful conduct.

162.    Defendant Marleny Canete is, upon information and belief, a principal of

-35-

Cape Pharmacy.  Canete exercises control over Cape Pharmacy and is a moving, conscious, active force behind Cape Pharmacy's unlawful conduct.  Canete resides at 1705 NW 1st Place, Cape Coral, Florida 33993.

163.    Defendant M & L Brothers Pharmacy, Inc. ("M & L Brothers Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 21115 Sherman Way, Canoga Park, California 91303.

164.    Defendant Leslie Stewart Jones is, upon information and belief, a principal of M & L Brothers Pharmacy.  Jones exercises control over M & L Brothers Pharmacy and is a moving, conscious, active force behind M & L Brothers Pharmacy's unlawful conduct.  Jones resides at 13525 Pacific Breeze Drive, Santa Rosa Valley, California 93012.

165.    Defendant Medical Care Supplies Inc. ("Medical Care Supplies") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 4500 N. Hiatus Road, Suite 210, Sunrise, Florida 33351.

166.    Defendant Perfecto F. Hallon is, upon information and belief, a principal of Medical Care Supplies.  Hallon exercises control over Medical Care Supplies and is a moving, conscious, active force behind Medical Care Supplies' unlawful conduct.  Hallon resides at 8464 Sheraton Drive, Miramir, Florida 33025.

167.    Defendant Physician Choice Pharmacy LLC ("Physician Choice Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 4529 N. Pine Island Road, Sunrise, Florida 33351.  Defendant Saad (Sam) Haddad is, upon information and belief, a principal of Physician Choice Pharmacy.  Haddad exercises control over Physician Choice Pharmacy and is a moving, conscious, active force behind Physician Choice Pharmacy's unlawful conduct.

168.    Defendant Jason Grama is, upon information and belief, a principal of

Physician Choice Pharmacy.  Grama exercises control over Physician Choice Pharmacy and is a moving, conscious, active force behind Physician Choice Pharmacy's unlawful conduct.  Grama resides at 2347 Waburton Terrace, Wellington, Florida 33414.

169.    Defendant Casharim Trading a/k/a Cashrim ("Casharim") is, upon information and belief, a corporation organized under the laws of Israel, with a principal place of business at 38 Hagidonim, Zichron Yaacov, Israel.

170.    Defendant Raanan Cohen is, upon information and belief, a principal of Casharim.  Cohen exercises control over Casharim and is a moving, conscious, active force behind Casharim's unlawful conduct.  Cohen resides at 3 Hagvish, Kfar Saba, Israel.

171.    Defendant Express Chemist is, upon information and belief, a corporation organized under the laws of England, with a registered office at IPS House, Wallis Avenue, Maidstone, Kent, ME15 9NE, England, and a principal place of business at Paydens Limited Parkwood, Sutton Road, Maidstone, Kent ME15 9NE, England.

172.    Defendant John Seal is, upon information and belief, a principal of Express Chemist.  Seal exercises control over Express Chemist and is a moving, conscious, active force behind Express Chemist's unlawful conduct.  Seal resides at 12 Orchard Drive, Edenbridge, Kent TN8 5ES, England.

173.    Defendant Dennis Charles Pay is, upon information and belief, a principal of Express Chemist.  Dennis Pay exercises control over Express Chemist and is a moving, conscious, active force behind Express Chemist's unlawful conduct.  Dennis Pay resides at Salcombe, Linden Chase, Sevenoaks, Kent TN13 3JU, England.

174.    Defendant Rosemary Elizabeth Ann Pay is, upon information and belief, a principal of Express Chemist.  Rosemary Pay exercises control over Express Chemist and is a moving, conscious, active force behind Express Chemist's unlawful conduct.  Rosemary Pay

resides at Salcombe, Linden Chase, Sevenoaks, Kent TN13 3JU, England.

175.    Defendant FCL Health Solutions Ltd. ("FCL Health Solutions") is, upon information and belief, a corporation organized under the laws of England, with a principal place of business at Hawthorns House Halfords Lane, Smethwick, West Midlands B66 1DW, England.

176.    Defendant Kulbir Singh Sohi is, upon information and belief, a principal of FCL Health Solutions.  Kulbir Singh Sohi exercises control over FCL Health Solutions and is a moving, conscious, active force behind FCL Health Solutions' unlawful conduct.  Kulbir Singh Sohi resides at 18 Tudor Way, Cheslyn Hay, Walsall, West Midlands WS6 7LN, England, with a principal place of business at Unit 5 Highgate Business Centre, Highgate Road, Birmingham, England B12 8EA, England.

177.    Defendant Jasvir Singh Sohi is, upon information and belief, a principal of FCL Health Solutions.  Jasvir Singh Sohi exercises control over FCL Health Solutions and is a moving, conscious, active force behind FCL Health Solutions' unlawful conduct.  Jasvir Singh Sohi resides at 18 Tudor Way, Cheslyn Hay, Walsall, West Midlands WS6 7LN, England, with a principal place of business at Unit 5 Highgate Business Centre, Highgate Road, Birmingham, England B12 8EA, England.

178.    Defendant Globalmed Limited a/k/a Globalmed Pharmaceutical Wholesaler ("Globalmed") is, upon information and belief, a corporation organized under the laws of England, with a principal place of business at Warlies Park House, Teulon Wing Suite 7, Horseshoe Hill, Upshire, Essex EN9 3SL, England.  Globalmed also operates out of an address at 14100 NW 60 Avenue, Miami Lake, Florida 33014.

179.    Defendant Paul Michael Capper is, upon information and belief, a principal of Globalmed.  Capper exercises control over Globalmed and is a moving, conscious, active force behind Globalmed's unlawful conduct.  Capper resides at The Stables Houblons

-38-

Hill, Coopersale, Epping, Essex CM16 7QL, England.

180.    Defendant Product Trade Services Ltd. ("Product Trade Services") is, upon information and belief, a corporation organized under the laws of England, with a principal place of business at 10-12 Mulberry Green, Old Harlow, Essex CM17 0ET, England.

181.    Defendant Nigel Huw Bush is, upon information and belief, a principal of Product Trade Services.  Bush exercises control over Product Trade Services and is a moving, conscious, active force behind Product Trade Services' unlawful conduct.  Bush resides at 4 Woodland Close, Woodford Green, Essex IG8 0QH, England.

182.    Defendant David John Tipp is, upon information and belief, a principal of Product Trade Services.  Tipp exercises control over Product Trade Services and is a moving, conscious, active force behind Product Trade Services' unlawful conduct.  Tipp resides at Gate Cottage Stanford Rivers Road, Marden Ash, Ongar, Essex CM5 9BT, England.

183.    Defendant Smartway Pharmaceuticals Ltd. is, upon information and belief, a corporation organized under the laws of England, with a principal place of business at The Old Mill, 9 Soar Lane, Leicester, Leicestershire LE3 5DE, England.

184.    Defendant Smartway PW Holdings Ltd. is, upon information and belief, a corporation organized under the laws of England, with a principal place of business at The Old Mill, 9 Soar Lane, Leicester, Leicestershire LE3 5DE, England.  Smartway Pharmaceuticals Ltd. is a wholly-owned subsidiary of Smartway PW Holdings Ltd. (collectively, "Smartway").

185.    Defendant Kiri Patel is, upon information and belief, a principal of Smartway.  Kiri Patel exercises control over Smartway and is a moving, conscious, active force behind Smartway's unlawful conduct.  Kiri Patel resides at Unit 11-13, Saxon Business Centre, Windsor Avenue, London SW19 2RR, England.

186.    Defendant Bhanumati Patel is, upon information and belief, a principal of

Smartway.  Bhanumati Patel exercises control over Smartway and is a moving, conscious, active force behind Smartway's unlawful conduct.  Bhanumati Patel resides at Tamarisk, St. Mary's Copse, St. Mary's Road, Worcester Park KT4 7LA, England.

187.    Defendant Danny Katz, upon information and belief, transacts business in the State of New York under the eBay username archiesells.  Katz resides at 124 Seville Street, Vallejo, California 94591.

188.    Defendant David Strathy d/b/a Bargain Pawn, upon information and belief, transacts business in the State of New York under the eBay username bargainstore777.  Strathy's principal place of business is at 891 Radford St., Christiansburg, Virginia 24073, and he resides at 280 Alder Lane, Christiansburg, Virginia 24073.

189.    Defendant Gregory Sargent, upon information and belief, transacts business in the State of New York under the eBay username ghs-corp.  Gregory Sargent resides at 19118 10th Avenue Court E, Spanaway, Washington 98387.

190.    Defendant NWHOLESALEDEALS, INC. ("NWHOLESALEDEALS"), upon information and belief, transacts business in the State of New York under the eBay username nwholesaledeals.  NWHOLESALEDEALS is a corporation organized under the laws of the State of Washington, with a principal place of business is at 19118 10th Avenue Court E, Spanaway, Washington 98387.

191.    Defendant Hsiu Sargent is, upon information and belief, a principal of NWHOLESALEDEALS.  Hsiu Sargent exercises control over NWHOLESALEDEALS and is a moving, conscious, active force behind NWHOLESALEDEALS' unlawful conduct.  Hsiu Sargent resides at 19118 10th Avenue Court E, Spanaway, Washington 98387.

192.    Defendant Thomas Gulik, upon information and belief, transacts business in the State of New York under the eBay username guli.us2013.  Gulik resides at 430 3rd

Avenue, Dunedin, Florida 34698.

193.    Defendant Insight Design, Inc. ("Insight Design"), upon information and belief, transacts business in the State of New York under the eBay username insightdesign3. Insight Design is a corporation organized under the laws of the State of Massachusetts, with a principal place of business at 41 South Shaker Road, Harvard, Massachusetts 01451.

194.    Defendant Anthony Kvenvold is, upon information and belief, a principal of Insight Design.  Anthony Kvenvold exercises control over Insight Design and is a moving, conscious, active force behind Insight Design's unlawful conduct.  Anthony Kvenvold resides at 41 South Shaker Road, Harvard, Massachusetts 01451.

195.    Defendant Wynne Treanor-Kvenvold is, upon information and belief, a principal of Insight Design.  Wynne Treanor-Kvenvold exercises control over Insight Design and is a moving, conscious, active force behind Insight Design's unlawful conduct.  Wynne Treanor-Kvenvold resides at 41 South Shaker Road, Harvard, Massachusetts 01451.

196.    Defendant Carl C. Telander, upon information and belief, transacts business in the State of New York under the eBay username justabgkid.  Telander resides at 430 South Grant Avenue, Springfield, Missouri 65806.

197.    Defendant Attila Kekesi, upon information and belief, transacts business in the State of New York under the eBay username kekes.kekes.  Attila Kekesi resides at 16 Holloway Lane, Bordentown, New Jersey 08505.

198.    Defendant Pat Kekesi, upon information and belief, transacts business in the State of New York under the eBay username kekes.kekes.  Pat Kekesi resides at 16 Holloway Lane, Bordentown, New Jersey 08505.

199.    Defendant Astute Healthcare Limited d/b/a e-net solution ("Astute Healthcare"), upon information and belief, transacts business in the State of New York under the

-41-

Amazon.com username e-net solution.  Astute Healthcare Limited is a corporation organized under the laws of England, with a principal place of business is at 9 Bermer Place, Imperial Way, Watford, Herfordshire WD24, England, and a registered address at 337 Athlon Road, Wembley, Middlesex HA0 1EF, England.

200.    Defendant Hetasveeben Mahendrabhai Vanapariya is, upon information and belief, a principal of Astute Healthcare.  Vanapariya exercises control over Astute Healthcare and is a moving, conscious, active force behind Astute Healthcare's unlawful conduct.  Vanapariya's principal place of business is at 9 Bermer Place, Imperial Way, Watford, Herfordshire WD24, England, with an alternate place of business at 337 Athlon Road, Wembley, Middlesex HA0 1EF, England.

201.    Defendant Jigal Patel a/k/a Jignal Patel is, upon information and belief, a principal of Astute Healthcare.  Jigal Patel exercises control over Astute Healthcare and is a moving, conscious, active force behind Astute Healthcare's unlawful conduct.  Jigal Patel's principal place of business is at 9 Bermer Place, Imperial Way, Watford, Herfordshire WD24, England, with an alternate place of business at 337 Athlon Road, Wembley, Middlesex HA0 1EF, England.

202.    Defendant MISAR LLC ("MISAR"), upon information and belief, transacts business in the State of New York under the Amazon.com username MISAR LLC. MISAR is a corporation organized under the laws of the State of Washington, with a principal place of business is at 19118 10th Avenue Court E, Spanaway, Washington 98387.

203.    Defendant Brian Boeshart is, upon information and belief, a principal of MISAR.  Brian Boeshart exercises control over MISAR and is a moving, conscious, active force behind MISAR's unlawful conduct.  Brian Boeshart resides at 125 158th Street East, Tacoma, Washington 98445.

204.     Defendant Leslie Boeshart is, upon information and belief, a principal of MISAR.  Leslie Boeshart exercises control over MISAR and is a moving, conscious, active force behind MISAR's unlawful conduct.  Leslie Boeshart resides at 125 158th Street East, Tacoma, Washington 98445.

205.     Defendant Jacqueline Herrera, upon information and belief, transacts business in the State of New York under the eBay username pinkyjackie932011.  Herrera resides at 31631 Brucite Street, Lucerne Valley, California 92356.

206.     Defendant Valley Liquidation Services LLC d/b/a VLS, LLC ("VLS"), upon information and belief, transacts business in the State of New York under the eBay username qualitywebsites.  VLS is a corporation organized under the laws of the State of Arizona, with a principal place of business is at 25607 S 196th Street, Queen Creek, Arizona 85142, and an alternative address at 2125 S. 48th Street, #103, Tempe, Arizona 85282.

207.     Defendant Patricia Herman is, upon information and belief, a principal of VLS.  Patricia Herman exercises control over VLS and is a moving, conscious, active force behind VLS's unlawful conduct.  Patricia Herman resides at 25607 S 196th Street, Queen Creek, Arizona 85142.

208.     Defendant Clinton Herman is, upon information and belief, a principal of VLS.  Clinton Herman exercises control over VLS and is a moving, conscious, active force behind VLS's unlawful conduct.  Clinton Herman resides at 17382 N Carmen Avenue, Maricopa, Arizona 85139.

209.     Defendant Jennifer Herman is, upon information and belief, a principal of VLS.  Jennifer Herman exercises control over VLS and is a moving, conscious, active force behind VLS's unlawful conduct.  Jennifer Herman resides at 17382 N Carmen Avenue, Maricopa, Arizona 85139.

210.    Defendant Sherwood Prime, Inc. d/b/a Sherwood Medical Supplies ("Sherwood"), upon information and belief, transacts business in the State of New York under the eBay username sherwoodmedical.  Sherwood is a corporation organized under the laws of the State of New York, with a principal place of business is at 2232 Homecrest Ave., Brooklyn, New York 11229.

211.    Defendant Nouri Ftiha is, upon information and belief, a principal of Sherwood.  Ftiha exercises control over Sherwood and is a moving, conscious, active force behind Sherwood's unlawful conduct.  Ftiha resides at 2232 Homecrest Avenue, Brooklyn, New York 11229.

212.    Defendant Premier Equipment Solutions, Inc. ("Premier Equipment Solutions"), upon information and belief, transacts business in the State of New York under the eBay username treasurechest500.  Premier Equipment Solutions is a corporation organized under the laws of the State of North Carolina, with a principal place of business is at 173 Sherry Street, Rutherfordton, North Carolina 28139.

213.    Defendant Peter E. Sutulov is, upon information and belief, a principal of Premier Equipment Solutions.  Sutulov exercises control over Premier Equipment Solutions and is a moving, conscious, active force behind Premier Equipment Solutions' unlawful conduct.  Sutulov resides at 173 Sherry Street, Rutherfordton, North Carolina 28139.

214.    Defendant Trusted Medical Supply, LLC ("Trusted Medical Supply"), upon information and belief, transacts business in the State of New York.  Trusted Medical Supply is a corporation organized under the laws of the State of North Carolina, with a principal place of business is at 222 North Lafayette Street, Suite 02, Shelby, North Carolina 28150, and a registered address at P.O. Box 102, Shelby, North Carolina 28150.

215.    Defendant Dwayne Porter is, upon information and belief, a principal of

Trusted Medical Supply.  Porter exercises control over Trusted Medical Supply and is a moving, conscious, active force behind Trusted Medical Supply's unlawful conduct.  Porter resides at 1441 Costner Road, Shelby, North Carolina 28150.

216.    Defendant Danjal Hansen, upon information and belief, transacts business in the State of New York under the eBay username djhansentlc.  Hansen resides at 275 Rexford Drive, Hamilton, Ontario L8W2A6, Canada.

217.    Defendant Product Ltd., upon information and belief, transacts business in the State of New York under the eBay username products.ltd2002.  Product Ltd. is a corporation organized under the laws of Israel, with a principal place of business is at Arlozorov 176, Tel-Aviv, 99885, Israel.

218.    Defendant Erik Berg, upon information and belief, transacts business in the State of New York under the eBay username erikb34119.  Berg resides at 2835 Jude Island, Way, Naples, Florida 34119.

219.    Defendant Tiffany Riggs, upon information and belief, transacts business in the State of New York under the eBay username wild_chick98.  Riggs resides at 14562 Cohagen Road, Logan, Ohio 43138.

220.    Defendant Leonid Beigelman, upon information and belief, transacts business in the State of New York under the eBay username leonid943.  Beigelman resides at Ostashinsky 27/8, Rishon LeZion 75257, Israel.

221.    Defendant National Medical Management Inc. ("National Medical Management"), upon information and belief, transacts business in the State of New York under the eBay username solo954.  National Medical Management is a corporation organized under the laws of the State of Florida, with a principal place of business at 2231 NE 25th Avenue, Unit 1, Pompano Beach, Florida 33062

222.    Defendant Issa Kashou is, upon information and belief, a principal of National Medical Management.  Kashou exercises control over National Medical Management and is a moving, conscious, active force behind National Medical Management's unlawful conduct.  Kashou maintains a principal place of business at 2231 NE 25th Avenue, Unit 1, Pompano Beach, Florida 33062.

223.    Defendant Edward Connell is, upon information and belief, a principal of National Medical Management.  Connell exercises control over National Medical Management and is a moving, conscious, active force behind National Medical Management's unlawful conduct.  Connell resides at 2940 NE 22nd Court, Pompano Beach, Florida 33062, and maintains a principal place of business at 2231 NE 25th Avenue, Unit 1, Pompano Beach, Florida 33062.

224.    Defendant Yusuf Muse a/k/a Yusuf Mohamed, upon information and belief, transacts business in the State of New York under the eBay username yusmuse.  Muse resides at 5906 Tattersall Drive, #17, Durham, North Carolina 27713, and has a principal place of business at 1821 Hillandale Road Suite 1b/332, Durham, North Carolina 27705.

225.    Defendant Ran Lev, upon information and belief, transacts business in the State of New York under the eBay username levs.trade.  Ran Lev resides at 6 Yizhak Elhanan Street, Ramat Hasharon, Israel 47218.

226.    Defendant Sharine Xuan, upon information and belief transacts business in the State of New York under the eBay username highendshopping13.  Sharine Xuan resides at 826 East Sacramento Street, Altadena, California 91001.  Sharine Xuan also maintains an address at 12101 Lambert Avenue, El Monte, California 91732.

227.    Defendant Chaoying Xuan, upon information and belief transacts business in the State of New York under the eBay username highendshopping13.  Chaoying Xuan resides at 826 East Sacramento Street, Altadena, California 91001.  Chaoying Xuan also maintains an

address at 12101 Lambert Avenue, El Monte, California 91732.

228.    Defendant Brian McClelland, upon information and belief, transacts business in the State of New York under the eBay username mcan.br.oedh9Kac.  McClelland resides at 5324 Walters Street NE, East Canton, Ohio 44730-2116.

229.    Defendant James H. Redecopp, upon information and belief, transacts business in the State of New York under the eBay username cangator.  Redecopp resides at 400 Wilber Way, Pahrump, Nevada 89048.

230.    Defendant Christopher Aarons, upon information and belief, transacts business in the State of New York under the eBay username aarons_gaming_supplies.  Aarons's principal place of business is at 9501 West Sahara Avenue, Unit #1111, Las Vegas, Nevada 89117.

231.    Defendant Avi Frankman, upon information and belief, transacts business in the State of New York under the eBay username avi621981.  Frankman resides at Zikhron Ya'akov 10, Apt. 25, Jerusalem 94421, Israel.

232.    Defendant Johnny K. Chan, upon information and belief, transacts business in the State of New York under the eBay username bbkenken.  Chan resides at 450 Lane E, Hazlet, New Jersey 07730-6000.

233.    Defendant Ashraf Awad, upon information and belief, transacts business in the State of New York under the eBay username bid2win_au.  Awad's principal place of business is at Unit 4/163 Pitt Street, Merrylands, New South Wales 2160, Australia.

234.    Defendant Jiri Svec, upon information and belief, transacts business in the State of New York under the eBay username christmasfromczech.  Svec resides at Kozusany 134, Kozusany, Olomoucko, 78378, Czech Republic.

235.    Defendant Ella Sela d/b/a ELLA'S VISION, upon information and belief,

transacts business in the State of New York under the Amazon.com username ELLA'S VISION and the eBay username ellasvision.  Sela resides at Havazelet 6, Nesher, Israel.

235.    Defendant Konstantinos Polychronopoulos, upon information and belief, transacts business in the State of New York under the Amazon.com username freepharma. Polychronopoulos's principal place of business is at Notara 12, Patras, 264 41, Greece.

237.    Defendant Joseph Karas, upon information and belief, transacts business in the State of New York under the eBay username josep-kara.  Karas's principal place of business is at 69 Ormiston Circuit, Harrison, Australian Capital Territory 2914, Australia.

238.    Defendant Laurynas Lemesovas, upon information and belief, transacts business under the eBay username laurynas1986.  Laurynas Lemesovas resides at Gamyklos 52-16, Vilnius, Rudamina 13031, Lithuania.

239.    Defendant Tadas Lemesovas, upon information and belief, resides at Gamyklos 52-16, Vilnius, Rudamina 13031, Lithuania.

240.    Defendant Luis Santiago, upon information and belief, transacts business in the State of New York under the eBay username lsantiago02.  Santiago resides at 160 6th Street, Bridgeport, Connecticut 06607.

241.    Defendant Spyridon Psonis d/b/a Parapharmacy Store, upon information and belief, transacts business in the State of New York under the Amazon.com username Parapharmacy Store.  Psonis resides at Evangelistrias 14, Kalamata 241 00, Greece.

242.    Defendant N Hosking & S Duffell d/b/a Towers Pharmacy ("Towers Pharmacy") is, upon information and belief, a corporation organized under the laws of Australia that transacts business in the State of New York under the eBay username towerspharmacy1967. Towers Pharmacy's principal place of business is at 3059 Surfers Paradise Blvd., Surfers Paradise, Queensland 4217, Australia.

243.   Defendant Simon R. Duffell is, upon information and belief, a principal of Towers Pharmacy.  Duffell exercises control over Towers Pharmacy and is a moving, conscious, active force behind Towers Pharmacy's unlawful conduct.  Duffell's principal place of business is at 3059 Surfers Paradise Blvd., Surfers Paradise, Queensland 4217, Australia.

244.   Defendant Neil J. Hosking is, upon information and belief, a principal of Towers Pharmacy.  Hosking exercises control over Towers Pharmacy and is a moving, conscious, active force behind Towers Pharmacy's unlawful conduct.  Hosking's principal place of business is at 3059 Surfers Paradise Blvd., Surfers Paradise, Queensland 4217, Australia.

245.   Defendant Raleigh Paolella-Titschinger, upon information and belief, transacts business in the State of New York under the eBay username just_a_mom1.  Paolella-Titschinger resides at 2743 Mull Avenue Unit 3C, Copley, Ohio 44321.

246.   Defendant Al Gray d/b/a S D'FROG, upon information and belief, transacts business in the State of New York under the eBay username sdfrog.  Gray resides at 6257 Chasewood Drive Apt. C, Jupiter, Florida 33458.

247.   Defendant Manish Mittal, upon information and belief, transacts business in the State of New York under the eBay username thesmartshopallinone.  Mittal's principal place of business is at WZ-47B, Manohar Park, East Punjab Bagh, Delhi 110 026, India.

248.   Defendant Absolute Freight Services, Inc. ("Absolute Freight Services") is, upon information and belief, a corporation organized under the laws of the State of Florida, with a principal place of business at 1188 Canyon Way, Wellington, Florida 33414.

249.   Defendant Luis Soto is, upon information and belief, a principal of Absolute Freight Services.  Soto exercises control over Absolute Freight Services and is a moving, conscious, active force behind Absolute Freight Services' unlawful conduct.  Soto resides at 1188 Canyon Way, Wellington, Florida 33414.

**Pharmacy Defendants**

250.    Defendant Berkeley Drugs Inc. ("Berkeley Drugs") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 1951 Flatbush Avenue, Brooklyn, New York 11234.

251.    Defendant Majid Hameed is, upon information and belief, the chief executive officer of Berkeley Drugs.  Hameed resides at 84 Old Brook Road, Dix Hills, New York 11746 with a principal place of business at 1951 Flatbush Avenue, Brooklyn, New York 11234.  Defendant Majid Hameed exercises control over Berkeley Drugs and is a moving, conscious, active force behind Berkeley Drugs' unlawful conduct.

252.    Defendant Eugene Ha is, upon information and belief, the supervisor of Berkeley Drugs.  Ha resides at 20 Merrivale Road, Great Neck, New York 11020 with a principal place of business at 1951 Flatbush Avenue, Brooklyn, New York 11234.  Defendant Eugene Ha exercises control over Berkeley Drugs and is a moving, conscious, active force behind Berkeley Drugs' unlawful conduct.

253.    Defendant Careway Pharmacy Inc. ("Careway Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 1174 Flatbush Avenue, Brooklyn, New York 11226.

254.    Defendant Anatoliy Fain is, upon information and belief, the supervisor of Careway Pharmacy.  Fain resides at 13523 82nd Avenue, Unit PH2, Jamaica, New York 11435, with a principal place of business at 1174 Flatbush Avenue, Brooklyn, New York 11226.  Defendant Anatoliy Fain exercises control over Careway Pharmacy and is a moving, conscious, active force behind Careway Pharmacy's unlawful conduct.

255.    Defendant Harrico-Galler Drug Corporation ("Harrico-Galler") is, upon information and belief, a corporation organized under the laws of the State of New York, with a

principal place of business of 1409 Coney Island Avenue, Brooklyn, New York 11230.

256.     Defendant John Gallagher is, upon information and belief, the chief executive officer of Harrico-Galler.  Gallagher resides at 460 Beach 134th Street, Rockaway Park, New York 11694 with a principal place of business of 1409 Coney Island Avenue, Brooklyn, New York 11230.  Defendant John Gallagher exercises control over Harrico-Galler and is a moving, conscious, active force behind Harrico-Galler's unlawful conduct.

257.     Defendant Haber J&N Inc. d/b/a The Modern Chemist ("The Modern Chemist") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 1630 Coney Island Avenue, Brooklyn, New York 11230.

258.     Defendant Naomi Haber is, upon information and belief, the chief executive officer of The Modern Chemist.  Naomi Haber resides at 3067 Bedford Avenue, Brooklyn, New York 11210 with a principal place of business of 1630 Coney Island Avenue, Brooklyn, New York 11230.  Naomi Haber exercises control over The Modern Chemist and is a moving, conscious, active force behind The Modern Chemist's unlawful conduct.

259.     Defendant Jerry Haber is, upon information and belief, the supervisor of the pharmacy at The Modern Chemist.  Jerry Haber resides at 3067 Bedford Avenue, Brooklyn, New York 11210 with a principal place of business of 1630 Coney Island Avenue, Brooklyn, New York 11230.  Jerry Haber exercises control over The Modern Chemist and is a moving, conscious, active force behind The Modern Chemist's unlawful conduct.

260.     Defendant Norstrand Pharmacy, LLC d/b/a Vanderveer Pharmacy ("Vanderveer Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 1887 Nostrand Avenue, Brooklyn, New York 11226.  Vanderveer Pharmacy's address for service of process is 201

Bennington Terrace, Paramus, New Jersey 07652.

261.    Defendant Sarathchandra Adusumalli is, upon information and belief, the supervisor of Vanderveer Pharmacy.  Adusumalli resides at 3023 Edward Stec Boulevard, Edison, New Jersey 08837 with a principal place of business of 1887 Nostrand Avenue, Brooklyn, New York 11226.  Adusumalli exercises control over Vanderveer Pharmacy and is a moving, conscious, active force behind Vanderveer Pharmacy's unlawful conduct.

262.    Defendant Hemagiri Gayam is, upon information and belief, the registered agent of Vanderveer Pharmacy.  Gayam resides at 201 Bennington Terrace, Paramus, New Jersey 07652 with a principal place of business of 201 Bennington Terrace, Paramus, New Jersey 07652.  Gayam exercises control over Vanderveer Pharmacy and is a moving, conscious, active force behind Vanderveer Pharmacy's unlawful conduct.

263.    Defendant Lev RX Corp. d/b/a Kira's Pharmacy ("Kira's Pharmacy"), is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 88 Kings Highway, Brooklyn, New York 11214.

264.    Defendant Kira Levkouskaya is, upon information and belief, the Chief Executive Officer of Kira's Pharmacy.  Levkouskaya resides at 3535 Emmons Avenue, Apartment 611, Brooklyn, New York 11235.  Levkouskaya exercises control over Kira's Pharmacy and is a moving, conscious, active force behind Kira's Pharmacy's unlawful conduct.

265.    Defendant Eliyahus Pharmacy, Inc. ("Eliyahus Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 573 Kings Highway, Brooklyn, New York 11223.

266.    Defendant Ilias Mlabasati is, upon information and belief, the Chief Executive Officer of Eliyahus Pharmacy.  Mlabasati resides at 2120 Ocean Parkway, Brooklyn, New York 11223.  Mlabasati exercises control over Eliyahus Pharmacy and is a moving,

conscious, active force behind Eliyahus Pharmacy's unlawful conduct.

267. Defendant Global Care Pharmacy, Inc. ("Global Care Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 5905 8th Avenue, Brooklyn, New York 11220.

268. Defendant D.K.Y. Enterprises, Inc. d/b/a 8th Avenue Pharmacy ("8th Avenue Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 5504 8th Avenue, Brooklyn, New York 11220.

269. Defendant Kim Ping Jim is, upon information and belief, the Chief Executive Officer of 8th Avenue Pharmacy.  Jim resides at 4825 190th Street, Fresh Meadows, New York 11365.  Jim exercises control over 8th Avenue Pharmacy and is a moving, conscious, active force behind 8th Avenue Pharmacy's unlawful conduct.

270. Defendant TGIS Pharmacy, Inc. d/b/a Sunrise Family Pharmacy ("Sunrise") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 6324 4th Avenue, Brooklyn, New York 11220.

271. Defendant Sajid Javed is, upon information and belief, the chief executive officer of Sunrise.  Javed resides at 6981 180th Street, Fresh Meadows, New York 11365.  Javed exercises control over Sunrise and is a moving, conscious, active force behind Sunrise's unlawful conduct.

272. Defendant Bay Pharmacy Inc. ("Bay Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 2240 86th Street, Brooklyn, New York 11214.

273. Defendant Irene Piker is, upon information and belief, the chief executive

officer of Bay Pharmacy.  Piker resides at 4924 Ocean Avenue, Brooklyn, New York 11235.
Piker exercises control over Bay Pharmacy and is a moving, conscious, active force behind Bay
Pharmacy's unlawful conduct.

274.    Defendant B & T Marlboro Pharmacy, Inc. ("B & T Marlboro Pharmacy")
is, upon information and belief, a corporation organized under the laws of the State of New
York, with a principal place of business at 2845 86th Street, Brooklyn, New York 11223.

275.    Defendant Anatoly Gorokhovsky is, upon information and belief, the chief
executive officer of B & T Marlboro Pharmacy.  Gorokhovsky resides at 35 Seacoast Terrace,
Apartment 16D, Brooklyn, New York 11235.  Gorokhovsky exercises control over B & T
Marlboro Pharmacy and is a moving, conscious, active force behind B & T Marlboro
Pharmacy's unlawful conduct.

276.    Defendant Larke Drugs, Inc. d/b/a 110 Pharmacy & Surgical ("110
Pharmacy & Surgical") is, upon information and belief, a corporation organized under the laws
of the State of New York, with a principal place of business at 459 Walt Whitman Road,
Melville, New York 11747.

277.    Defendant Prasad Venigalla is, upon information and belief, the chief
executive officer of 110 Pharmacy & Surgical.  Venigalla resides at 5 Evergreen Way, Glen
Head, New York 11545.  Venigalla exercises control over 110 Pharmacy & Surgical and is a
moving, conscious, active force behind 110 Pharmacy & Surgical's unlawful conduct.

278.    Defendant La Ruche Pharmacy, Inc. ("La Ruche Pharmacy") is, upon
information and belief, a corporation organized under the laws of the State of New York, with a
principal place of business at 494 Rockaway Parkway, Brooklyn, New York 11212.  La Ruche
Pharmacy's address for service of process is 847 Annandale Road, Staten Island, New York
10312.

279.    Defendant Sunil B. Patel is, upon information and belief, the chief executive officer of La Ruche Pharmacy.  Sunil Patel resides at 14 Anthony Avenue, Edison, New Jersey 08820.  Sunil Patel exercises control over La Ruche Pharmacy and is a moving, conscious, active force behind La Ruche Pharmacy's unlawful conduct.

280.    Defendant Estates Pharmacy, Inc. ("Estates Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business and address for service of process at 169-01 Hillside Avenue, Jamaica, New York 11432.

281.    Defendant Mohammed Nuruddin is, upon information and belief, the chief executive officer of Estates Pharmacy.  Nuruddin resides at 8220 210th Street, Queens Village, New York 11432.  Nuruddin exercises control over Estates Pharmacy and is a moving, conscious, active force behind Estates Pharmacy's unlawful conduct.

282.    Defendant Havemeyer Pharmacy Inc., d/b/a South Second Pharmacy ("South Second") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business of 168 Havemeyer Street, Brooklyn, New York 11211.

283.    Defendant Michael Bassanell is, upon information and belief, a principal of South Second.  Bassanell exercises control over South Second and is a moving, conscious, active force behind South Second's unlawful conduct.  Bassanell resides at 6433 99th Street, Apt. 1B, Rego Park, New York 11374.

284.    Defendant 86th Street Community Pharmacy is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 2789 86th Street, Brooklyn, New York 11223.

285.    Defendant Gary Kagan is, upon information and belief, a principal of 86th

Street Community Pharmacy.  Kagan exercises control over 86th Street Community Pharmacy and is a moving, conscious, active force behind 86th Street Community Pharmacy's unlawful conduct.  Kagan resides at 13853 78th Road, Flushing, New York 11367.

286.    Defendant Vickie Martino is, upon information and belief, a principal of 86th Street Community Pharmacy.  Martino exercises control over 86th Street Community Pharmacy and is a moving, conscious, active force behind 86th Street Community Pharmacy's unlawful conduct.  Martino resides at 472 Lake Street, Brooklyn, New York 11223.

287.    Defendant Amin Pharmacy, Inc. ("Amin Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 2903 36th Avenue, Long Island City, New York 11106.

288.    Defendant Monsur Chowdhury is, upon information and belief, a principal of Amin Pharmacy.  Chowdhury exercises control over Amin Pharmacy and is a moving, conscious, active force behind Amin Pharmacy's unlawful conduct.  Chowdhury resides at 8568 111th Street, Richmond Hill, New York 11418.

289.    Defendant Desai's Pharmacy Inc. ("Desai's Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 228 W. 238th Street, Bronx, New York 10463.  Desai's Pharmacy also operates out of an address at 455 South Broadway, Yonkers, New York 10705.

290.    Defendant Bhagvat Jani is, upon information and belief, a principal of Desai's Pharmacy.  Jani exercises control over Desai's Pharmacy and is a moving, conscious, active force behind Desai's Pharmacy's unlawful conduct.  Jani resides at 1762 Strawberry Road, Mohegan Lake, New York 10547.

291.    Defendant N A & S Drugs, Inc. d/b/a Falcon Health-Mart Drugs ("Falcon Drugs") is, upon information and belief, a corporation organized under the laws of the State of

Michigan, with a principal place of business at 15600 Northline Road, Southgate, Michigan 48195.

292.    Defendant Diptibahen Patel is, upon information and belief, a principal of Falcon Drugs.  Diptibahen Patel exercises control over Falcon Drugs and is a moving, conscious, active force behind Falcon Drugs' unlawful conduct.  Diptibahen Patel resides at 1835 Ashbourne Drive, Canton, Michigan 48187.

293.    Defendant Lafayette Drugs, Inc. ("Lafayette Drugs") is, upon information and belief, a corporation organized under the laws of the State of Michigan, with a principal place of business at 670 Chene, Detroit, Michigan 48207.

294.    Defendant William Semaan is, upon information and belief, a principal of Lafayette Drugs.  Semaan exercises control over Lafayette Drugs and is a moving, conscious, active force behind Lafayette Drugs' unlawful conduct.  Semaan resides at 821 Hidden Pine Road, Bloomfield Hills, Michigan 48304.

295.    Defendant Medex Supply Distributors Inc. ("Medex Supply") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 13 Mosier Court, Monsey, New York 10952.

296.    Defendant Chaya Braish is, upon information and belief, a principal of Medex Supply.  Chaya Braish exercises control over Medex Supply and is a moving, conscious, active force behind Medex Supply's unlawful conduct.  Chaya Braish resides at 13 Mosier Court, Monsey, New York 10952.

297.    Defendant Moshe Braish is, upon information and belief, a principal of Medex Supply.  Moshe Braish exercises control over Medex Supply and is a moving, conscious, active force behind Medex Supply's unlawful conduct.  Moshe Braish resides at 13 Mosier Court, Monsey, New York 10952.

298. Defendant East Tremont Pharmacy Inc. ("East Tremont Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 1065 East Tremont Avenue, Bronx, New York 10460.

299. Defendant Lubna Arshad is, upon information and belief, a principal of East Tremont Pharmacy. Lubna Arshad exercises control over East Tremont Pharmacy and is a moving, conscious, active force behind East Tremont Pharmacy's unlawful conduct. Lubna Arshad resides at 1319 Pelham Parkway North, Bronx, New York 10469.

300. Defendant Mohammad Arshad is, upon information and belief, a principal of East Tremont Pharmacy. Mohammad Arshad exercises control over East Tremont Pharmacy and is a moving, conscious, active force behind East Tremont Pharmacy's unlawful conduct. Mohammad Arshad resides at 1319 Pelham Parkway North, Bronx, New York 10469.

301. Defendant An-Noor Pharmacy Inc. ("An-Noor Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York, with a principal place of business at 35 101st Street, Brooklyn, New York 11208.

302. Defendant Stephanie Huq is, upon information and belief, a principal of An-Noor Pharmacy. Stephanie Huq exercises control over An-Noor Pharmacy and is a moving, conscious, active force behind An-Noor Pharmacy's unlawful conduct. Stephanie Huq resides at 20 Hecksler Drive, Halesite, New York 11743.

303. Defendant Mujjahid ul Huq is, upon information and belief, a principal of An-Noor Pharmacy. Mujjahid ul Huq exercises control over An-Noor Pharmacy and is a moving, conscious, active force behind An-Noor Pharmacy's unlawful conduct. Mujjahid ul Huq resides at 20 Hecksler Drive, Halesite, New York 11743.

304. Defendant Delwar Kahn is, upon information and belief, a principal of An-Noor Pharmacy. Kahn exercises control over An-Noor Pharmacy and is a moving,

conscious, active force behind An-Noor Pharmacy's unlawful conduct.  Kahn resides at 8501 Kingston Place, Jamaica, New York 11432.

305.     Defendant 6122 Pharmacy, Inc. ("6122 Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of California, with a principal place of business at 6122 Whittier Boulevard, Los Angeles, California 90022.

306.     Defendant Kong Cheung a/k/a Kong Carl Cheung Tung is, upon information and belief, a principal of 6122 Pharmacy.  Cheung exercises control over 6122 Pharmacy and is a moving, conscious, active force behind 6122 Pharmacy's unlawful conduct. Cheung resides at 2240 Roanoke Road, San Marino, California 91108.

307.     Defendant Bell Apothecary, Inc. ("Bell Apothecary") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a registered address at of 1641 North Franklin Street, Philadelphia, Pennsylvania 19122, and a principal place of business at 4014 Lancaster Ave, Philadelphia, Pennsylvania 19104.

308.     Defendant Joyce Mogil is, upon information and belief, a principal of Bell Apothecary.  Joyce Mogil exercises control over Bell Apothecary and is a moving, conscious, active force behind Bell Apothecary's unlawful conduct.  Joyce Mogil resides at 1904 Owl Court, Cherry Hill, New Jersey 08003.

309.     Defendant Mark Mogil is, upon information and belief, a principal of Bell Apothecary.  Mark Mogil exercises control over Bell Apothecary and is a moving, conscious, active force behind Bell Apothecary's unlawful conduct.  Mark Mogil resides at 1837 Cardinal Lake Drive, Cherry Hill, New Jersey 08003.

310.     Defendant Shrinathji Rx Inc. d/b/a Lansdale Rx Pharmacy ("Lansdale Rx Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 1801 N. Broad Street, Lansdale,

Pennsylvania 19446.

311.    Defendant Alpeshkumar Vasani is, upon information and belief, a principal of Lansdale Rx Pharmacy.  Alpeshkumar Vasani exercises control over Lansdale Rx Pharmacy and is a moving, conscious, active force behind Lansdale Rx Pharmacy's unlawful conduct.  Alpeshkumar Vasani resides at 19 Arbor Circle, Colmar, Pennsylvania 18915.

312.    Defendant Maulik Shah is, upon information and belief, a principal of Lansdale Rx Pharmacy.  Maulik Shah exercises control over Lansdale Rx Pharmacy and is a moving, conscious, active force behind Lansdale Rx Pharmacy's unlawful conduct.  Maulik Shah resides at 14 Sherwood Road, Edison, New Jersey 08820.

313.    Defendant Bridesburg Pharmacy is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 2608 Orthodox Street, Philadelphia, Pennsylvania 19111.

314.    Defendant Shenay Ussein is, upon information and belief, a principal of Bridesburg Pharmacy.  Shenay Ussein exercises control over Bridesburg Pharmacy and is a moving, conscious, active force behind Bridesburg Pharmacy's unlawful conduct.  Shenay Ussein resides at 1360 Brill Street, Philadelphia, Pennsylvania 19124, with alternative residential addresses of 80 Valley View Road, Lafayette, New Jersey 07848, and 1361 Bridge Street, Philadelphia, Pennsylvania 19124.

315.    Defendant Nessin Ussein is, upon information and belief, a principal of Bridesburg Pharmacy.  Nessin Ussein exercises control over Bridesburg Pharmacy and is a moving, conscious, active force behind Bridesburg Pharmacy's unlawful conduct.  Nessin Ussein resides at 5138 Penn Street, Philadelphia, Pennsylvania 19124.

316.    Defendant Gabecare Direct Rx, Inc. ("Gabecare Direct") is, upon information and belief, a corporation organized under the laws of the State of Michigan, with a

principal place of business at 1179 Maplelawn Drive, Troy, Michigan 48084.  Gabecare Direct also does business as CampRx, Direct Rx, DirectRx Specialty Pharmacy, Direct Rx Specialty Pharmacy, and Gabecare DirectRx.

317.    Defendant Santa Zawaideh is, upon information and belief, a principal of Gabecare Direct.  Zawaideh exercises control over Gabecare Direct and is a moving, conscious, active force behind Gabecare Direct's unlawful conduct.  Zawaideh resides at 530 Vinewood Avenue, Birmingham, Michigan 48009.

318.    Defendant Discover Pharmacy Inc. ("Discover Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 6730 Bustleton Avenue, Philadelphia, Pennsylvania 19149.

319.    Defendant Nader Parsian is, upon information and belief, a principal of Discover Pharmacy.  Parsian exercises control over Discover Pharmacy and is a moving, conscious, active force behind Discover Pharmacy's unlawful conduct.  Parsian resides at 2787 Cornflower Court, Huntingdon Valley, Pennsylvania 19006.

320.    Defendant Glendale Prescription Center, Inc. ("Glendale Prescription Center") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 7601 Castor Avenue, Philadelphia, Pennsylvania 19152.

321.    Defendant Steven Tammara is, upon information and belief, a principal of Glendale Prescription Center.  Steven Tammara exercises control over Glendale Prescription Center and is a moving, conscious, active force behind Glendale Prescription Center's unlawful conduct.  Steven Tammara resides at 61 Villa Drive, Warminster, Pennsylvania 18974.

322.    Defendant Randy Tammara is, upon information and belief, a principal of Glendale Prescription Center.  Randy Tammara exercises control over Glendale Prescription

Center and is a moving, conscious, active force behind Glendale Prescription Center's unlawful conduct. Randy Tammara resides at 38 Andrew Road, Huntingdon Valley, Pennsylvania 19006.

323. Defendant Oxford Pharmacy, Inc. ("Oxford Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 3254 N. Front Street, Philadelphia, Pennsylvania 19140.

324. Defendant Jenny Nguyen is, upon information and belief, a principal of Oxford Pharmacy. Jenny Nguyen exercises control over Oxford Pharmacy and is a moving, conscious, active force behind Oxford Pharmacy's unlawful conduct. Jenny Nguyen resides at 554 Millers Way, Lansdale, Pennsylvania 19446.

325. Defendant Thuy Pham a/k/a Dennis Pham a/k/a Huy Pham is a principal of Oxford Pharmacy. Pham exercises control over Oxford Pharmacy and is a moving, conscious, active force behind Oxford Pharmacy's unlawful conduct. Pham resides at 554 Millers Way, Lansdale, Pennsylvania 19446.

326. Defendant QRx Pharmacy and Healthcare Supplies, Inc. d/b/a QRx2 Pharmacy & Medical Supplies Inc. ("QRx2 Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of Pennsylvania, with a principal place of business at 7339 Frankford Avenue, Philadelphia, Pennsylvania 19146, and a registered address at 1561 Clark Drive, Yardley, Pennsylvania 19067.

327. Defendant Sayed Raza a/k/a Syed Hasan is, upon information and belief, a principal of QRx2 Pharmacy. Raza exercises control over QRx2 Pharmacy and is a moving, conscious, active force behind QRx2 Pharmacy's unlawful conduct. Raza resides at 1561 Clark Drive, Yardley, Pennsylvania 19067.

328. Defendant Total Pharmacy Inc. d/b/a EZ Pharmacy ("EZ Pharmacy") is, upon information and belief, a corporation organized under the laws of the State of New York,

with a principal place of business at 37-16 3rd Avenue, Bronx, New York 10462.

329.   Defendant Nabila Chaudhry is, upon information and belief, a principal of EZ Pharmacy.  Nabila Chaudhry exercises control over EZ Pharmacy and is a moving, conscious, active force behind EZ Pharmacy's unlawful conduct.  Nabila Chaudhry resides at 21 Harding Avenue, Roslyn Heights, New York 11577.

330.   Defendant Qaiser Chaudhry is, upon information and belief, a principal of EZ Pharmacy.  Qaiser Chaudhry exercises control over EZ Pharmacy and is a moving, conscious, active force behind EZ Pharmacy's unlawful conduct.  Qaiser Chaudhry resides at 21 Harding Avenue, Roslyn Heights, New York 11577.

**John Doe Defendants**

331.   Defendants John Does 1-10 are other persons and entities that are involved in the conspiracy to import, distribute, and sell diverted international FreeStyle test strips but whose identities are presently unknown.

<div align="center"><u>JURISDICTION AND VENUE</u></div>

332.   The Court has subject matter jurisdiction over this action under Section 39 of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121; 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and 1367; 18 U.S.C. §§ 1964 and 1965; and general principles of ancillary and pendent jurisdiction.

333.   The amount of damages at issue exceeds $75,000, exclusive of interest and costs.

334.   The Court has personal jurisdiction over the Defendants because they regularly transact or have transacted business in the Eastern District of New York by, for example, selling Abbott FreeStyle blood glucose test strips and other manufacturers' products into the state of New York and receiving insurance reimbursements from insurance companies

located in the state of New York.  The Court also has personal jurisdiction over each of the

Defendants pursuant to Fed. R. Civ. P. 4(k), N.Y.C.P.L.R. §§ 301 and 302, and/or 18 U.S.C. §

1965.  The Court also has personal jurisdiction over each of the Defendants because the tortious

acts described herein (which occurred in New York, among other places), were conducted and/or

directed by each of the Defendants, and because the conspiracy described in this Complaint took

place in substantial part in New York and each Defendant knowingly took part in that conspiracy

335.    The tortious acts described herein caused injury to Abbott in New York.

336.    The Defendants regularly do or solicit business, engage in a persistent

course of conduct, or derive substantial revenue from goods used or consumed in New York

State.

337.    The Defendants intended, knew, expected, or should reasonably have

expected that the tortious acts described herein would have consequences in New York State.

338.    On information and belief, the Defendants derive substantial revenue from

interstate or international commerce.

339.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C.

§ 1391(b) and (c)  in that a substantial part of the events or omissions giving rise to the claim

occurred in this district, and one or more of the Defendants is subject to personal jurisdiction in

this district.

## **FACTS**

340.    Abbott sells the well-known, high-quality FreeStyle blood glucose

monitoring systems, which includes FreeStyle test strips.  Abbott markets and sells FreeStyle test

strips throughout the world, and is viewed as a dependable source of high-quality and reliable

test strips.

341.    Diabetes is a group of diseases characterized by high blood glucose levels

that result from defects in the body's ability to produce and/or use insulin.  According to the American Diabetes Association, diabetes affects more than 25 million Americans.  Diabetes is a chronic disease that must be managed closely to avoid the risk of serious illness, complications, and even death.

342.    Millions of people who have been diagnosed with diabetes depend on Abbott's FreeStyle test strips every day to monitor their blood sugar to enable them to regulate their diet and medication.

343.    Diabetes patients use FreeStyle test strips by first placing a test strip into a compatible FreeStyle meter.  The patient then obtains a tiny blood sample from an indicated "test site"—which in the United States is the patient's fingertip, upper arm, or palm—using a lancing device.  Next, the patient applies the blood sample to the test strip.  The test result, or blood glucose reading, is displayed on the meter's digital screen seconds later.  Based on this reading, the patient makes decisions concerning when to take insulin and how to adjust his or her diet to ensure a healthy blood-glucose level.

**Abbott's Trademarks and Trade Dress**

344.    Abbott Laboratories and Abbott Diabetes Care Inc. are the owners of a family of U.S. trademarks including, among others, the following trademarks that appear on all packaging for FreeStyle® and FreeStyle Lite® blood glucose test strips (collectively referred to herein as the "FreeStyle Marks").

- Abbott Diabetes Care Inc.'s "FREESTYLE" trademark was registered on the Principal Register of the United States Patent and Trademark Office on July 4, 2006, as U.S. Registration No. 3,111,863, and was recognized by the Patent and Trademark Office ("PTO") as incontestable under 15 U.S.C. § 1065 on June 28, 2012;

- Abbott Diabetes Care Inc.'s "FREESTYLE LITE" trademark was registered on the Principal Register of the United States Patent Office on August 19, 2008, as U.S. Registration No. 3,488,499, and was recognized by the PTO as incontestable under 15 U.S.C. § 1065 on May 31, 2014;

-65-

- Abbott Diabetes Care Inc.'s  trademark, which consists of a butterfly with a silver body, black wings, yellow and orange oblong shapes on the wings with two rows of white spots going around the oblong shapes, and with blue shading, was registered on the Principal Register of the United States Patent Office on September 18, 2012, as U.S. Registration No. 4,210,535;

- Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on December 15, 2009, as U.S. Registration No. 3,724,557;

- Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on August 31, 2010, as U.S. Registration No. 3,842,268;

- Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on August 31, 2010, as U.S. Registration No. 3,842,269;

- Abbott Laboratories' "ABBOTT" trademark was registered on the Principal Register of the United States Patent Office on September 6, 2011, as U.S. Registration No. 4,023,123; and

- Abbott Laboratories'  trademark service mark was registered on the Principal Register of the United States Patent Office on June 6, 1989, as U.S. Registration No. 1,542,129 and was recognized by the PTO as incontestable under 15 U.S.C. § 1065 on January 5, 1996.

345.    Abbott uses distinctive packaging (the "FreeStyle Trade Dress") to distinguish its FreeStyle products in the marketplace.  Abbott has used this distinctive packaging since as early as 2006 and through the present date.  The FreeStyle Trade Dress is arbitrary, non-functional, and distinctive.

346.    The FreeStyle Marks and FreeStyle Trade Dress have been extensively and continuously used by Abbott, and are inherently distinctive and/or have become distinctive through the acquisition of secondary meaning.

347.    The sale of FreeStyle test strips has been tremendously successful in part

-66-

due to Abbott's marketing and promotion of the FreeStyle brand throughout the country.

348.    Abbott distributes over 600 million test strips every year in the United States alone and has sold billions of FreeStyle test strips for over $1 billion dollars in the United States over the past five years.

349.    The FreeStyle brand is recognized in the United States and throughout the world as a high-quality, reliable blood glucose test strip manufactured and distributed by Abbott. FreeStyle test strips are sold in pharmacies throughout the United States and world.

350.    As a result of Abbott's extensive advertising and promotion of FreeStyle test strips in connection with the FreeStyle Marks and FreeStyle Trade Dress, Abbott's widespread and long-running sale of FreeStyle test strips, and the celebrity that the FreeStyle Marks and FreeStyle Trade Dress have achieved, blood glucose test strips bearing FreeStyle Marks and FreeStyle Trade Dress have been and are now recognized by the consuming public in the United States and in the trade as originating from a single source:  Abbott.

351.    Test strips bearing the FreeStyle Marks and FreeStyle Trade Dress have come to be known by the purchasing public throughout the United States and abroad as blood glucose test strips of the highest quality.  As a result, the FreeStyle Marks and FreeStyle Trade Dress and the goodwill associated with them are of inestimable value to Abbott.

352.    Abbott has used and is currently using the FreeStyle Marks and FreeStyle Trade Dress in commerce and in connection with its sale of FreeStyle test strips, and plans to continue such use in the future.

**Material Differences Between U.S. and International FreeStyle Test Strips**

353.    As is the case with many products, particularly those related to health and safety, the package labeling and indications for use of FreeStyle test strips Abbott packages for retail sale in the United States differ in significant and material ways from the package labeling

-67-

and indications for use of FreeStyle test strips Abbott packages for retail sale outside the United States.

354.    Public health agencies in the United States and abroad actively regulate the sale of blood glucose test strips, and in particular, what must be included and excluded from their labels and packaging.  Different countries, however, have different regulatory requirements.  In the United States, the FDA has cleared the package labeling and indications for use of FreeStyle test strips under the FDA's particular, stringent requirements.  In contrast, the package labeling and indications for use of international FreeStyle test strips differ from U.S. FreeStyle test strips, and are therefore not cleared or authorized for sale in the United States.  These differences are outlined below.

355.    **No NDC Number**.  As explained above, every box of FreeStyle test strips packaged for retail sale in the United States has a specific NDC number.  This number is required for reimbursements and rebates.  The NDC number for every retail 50-count box of FreeStyle Lite test strips is 99073-0708-22.  This NDC number is located both on the front of every box of FreeStyle test strips intended for retail sale in the United States and in the barcode on the bottom of every box of U.S. FreeStyle test strips, as shown in **Figures 1** and **2** below:

8780757v.1



**Figure 1**



**Figure 2**

FreeStyle test strips packaged for sale outside the United States do not have an NDC number anywhere on their packaging and are not entitled to reimbursements or rebates in the United States.

        356.   **Different Indicated Test Sites**.  To perform a blood glucose test, the patient must obtain a blood drop from a particular test site on his or her body.  Many patients test their glucose levels multiple times per day and would like to be able to use a number of different test sites.  Accordingly, in 2009, Abbott sought clearance from the FDA to indicate testing at seven sites:  finger; upper arm; palm; back of hand; forearm; calf; and thigh.  In support of this

application, Abbott submitted testing date for all seven sites.  In evaluating this data, however, the FDA determined that the back of hand, forearm, calf, and thigh test sites did not meet its criteria.  The FDA therefore only cleared U.S. FreeStyle test strips to indicate three test sites: finger; upper arm; and palm.



**Figure 3**

357.    Outside the United States, FreeStyle test strips are approved for testing at a broader range of sites, including:  back of hand; forearm; calf; and thigh.



International Test Sites

**Figure 4**

Accordingly, international FreeStyle test strips are packaged with guidance and instructions for testing at a wider range of sites than U.S. FreeStyle test strips.



**Figure 5**

358.   **No U.S. Toll-Free Phone Number**.  Every box of U.S. FreeStyle test strips provides a U.S. toll-free phone number for U.S. consumers to call with any product-related

questions, concerns, or issues, or to report any adverse events.  International FreeStyle test strips

do not provide the U.S. toll-free number anywhere in its packaging, and instead have

international numbers that are not generally accessible from the United States.  These differences

are reflected in **Figure 6**:



**Figure 6**

359.    **Different Languages**.  The packaging of every box of FreeStyle test strips

contains very important information concerning usage and handling.  Every box of FreeStyle test

strips also contains an instructional insert providing a substantial amount of vital information,

including directions and warnings for the use of FreeStyle test strips.  It is critical that consumers

be able to read and understand this information.

360.    The language or languages used in the packaging and instructional inserts

varies depending on the intended country or region of distribution.  The packaging and

instructional inserts for all U.S. FreeStyle test strips are in English, as required by the FDA, and

Spanish.  FreeStyle test strips that are packaged for sale outside the United States do not provide

instructions in English, do not provide instructions in Spanish, or provide languages in addition to English and Spanish.

361.   **Use of Symbols**.  The FDA does not approve the use of symbols on packaging for home-use products unless the symbols are accompanied by adequate explanatory text.  The FDA has published guidance instructing manufacturers, including Abbott, not to use symbols for any lay-user products: "FDA does not recognize the symbols for use in the labels and labeling of over-the-counter or prescription home-use [in vitro diagnostic devices ("IVD")]. Validation data introduced through FDA's consensus standards recognition process supported the use of symbols for IVD professional labels and labeling, not for consumer labeling."  *See* "Guidance for Industry and FDA Staff: Use of Symbols on Labels and in Labeling of In Vitro Diagnostic Devices Intended for Professional Use" at Section VI, *available at* http://www.fda.gov/medicaldevices/deviceregulationandguidance/guidancedocuments/ucm085404.htm#6.

362.   International FreeStyle test strips are packaged in boxes that bear various symbols concerning, among other things, the manufacturer, expiration date, and storage temperature limitations:



**Figure 7**

363.    U.S. FreeStyle test strips are not packaged in boxes bearing these symbols. The sale of international FreeStyle test strips in the United States not only violates the FDA's guidance against symbols, but could confuse or fail to inform patients about the proper use of the test strips.

364.    **Different Units of Measurement**.  The FDA sets restrictions on the units of measurement U.S. product packaging can utilize.  The FDA generally requires that products utilize milligrams and deciliters exclusively, and not other units, which can confuse U.S. consumers.  However, many regions around the world use other units of measurement, including millimoles.  Moreover, the instructional insert for FreeStyle test strips packaged for sale in Canada utilize millimoles exclusively.

365.    **Different Temperature Scales**.  The FDA also requires that U.S. products use Fahrenheit as the unit of measurement for temperature.  The side of every U.S. box of FreeStyle test strips includes the following warning: "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  International FreeStyle test strips do not provide this written warning anywhere on the outer box; instead, they rely on a symbol indicating "4° C" and "30° C" without explanatory text or the Fahrenheit equivalent.



**Figure 8**

366. **Missing Warnings**. The outer package label of every box of U.S. FreeStyle test strips provides several written warnings and instructions, including "Do not reuse" and "For *in vitro* diagnostic use". The outer package label of international FreeStyle test strips does not provide these written warnings.



**Figure 9**

-75-

367.    **Compatible Meters**.  The FDA requires that FreeStyle test strips be indicated for use exclusively with FreeStyle, FreeStyle Flash, and FreeStyle Freedom meters; and that FreeStyle Lite test strips be indicated for use exclusively with the FreeStyle Lite and FreeStyle Freedom Lite meters.  In other words, the FDA has not cleared FreeStyle test strips to be indicated for use with FreeStyle Lite brand meters; and, alternatively, the FDA has not cleared FreeStyle Lite test strips to be indicated for use with other FreeStyle brand meters.  Outside the United States, FreeStyle test strips are approved for use with meters using FreeStyle coulometry technology, regardless of whether the meter is a FreeStyle meter, FreeStyle Lite meter, or another FreeStyle-brand meter.  Moreover, unlike U.S. FreeStyle and FreeStyle Lite test strips, international FreeStyle and FreeStyle Lite test strips are also indicated for use with FreeStyle InsuLinx and FreeStyle Navigator meters (to name a few) and are packaged accordingly.



**Figure 10**

<u>**Authorized Distribution of FreeStyle Test Strips in the United States**</u>

368.    Retail U.S. FreeStyle test strips are designed for sale by U.S. pharmacies. They can be sold to anyone in the United States, including customers covered by a prescription

benefit and customers who would like to pay cash over-the-counter.  Abbott wholesales retail

boxes of FreeStyle test strips at a set list price throughout the United States.  The current list

price in the United States for retail 50-count boxes of FreeStyle Lite test strips is $72.58, or

roughly $1.45 per test strip.

369.    Most U.S. consumers—over 95%—purchase FreeStyle test strips with a

prescription.  Consumers with prescriptions for test strips are typically eligible to receive

insurance coverage for their purchase, usually from private insurance or Medicare and Medicaid

programs.  Insurers provide prescription drug coverage according to a formulary, which is a

schedule that lists the prescription drugs and medical devices the insurer will cover and the

amount the insurer will reimburse for any particular drug or device.  These formularies list the

drugs and devices eligible for reimbursement according to NDC number.  If a product does not

have an NDC number that is listed on the insurer's formulary, it is not eligible for reimbursement

from insurers.

370.    When a pharmacy dispenses a box of FreeStyle test strips to a consumer

who is using a prescription benefit, it informs the consumer's insurer of the purchase by scanning

the unique U.S. FreeStyle test strips NDC number into the pharmacy computer terminal.

371.    NDC numbers are used as a key component of reimbursement systems

that enable automated processing of claims.  The pharmacy scans the U.S. retail NDC number to

submit a claim to the insurer for reimbursement.  The insurance claim is processed according to

the NDC number.  The submission of the NDC number is a representation that the consumer was

dispensed the product corresponding to the submitted NDC—that is, a box of FreeStyle test

strips intended and authorized for sale in the United States.  And based on this representation, the

insurer makes a reimbursement payment to the pharmacy.  This process is referred to as

"adjudication."

372.    Insurers, third-party payors, and other large purchasers negotiate and contract with Abbott concerning how much they will pay—or more precisely, how much they will be rebated—for FreeStyle test strips.  Pursuant to these contracts, when a transaction is adjudicated, Abbott also pays a rebate for every box of FreeStyle test strips for which an insurer paid or reimbursed the pharmacy.  As Defendants are well aware, Abbott pays substantial rebates to the insurers for reimbursements they pay out on sales of U.S. FreeStyle test strips.   Abbott's revenue for the sale of every adjudicated box of U.S. FreeStyle test strips therefore amounts to the list price minus the contractually agreed-upon rebate it pays to the insurer.  The U.S. adjudication process, including reimbursement and rebate payment, is illustrated in **Figure 11**:



**Figure 11**

373.    Insurers who are covering test strips under a prescription benefit will not pay any reimbursement for the sale of FreeStyle test strips without a valid NDC number.  And Abbott will not pay any rebate for the sale of FreeStyle test strips without a valid NDC number. It would be fraudulent for a distributor or retailer of FreeStyle test strips to designate sales of non-U.S. retail FreeStyle test strips in its reimbursement claims to insurance companies by using a U.S. NDC number, and thereby secure the reimbursement paid by the insurers on a U.S. retail

box of FreeStyle test strips.  The same actions would amount to a fraud against Abbott, who would be paying rebates secured by the same bait-and-switch.  This is exactly what is happening here.

**The Mechanics of the Defendants' Fraudulent Scheme**

374.    The Defendants are participating in a scheme to defraud Abbott by purchasing international FreeStyle test strips, diverting them to the United States, and selling them to U.S. consumers.

375.    FreeStyle test strips are manufactured in Ireland with a specific stock keeping unit ("SKU") and lot number.  Each lot is only manufactured for sale in a specific country or region.  FreeStyle test strips that are manufactured for sale in the United States are assigned different SKU and lot numbers than FreeStyle test strips manufactured for sale outside the United States.

376.    Abbott uses the SKU and lot numbers to track where the test strips are shipped and then to monitor them if any safety or quality issues arise.

377.    When a recall is warranted, for example, Abbott notifies the regulatory agencies in the countries that were authorized to receive the affected lot number, informing them of the particular issue and seeking their guidance.  Abbott then issues a recall notice, which may include a press release and a website posting.  For each affected country, Abbott provides a direct notification to all consignees for the affected lot numbers, including distributors, retailers, and pharmacies, notifying them of the issue with the product and what further action is necessary.  Where possible, Abbott also directly notifies consumers and health care professionals whose patients have been trained on the recalled product.

378.    Recall notices are only sent to countries and/or consumers that are authorized to have received the particular SKU or lot number that is the subject of the recall.

This helps to minimize consumer confusion and unnecessary market disruption; prevent consumers from becoming desensitized to important recall notices as a result of receiving numerous inapplicable notifications; and ensure that consumers do not unnecessarily dispose of their products in instances in which only a specific SKU or lot number is affected.

379.    Abbott devotes a substantial amount of effort and resources to ensure product quality and consumer safety.  In addition to the pre-market measures Abbott takes, after FreeStyle test strips are distributed, Abbott continues to monitor the market—receiving consumer inquiries, tracking and investigating complaints and market issues, and performing any necessary field actions, including making targeted recalls and initiating legal proceedings.  When Abbott discovers product in the United States that is not suitable or approved for sale, Abbott also promptly notifies relevant federal and local law-enforcement authorities.

380.    As a result of its market monitoring, Abbott recently discovered Defendants' fraudulent scheme after seeing a substantial increase in the number of diverted international FreeStyle test strips being sold in the United States.

381.    In many foreign countries, the list price for FreeStyle test strips is lower than in the United States.  This is because the insurance systems in those countries differ from that in the United States.  In particular, they involve little or no reimbursements or rebates.  After all reimbursements and rebates are considered, the net price for U.S. and foreign FreeStyle test strips is similar throughout the developed world.

382.    Because the list price for international FreeStyle test strips is lower than the U.S. list price, Defendants (and others like them) are buying large quantities of international FreeStyle test strips, importing them into the United States, and selling them to U.S. consumers with insurance.  They are then submitting these sales to insurers for reimbursement to obtain inflated profits.

383.     To receive these reimbursements, Defendants are engaging in fraudulent and criminal conduct.  For nearly every sale of diverted international FreeStyle test strips Defendants make to a U.S. consumer, the Pharmacy Defendants are dispensing the test strips pursuant to the consumer's prescription benefit.  However, because the box of diverted international FreeStyle test strips does not have an NDC number, the Pharmacy Defendants are scanning in the NDC code from a retail box of U.S. FreeStyle test strips.  Thus, while the Pharmacy Defendants are dispensing a box of diverted international FreeStyle test strips (which is ineligible for reimbursements and rebates in the United States), they are fraudulently claiming they sold a box of U.S. FreeStyle test strips with a valid NDC number (which is eligible for reimbursements and rebates).

384.     Defendants' fraud is first visited on U.S. consumers.

385.     Using Abbott's trademarks and trade dress, Defendants advertise to consumers and the marketplace their ability and willingness to sell FreeStyle test strips.  These advertisements are made through, inter alia, websites, emails, facsimiles, point-of-sale displays, and other media.

386.     Defendants then dispense diverted international FreeStyle test strips, and not U.S. FreeStyle test strips.  By dispensing diverted international FreeStyle test strips, Defendants are exposing each consumer to the threat of confusion and misuse posed by the material differences between U.S. and international FreeStyle test strips.  U.S. consumers, however, see no savings and in fact pay the same amount for a box of diverted international test strips as they would for a box of U.S. FreeStyle test strips.  So for the same price, these consumers are receiving a box of FreeStyle test strips that are not approved for sale in the United States.

387.     For each of these sales Defendants have made and continue to make, they

are then submitting a false claim for reimbursement with the consumer's insurer.  Based on the falsely adjudicated NDC number, insurance companies have paid out and continue to pay out reimbursements to Defendants.

388.    These fraudulent adjudications are then forwarded on to Abbott.  Just as insurance companies do not provide reimbursements for products without an NDC number, Abbott does not provide rebates to insurers unless the pharmacies provide the NDC number of a rebate-eligible product they claim to have dispensed.  For every reimbursement wrongfully paid by an insurer based on a fraudulent NDC number, the insurer then submits a claim for a rebate from Abbott pursuant to their agreed-upon rebate structure.  And as Defendants know, as it is fundamental to their scheme, it is then Abbott that pays the rebate to the insurer based on the same fraudulent NDC number caused to be transmitted by Defendants.

389.    Defendants' conspiracy to divert international FreeStyle test strips and fraudulently adjudicate sales of diverted test strips is illustrated in **Figure 12**:



**Illegal Distribution Chain**

**Figure 12**

390.    Abbott has suffered and continues to suffer significant losses at the hand of Defendants' fraudulent scheme.  For each sale of diverted international FreeStyle test strips for which Abbott pays a rebate, Abbott first receives the foreign list price, which is significantly lower than the U.S. list price.  Then, Abbott pays a rebate that it is not supposed to pay.  Thus, each of these transactions results in a net loss for Abbott.

391.    Abbott's financial loss is Defendants' gain.  Because over 95% of U.S. consumers purchase FreeStyle test strips with a prescription and insurance, there is minimal return—and thus minimal incentive—for Defendants to sell diverted international FreeStyle test strips over-the-counter for cash.

392.    Diverted international FreeStyle test strips are very profitable for Defendants, though, precisely because they fraudulently submit their sales directly for

reimbursements and indirectly for rebates.  This is the central purpose of Defendants'
conspiracy.  And each Defendant plays a critical role in this conspiracy.

**Defendants' Involvement in the Fraudulent Scheme**

393.    Each Defendant participated in and/or aided and abetted the scheme just
described and conspired with others to further the scheme.

394.    **Adelphia**. On June 8, 2015, Abbott purchased 12 boxes of diverted 50-
count FreeStyle Lite test strips from Adelphia.  These boxes were marked with an expiration date
of January 2017 and Lot Number 1485206, which was intended for sale in the United Kingdom
and Jamaica.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone
number.  In comparison with FreeStyle Lite test strips packaged for sale in the U.S., the outer
packaging of these boxes was missing several warnings and instructions, including "For *in vitro*
diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C
- 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each
box, including a "CE" mark, which indicates the box was packaged for sale in the European
Economic Area.  This diverted international product also contained an instructional insert that is
materially different in many ways from the insert contained in all boxes of FreeStyle test strips
packaged for sale in the United States.  For example, the inserts in these boxes of diverted
FreeStyle test strips included Greek and Portuguese language and instruct patients to test from
sites including the hand, forearm, calf, and thigh, all of which are test site locations that have
been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes
manufactured for sale in the United States.

395.    **Save Rite Medical**.  On September 10, 2015, Abbott purchased 1 case (12
boxes) of diverted 50-count FreeStyle Lite test strips from Save Rite.  Save Rite delivered these
test strips via UPS Ground from Brooklyn, New York to Lake Success, New York in the Eastern

-84-

District of New York.  These boxes were shipped in an Abbott case marked with Lot Number 1502212 and an expiration date of February 2017.  The boxes within the case, however, had a different Lot Number, 1506907, and different expiration date, October 2016.  Lot Number 1506907 was intended for sale in India.  These boxes of test strips did not have an NDC number or U.S. toll-free number, and state "For sale in India only."  The outer packaging of these boxes was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the inserts in these boxes of diverted FreeStyle test strips instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

396.  **Matrix Distributors**.  On September 24, 2015, Abbott purchased 1 case (12 boxes) of diverted 50-count FreeStyle Lite test strips from Matrix.  Matrix delivered these test strips via UPS Ground from Edison, New Jersey to Lake Success, New York in the Eastern District of New York.  This case was shipped in an unmarked box that housed an Abbott branded case.  The case was marked with Lot Number 1511114 and an expiration date of May 2017.  While the case contained 12 boxes of FreeStyle Lite test strips with the same Lot Number and expiration date, the case bore obvious signs of having been opened and resealed. Lot Number 1511114 was intended for sale in Greece and Spain.  These boxes of test strips did not have an NDC number or U.S. toll-free number.  The outer packaging of these boxes included Greek and

Portuguese language and was missing several warnings and instructions, including "For *in vitro*

diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C

- 30° C)". In addition, there were several foreign symbols present on the outer packaging of each

box, including the "CE" mark. This diverted international product also contained an

instructional insert that is materially different in many ways from the insert contained in all

boxes of FreeStyle test strips packaged for sale in the United States. For example, the inserts in

these boxes of diverted FreeStyle test strips included Greek and Portuguese language and instruct

patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site

locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions

contained in boxes manufactured for sale in the United States.

      397.   **H&H**. On September 11, 2015, Abbott purchased 12 boxes of diverted

50-count FreeStyle Lite test strips from H&H. When placing this order, the salesperson for

H&H, Michael Leonhard, stated that the international test strips were the same as the test strips

manufactured for sale in the U.S., but with different packaging. H&H delivered these test strips

via FedEx Ground from Troy, Michigan to Lake Success, New York in the Eastern District of

New York. These test strips were shipped in an unmarked box containing 12 loose boxes. The

boxes were marked with the same expiration date of May 2017, but with various Lot Numbers:

6 boxes were marked with Lot Number 1511219, which were intended for sale in the United

Kingdom and Ireland; 2 boxes were marked with Lot Number 1511813, which were intended for

sale in the United Kingdom and Ireland; 2 boxes were marked with Lot Number 1510701, which

were intended for sale in the United Kingdom; 1 box was marked with Lot Number 1512004,

which was intended for sale in the United Kingdom and Jamaica; and 1 box was marked with

Lot Number 1510616, which was intended for sale in the United Kingdom. These boxes of test

strips did not have an NDC number or U.S. toll-free number. The outer packaging of these

boxes was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the inserts in these boxes of diverted FreeStyle test strips included Greek and Portuguese language and instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased boxes with Lot Numbers 1511219 and 1511813 from defendant SimpleMed Supply; a box with Lot Number 1510701 from defendant Bay Pharmacy; a box with Lot Number 1512004 from defendant B & T Marlboro Pharmacy and defendant La Ruche Pharmacy; and a box with Lot Number 1510616 from defendant Deals2000.

    398. **VIP International**.  On September 22, 2015, Abbott purchased 12 boxes of 50-count FreeStyle Lite test strips from VIP.  VIP delivered these test strips via UPS Ground from Staten Island, New York to Lake Success, New York in the Eastern District of New York.  These test strips were shipped in an unmarked box which housed a second unmarked box containing 12 loose boxes.  Ten of these boxes were diverted international FreeStyle Lite test strips, which were marked with various expiration dates and Lot Numbers:  6 boxes were marked with Lot Number 1513101 and an expiration date of May 2017, which were intended for sale in India; 3 boxes were marked with Lot Number 1513803 and an expiration date of June 2017, which were intended for sale in the Spain and Greece; and 1 box was marked with Lot Number 1504916 and an expiration date of March 2017, which was intended for sale in the United

Kingdom and Ireland.  These boxes of test strips did not have an NDC number or U.S. toll-free number.  The outer packaging of these boxes was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the inserts in these boxes of diverted FreeStyle test strips instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

399. **SimpleMed Supply**.  On September 18, 2015, Abbott purchased 12 boxes of diverted 50-count FreeStyle Lite test strips from SimpleMed.  SimpleMed delivered these test strips via UPS Ground from Salt Lake City, Utah to Lake Success, New York in the Eastern District of New York.  These test strips were shipped in an unmarked box containing 12 loose boxes.  The boxes were marked with various expiration dates and Lot Numbers:  4 boxes were marked with Lot Number 1511219 and an expiration date of May 2017, which were intended for sale in the United Kingdom and Ireland; 3 boxes were marked with Lot Number 1511802 and an expiration date of June 2017, which were intended for sale in the United Kingdom and Ireland; 3 boxes were marked with Lot Number 1514510 and an expiration date of June 2017, which were intended for sale in the United Kingdom; 1 box was marked with Lot Number 1511813 and an expiration date of May 2017, which was intended for sale in the United Kingdom and Ireland; and 1 box was marked with Lot Number 1515506 and an expiration date of June 2017, which was intended for sale in the United Kingdom.  These boxes of test strips did not have an NDC

number or U.S. toll-free number.  The outer packaging of these boxes was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the inserts in these boxes of diverted FreeStyle test strips included Greek and Portuguese language and instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased boxes with Lot Numbers 1511219 and 1511813 from defendant H&H; a box with Lot Number 1511802 from defendant The Modern Chemist; and a box with Lot Number 1514510 from defendant Sunrise Family Pharmacy.

400.  **Budget Drugs Pharmacy**.  On September 29, 2015, Abbott purchased 1 case (12 boxes) of diverted 50-count FreeStyle Lite test strips from Budget Drugs. Budget Drugs delivered these test strips via USPS Priority Mail from Hallandale, Florida to Lake Success, New York in the Eastern District of New York.  This case was shipped in a "ProPak" box that housed an Abbott branded case.  The case was marked with Lot Number 1514819 and an expiration date of June 2017.  The case bore obvious signs of having been opened and resealed, and the boxes within the case had a different Lot Number, 1506512, and different expiration date, March 2017. Moreover, each of these boxes was repackaged in an unauthorized replica of a box intended for sale in the European Union; and an unauthorized label was adhered to the vial of test strips located inside each box.  This repackaging was not performed under Abbott's oversight and was therefore not subjected to Abbott's quality-control standards and procedures.  Lot Number

1506512 was intended for sale in France. These boxes of test strips did not have an NDC number or U.S. toll-free number. In addition to the fact that the labeling on the package and vial was unauthorized, the outer packaging of these boxes was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark. This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the inserts in these boxes of diverted FreeStyle test strips instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

401. **Diabetes Supplies 4 Less**. On October 2, 2015, Abbott purchased 5 boxes of diverted 100-count FreeStyle Lite test strips from Diabetes Supplies 4 Less. Diabetes Supplies 4 Less delivered these test strips via UPS Next Day Air from Boynton Beach, Florida to Lake Success, New York in the Eastern District of New York. These test strips were shipped in an unmarked box containing 5 loose boxes. The boxes were marked with various expiration dates and Lot Numbers: 2 boxes were marked with Lot Number 1476020 and an expiration date of April 2016; 1 box was marked with Lot Number 1475202 and an expiration date of September 2016; 1 box was marked with Lot Number 1478604 and an expiration date of May 2016; and 1 box was marked with Lot Number 11475506 and an expiration date of April 2016. Four of the boxes were manufactured for sale in Australia, while Lot Number 1475202 was manufactured for sale in the United Kingdom. These boxes of test strips did not have an NDC number or U.S. toll-free number. The outer packaging of these boxes was missing several warnings and

instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the inserts in these boxes of diverted FreeStyle test strips instruct patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

       402.   **Berkeley Drugs**.  On September 16, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Berkeley Drugs.  This box was marked with an expiration date of April 2017 and Lot Number 1508503, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased a box with Lot Number 1508503 from defendant Kira's Pharmacy.

403.    **Careway Pharmacy Inc.**  On September 16, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Careway Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1511106, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

404.    On October 1, 2015, Abbott arranged for a second purchase to be made from Careway Pharmacy.  This time, however, the purchasing individual had diabetes and a prescription for test strips.  This person purchased one box of 50-count Abbott FreeStyle Lite test strips from Careway Pharmacy.  This box of test strips was marked with an expiration date of May 2017 and Lot Number 1510701.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many

ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

405.    Despite the lack of an NDC number on the outer box, the receipt from this purchase listed "NDC# 53885-0244-50," which is not the NDC number for 50-count boxes of U.S. FreeStyle Lite test strips, but is instead the NDC number for OneTouch Ultra test strips, which are manufactured and sold by LifeScan.  While Careway Pharmacy dispensed a box of diverted international FreeStyle test strips, it adjudicated a sale of OneTouch Ultra test strips under the purchaser's prescription benefit.   Furthermore, while the receipt suggests the purchaser paid a $15.00 copayment for this box, the pharmacy representative instructed him that he did not have to pay a copayment and therefore he did not.  The purchase was covered by and processed through the purchaser's insurance with Expres.  Thus, the Defendants are not only causing fraudulent rebate claims to be submitted to Abbott, but may also be causing fraudulent rebate claims to be submitted to other test strip manufacturers including LifeScan.

406.    **Harrico Galler Drug**.  On September 16, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Harrico Galler.  This box was marked with an expiration date of October 2016 and Lot Number 1476607, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international

product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

407.    On September 21, 2015, Abbott arranged for a second purchase to be made from Harrico Galler Drug.  This time, however, the purchasing individual had diabetes and a prescription for test strips.  This person purchased one box of 50-count Abbott FreeStyle Lite test strips from Harrico Galler Drug Corp.  She paid a $20.00 copayment for this box.  The remainder of the purchase for these test strips was covered by and processed through her insurance with Blue Cross/Blue Shield of New York.  Like the previous purchase from Harrico Galler Drug, this box of test strips was marked with an expiration date of October 2016 and Lot Number 1476607.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Despite the lack of an NDC number on the outer box,

-94-

the receipt from this purchase listed "NDC# 99073-708-22," which is the NDC number for 50-count boxes of FreeStyle Lite test strips sold by Abbott in the United States.  That NDC number was not listed anywhere on the packaging or the insert of the box of test strips.

408.  **The Modern Chemist**. On September 16, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Modern Chemist.  This box was marked with an expiration date of June 2017 and Lot Number 1511802, which was intended for sale in the United Kingdom and Ireland.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also received boxes with Lot Number 1511802 from defendant SimpleMed.

409.  **Vanderveer Pharmacy**.  On September 16, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Vanderveer Pharmacy.  This box was marked with an expiration date of February 2017 and Lot Number 1502818, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room

8780757v.1

temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

410.   **Kira's Pharmacy**.  On September 21, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Kira's Pharmacy.  This box was marked with an expiration date of April 2017 and Lot Number 1508503, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased a box with Lot Number 1508503 from defendant Berkeley Drugs.

411.   **Eliyahus Pharmacy**.  On September 21, 2015, Abbott purchased one box

of diverted 50-count FreeStyle Lite test strips from Eliyahus Pharmacy.  This box was marked

with an expiration date of November 2016 and Lot Number 1479508, which was intended for

sale in France.  This box was repackaged in an unauthorized replica of a box intended for sale in

the European Union; and an unauthorized label was adhered to the vial of test strips located

inside the box.  This repackaging was not performed under Abbott's oversight and was therefore

not subjected to Abbott's quality-control standards and procedures.  This box of test strips did

not have an NDC number or a U.S. toll-free phone number.  In addition to the fact that the

labeling on the package and vial was unauthorized, the outer packaging of this box was missing

several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse";

and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were

several foreign symbols present on the outer packaging of each box, including the "CE" mark.

This diverted international product also contained an instructional insert that is materially

different in many ways from the insert contained in all boxes of FreeStyle test strips packaged

for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips

instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are

test site locations that have been rejected by the U.S. FDA and are, therefore, not included in

instructions contained in boxes manufactured for sale in the United States.  Abbott also

purchased a box with Lot Number 1479508 from defendant 110 Pharmacy & Surgical.

   412. **Global Care Pharmacy**.  On September 21, 2015, Abbott purchased one

box of diverted 50-count FreeStyle Lite test strips from Global Care.  This box was marked with

an expiration date of May 2017 and Lot Number 1510515, which was intended for sale in the

United Kingdom and Ireland.  This box of test strips did not have an NDC number or a U.S. toll-

free phone number.  The outer packaging of this box was missing several warnings and

instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room

temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark. This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

413.    **8th Avenue Pharmacy**. On September 21, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from 8th Avenue Pharmacy. This box was marked with an expiration date of February 2017 and Lot Number 1503603, which was intended for sale in Israel and Lithuania. This box of test strips did not have an NDC number or a U.S. toll-free phone number. The outer packaging of this box included Arabic language and was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark, as well as Arabic language. This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips included Arabic and French language and instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

414.    **Sunrise Family Pharmacy**. On September 21, 2015, Abbott purchased

one box of diverted 50-count FreeStyle Lite test strips from Sunrise Family.  This box was marked with an expiration date of June 2017 and Lot Number 1514510, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips included Greek and Portuguese language and instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also received boxes with Lot Number 1514510 from defendant SimpleMed.

415.    **Bay Pharmacy**.  On September 28, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Bay Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1510701, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For

-99-

example, the insert in this box of diverted FreeStyle test strips included Greek and Portuguese language and instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also received boxes with Lot Number 1510701 from defendant H&H.

416.    **B & T Marlboro Pharmacy**.  On September 28, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from B & T Marlboro Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1512004, which was intended for sale in the United Kingdom and Jamaica.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international product also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips included Greek and Portuguese language and instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also received a box with Lot Number 1512004 from defendant H&H and defendant La Ruche Pharmacy.

417.    **110 Pharmacy & Surgical**.  On October 7, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from 110 Pharmacy & Surgical.  This box was marked with an expiration date of November 2016 and Lot Number 1479508, which was

intended for sale in France. This box was repackaged in an unauthorized replica of a box intended for sale in the European Union; and an unauthorized replica of the label was adhered to the vial of test strips located inside the box. This repackaging was not performed under Abbott's oversight and was therefore not subjected to Abbott's quality-control standards and procedures. This box of test strips did not have an NDC number or a U.S. toll-free phone number. In addition to the fact that the labeling on the package and vial was unauthorized, the outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States. Abbott also purchased a box with Lot Number 1479508 from defendant Eliyahus Pharmacy.

418.     **La Ruche Pharmacy**. On October 7, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from La Ruche Pharmacy. This box was marked with an expiration date of May 2017 and Lot Number 1512004, which was intended for sale in the United Kingdom and Jamaica. This box of test strips did not have an NDC number or a U.S. toll-free phone number. The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign

Case 1:15-cv-05826-CBA-LB   Document 307   Filed 03/28/16   Page 102 of 156 PageID #: 3586

symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips included Greek and Portuguese language and instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also received a box with Lot Number 1512004 from defendant H&H and defendant B & T Marlboro Pharmacy.

419.   **Estates Pharmacy**.  On October 7, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Estates Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1510604, which was intended for sale in the United Kingdom, Ireland, and Jamaica.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

420.   **Novex.**  In the past 24 months, Novex purchased tens of thousands of

-102-

8780757v.1

boxes of diverted international FreeStyle test strips from defendants GlobalMed, Product Trade Services, Wholesale Diabetic, and HMF, and sold them to defendants Save Rite and Medworld in the Eastern District of New York, as well as to defendants Matrix, Diabetes Supplies 4 Less, Medical Discount Services, NE Medical, Amexpo, Primed, Pharmacy Wholesale Services, and Z Worldwide.

421.    **Tri-State.**  In the past 24 months, Tri-State purchased diverted international boxes of FreeStyle test strips from defendants Adelphia, Value Wholesale, and Casharim, and sold them to defendant Save Rite in the Eastern District of New York, as well as to defendants Matrix, Payless, Value Wholesale, Ixthus, and Bob-Bila.

422.    **Value Wholesale.**  In the past 24 months, Value Wholesale has purchased diverted international boxes of FreeStyle test strips from defendants H&H, HMF, Massalah, Tri-State, Wholesale Diabetic, and Novex, and sold them to defendants Matrix, H&H, SAPS, Bob-Bila, Ixthus, Pharmacy Wholesale Services, Tri-State, and Wholesale Diabetic.

423.    **Medical Discount Services.**  In the past 24 months, Medical Discount has purchased tens of thousands of boxes of diverted international FreeStyle test strips (including from defendants Adelphia and TAS Medical in the Eastern District of New York, and defendants Novex, Casharim, and Coolrelic) and sold them to numerous pharmacies, including many in the Eastern District of New York (such as defendant Eliyahu's Pharmacy) and in other districts, including defendant Budget Drugs.

424.    **Payless.**  In the past 24 months, Payless has purchased diverted international FreeStyle test strips from defendant Tri-State and sold them to numerous pharmacies, including many in the Eastern District of New York (such as defendant Estates Pharmacy).

425.    **SAPS.**  In the past 24 months, SAPS has purchased hundreds of boxes of

-103-

diverted international FreeStyle test strips from defendants HMF and Value Wholesale and sold these boxes to numerous pharmacies, including many in the Eastern District of New York. For example, SAPS Drug Wholesale sold 25 boxes of diverted international FreeStyle test strips to defendant Careway Pharmacy in the Eastern District of New York on September 25, 2015. The invoice for this transaction lists defendant Anatoliy Fain (under the name "Anatoly Fair").

426. **Ixthus.** In the past 24 months, Ixthus has purchased diverted international boxes of FreeStyle test strips from defendants Adelphia, TAS Medical, Tri-State, and Value Wholesale in the Eastern District of New York, as well as from defendants Coolrelic, HMF, and NE Medical. Ixthus sold these diverted international boxes of FreeStyle test strips to, among other places, the Eastern District of New York. For example, between approximately September 3, 2014 and April 3, 2015, Ixthus sold approximately 46 diverted international boxes of FreeStyle test strips to defendant 110 Pharmacy & Surgical with a SKU of 2179171091, which Abbott uses for FreeStyle test strips designed for sale in India and not for sale in the United States. In addition, between approximately May 21, 2015 and October 9, 2015, Ixthus sold approximately 16 diverted international boxes of FreeStyle test strips to defendant 110 Pharmacy & Surgical with a SKU of 2179170815, which Abbott uses for FreeStyle test strips designed for sale in the United Kingdom and not for sale in the United States.

427. **Comply USA.** In the past 24 months, Comply USA has sold diverted international boxes of FreeStyle test strips to defendant Adelphia in the Eastern District of New York, as well as to defendant NE Medical.

428. **Drugplace.** In the past 24 months, Drugplace has purchased diverted international FreeStyle test strips from defendant Able Wholesalers and sold them to defendant Adelphia in the Eastern District of New York.

429. **HMF.** In the past 24 months, HMF has purchased diverted international

FreeStyle test strips from defendant Able Wholesalers and sold them to defendants Adelphia,

Massalah Trading, and Product Performance in the Eastern District of New York, as well as to

defendants Ixthus, M & L Brothers Pharmacy, Medical Care Supplies, Novex, Power

Distribution, Value Wholesale, Wholesale Diabetic, SAPS, Pharma Supply, and E-Pharm.

       430.   **Wholesale Diabetic.**  In the past 24 months, Wholesale Diabetic has

purchased diverted international boxes of FreeStyle test strips from defendants Able Wholesalers

and HMF, and sold them to defendants Adelphia, Massalah Trading, and Product Performance in

the Eastern District of New York, as well as to Cape Pharmacy, H&H, Ixthus, M & L Brothers

Pharmacy, Medical Care Supplies, Novex, Physician Choice Pharmacy, Power Distribution, and

Value Wholesale.

       431.   **Primed.**  In the past 24 months, Primed has purchased diverted

international boxes of FreeStyle test strips from defendant Adelphia in the Eastern District of

New York and sold them to numerous pharmacies including New Moon Pharmacy and Fairfield

Pharmacy in the Eastern District of New York.

       432.   **NE Medical.**  In the past 24 months, NE Medical has purchased diverted

international FreeStyle test strips from defendant Adelphia in the Eastern District of New York,

as well as from defendants Comply USA and Novex, and sold them to, among others, defendant

Med-Plus.

       433.   **TAS Medical.**  In the past 24 months, defendant TAS Medical has

purchased diverted international FreeStyle test strips from FCL Health Solutions and sold them

to defendant Medical Discount Services.

       434.   **Product Performance.**  Defendant Product Performance purchased 480

boxes of diverted international FreeStyle test strips from defendant Wholesale Diabetic on or

around March 26, 2015.  Product Performance also purchased 1200 boxes of diverted

international FreeStyle test strips from defendant HMF on or around June 4, 2015.  Product Performance sold these diverted international boxes of FreeStyle test strips to defendant Med-Plus.

435.     **Med-Plus.**  Defendant Med-Plus purchased 480 boxes of diverted international FreeStyle test strips from defendant Product Performance on or around March 26, 2015, and another 1200 boxes of diverted international FreeStyle test strips from defendant Product Performance on or around June 4, 2015.  Med-Plus also purchased approximately 500 boxes of diverted international FreeStyle test strips from defendant NE Medical on or about May 20, 2015.  In addition, Med-Plus purchased diverted international boxes of FreeStyle test strips from defendant Adelphia.

436.     **Delray.**  In the past 24 months, Delray purchased diverted international FreeStyle test strips from defendants Pharmaline and DP Solutions, and sold them to defendant H&H.

437.     **DP Solutions.**  In the past 24 months, DP Solutions supplied diverted international FreeStyle test strips to defendants H&H and Delray.

438.     **Globe Wanted.**  In the past 24 months, Globe Wanted purchased diverted international FreeStyle test strips from defendant Pharmaline and sold them to defendant H&H.

439.     **Massalah.**  In the past 24 months, Massalah purchased diverted international FreeStyle test strips from defendants Wholesale Diabetic and HMF, and sold them to defendant Value Wholesale in the Eastern District of New York, as well as to H&H.

440.     **South Second**.  In the past 24 months, defendant South Second has, from the Eastern District of New York, purchased diverted international test strips from defendant Medical Discount Services.

441.     **Able Wholesalers**.  In the past 24 months, Able Wholesalers has

purchased diverted international FreeStyle tests trips from defendants H&H and Smartway, and

supplied them to defendants Drugplace, HMF, Wholesale Diabetic, and Z Worldwide.

442.    **Amexpo.**  In the past 24 months, Amexpo has purchased diverted

international FreeStyle test strips from defendants Novex, Medical Discount Services, and

Magchop, and supplied diverted international FreeStyle test strips to defendant Priority Care.

443.    **Bob-Bila.**  In the past 24 months, Bob-Bila has purchased diverted

international FreeStyle test strips from defendants Value Wholesale and Tri-State in the Eastern

District of New York, and supplied them to numerous pharmacies in the Eastern District of New

York including A&F Pharmacy Inc. and Bernhards Pharmacy.

444.    **Coolrelic.**  In the past 24 months, Coolrelic has purchased diverted

international FreeStyle test strips from defendant Wholesale Diabetic, and supplied diverted

international FreeStyle test strips to defendants Ixthus and Medical Discount Services.

445.    **E-Pharm.**  In the past 24 months, E-Pharm has purchased diverted

international FreeStyle test strips from defendants Power Distribution and HMF, and supplied

diverted international FreeStyle test strips to defendant Goodlife Pharmacy.

446.    **G&P Supplies.**  In the past 24 months, G&P Supplies has sold diverted

international FreeStyle test strips.

447.    **Deals2000.**  On October 16, 2015, Abbott purchased one box of diverted

50-count FreeStyle Lite test strips from Deals2000.  Deals2000 delivered these test strips in an

unmarked box via USPS Parcel Select Lightweight from Bordentown, New Jersey, to New Hyde

Park, New York in the Eastern District of New York.  This box was marked with an expiration

date of May 2017 and Lot Number 1510616, which was intended for sale in the United

Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.

The outer packaging of this box was missing several warnings and instructions, including "For *in*

*vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased a box with Lot Number 1510616 from defendant H&H.

448.    **Lightbox Medical.**  In the past 24 months, Lightbox Medical has supplied diverted international FreeStyle test strips to defendant Primed, which operates out of an address in the Eastern District of New York.

449.    **Magchop.**  In the past 24 months, Magchop has supplied diverted international FreeStyle test strips to defendant Amexpo.

450.    **NuMed.**  In the past 24 months, NuMed has purchased diverted international FreeStyle test strips from defendants Adelphia, which is also in the Eastern District of New York, and H&H, and sold them to non-party Owego Pharmacy in Owego, NY.

451.    **Pharma Supply.**  In the past 24 months, Pharma Supply has purchased diverted international FreeStyle test strips from defendant HMF.

452.    **Power Distribution.**  In the past 24 months, Power Distribution has purchased diverted international FreeStyle test strips from defendants HMF and Wholesale Diabetic, and supplied diverted international FreeStyle test strips to defendant E-Pharm.

453.    **Savoy.**  In the past 24 months, Savoy has purchased diverted international

FreeStyle test strips from defendant Adelphia, which is also in the Eastern District of New York.

454.   **Medworld.**  In the past 24 months, Medworld has purchased diverted international FreeStyle test strips from defendant Novex.

455.   **Kimberly Stevens.**  In the past 24 months, Kimberly Stevens has supplied diverted international FreeStyle test strips to defendant YX Enterprices.

456.   **Vital Health.**  In the past 24 months, Vital Health has purchased diverted international FreeStyle test strips from defendant Diabetes Supplies 4 Less and H&H.

457.   **TDP Trading.**  In the past 24 months, TDP Trading has purchased diverted international FreeStyle test strips from defendant HMF.

458.   **Terrific Care.**  In the past 24 months, Terrific Care has purchased diverted international FreeStyle test strips from defendant Adelphia in the Eastern District of New York, and supplied diverted international FreeStyle test strips to KJ Pharmacy in Monroe, NY.

459.   **YX Enterprices.**  In the past 24 months, YX Enterprices has purchased diverted international FreeStyle test strips from defendant Kimberly Stevens, and sold them to defendant Primed.

460.   **Z Worldwide.**  In the past 24 months, Z Worldwide has purchased diverted international FreeStyle test strips from defendant Novex, and supplied them to defendant Able Wholesalers.

461.   **Pharmacy Wholesale Services.**  In the past 24 months, Pharmacy Wholesale Services has purchased diverted international FreeStyle test strips from defendants Adelphia, Novex, and Primed, and supplied them to defendants Childrens Care Pharmacy, Advanced Pharmacy, Advanced Scripts, Carepointe, and Manifest Pharmacy, as well as numerous pharmacies in the Eastern District of New York including Northside Pharmacy, Rose

Pharmacy, and Wrays Pharmacy.

462. **Advanced Pharmacy.**  In the past 24 months, Advanced Pharmacy has purchased diverted international FreeStyle test strips from defendant Pharmacy Wholesale Services.

463. **Advanced Scripts.**  In the past 24 months, Advanced Scripts has purchased diverted international FreeStyle test strips from defendant Pharmacy Wholesale Services.

464. **Carepointe.**  In the past 24 months, Carepointe has purchased diverted international FreeStyle test strips from defendant Pharmacy Wholesale Services.

465. **Childrens Clinic Pharmacy.**  In the past 24 months, Childrens Clinic Pharmacy has purchased diverted international FreeStyle test strips from defendants Pharmacy Wholesale Services and H&H.

466. **Manifest Pharmacy.**  In the past 24 months, Manifest Pharmacy has purchased diverted international FreeStyle test strips from defendant Pharmacy Wholesale Services.

467. **Priority Care.**  In the past 24 months, Priority Care has purchased diverted international FreeStyle test strips from defendants H&H and Amexpo.

468. **Goodlife Pharmacy.**  In the past 24 months, Goodlife Pharmacy has purchased diverted international FreeStyle test strips from defendant E-Pharm.

469. **Fifty50 Medical.**  In the past 24 months, Fifty50 Medical has purchased diverted international FreeStyle test strips from defendant Adelphia in the Eastern District of New York, as well as defendants H&H and Medical Discount Services.

470. **Stampmatic.**  In the past 24 months, Stampmatic has purchased diverted international FreeStyle test strips from defendant Adelphia as well as defendants H&H, NPR

BioMedical, and San Pedro Pharmacy, and then supplied them to numerous pharmacies in the Eastern District of New York including Rose Pharmacy, Amrina Pharmacy, and Linden Pharmacy.

471. **NPR BioMedical.** In the past 24 months, NPR BioMedical has supplied diverted international FreeStyle test strips to defendant Stampmatic.

472. **San Pedro Pharmacy.** In the past 24 months, San Pedro Pharmacy has supplied diverted international FreeStyle test strips to defendant Stampmatic.

473. **Cape Pharmacy.** In the past 24 months, Cape Pharmacy has purchased diverted international FreeStyle test strips from defendant Wholesale Diabetic.

474. **M & L Brothers Pharmacy.** In the past 24 months, M & L Brothers Pharmacy has purchased diverted international FreeStyle test strips from defendants HMF and Wholesale Diabetic.

475. **Medical Care Supplies.** In the past 24 months, Medical Care Supplies has purchased diverted international FreeStyle test strips from defendants HMF and Wholesale Diabetic.

476. **Physician Choice Pharmacy.** In the past 24 months, Physician Choice Pharmacy has purchased diverted international FreeStyle test strips from defendant Wholesale Diabetic.

477. **Casharim.** In the past 24 months, Casharim has supplied diverted international FreeStyle test strips to defendants Adelphia and Tri-State in the Eastern District of New York, as well as to defendants H&H and Medical Discount Services.

478. **Express Chemist.** In the past 24 months, Express Chemist supplied diverted international FreeStyle test strips to defendant Adelphia in the Eastern District of New York.

479.     **FCL Health Solutions.**  In the past 24 months, FCL Health Solutions has supplied diverted international FreeStyle test strips to defendant TAS Medical in the Eastern District of New York.

480.     **Globalmed.**  In the past 24 months, Globalmed has supplied diverted international FreeStyle test strips to defendants H&H and Novex.

481.     **Absolute Freight Services.**  On dozens of occasions since at least 2013, Absolute Freight Services and Luis Soto have provided customs broker services and served as agents to Globalmed and others by facilitating the importation of over 100,000 boxes of diverted international FreeStyle test strips into the United States.  Absolute Freight Services provided and continued to provide these services despite knowing that Globalmed and others were using diverted international FreeStyle test strips in U.S. commerce, and thereby engaging in trademark infringement.

482.     **Product Trade Services.**  In the past 24 months, Product Trade Services has supplied diverted international FreeStyle test strips to defendant Novex.

483.     **Smartway.**  In the past 24 months, Smartway has supplied diverted international FreeStyle test strips to defendant Able Wholesalers.

484.     **Danny Katz.**  On January 15, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user archiesells.  The seller's name, per the payment information and return address, was Danny Katz.  A package containing these test strips was delivered from 124 Seville Street, Vallejo, CA 94591, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of May 2016 and Lot Number 1478812, which was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing";

"Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In

addition, there were several foreign symbols present on the outer packaging of the box, including

the "CE" mark.

485.   **David Strathy.**  On January 17, 2016, Abbott purchased one box of 50-

count FreeStyle Lite test strips through eBay from the user bargainstore777.  The seller's name,

per the return address, was Dave Strathy and the payment information listed the name Bargain

Pawn.  A package containing these test strips was delivered from 891 Radford Street,

Christiansburg, VA 24073-3306, to Sunnyside, New York in the Eastern District of New York.

This box was marked with an expiration date of January 2017 and Lot Number 1485206, which

was intended for sale in the United Kingdom and Jamaica.  This box of test strips did not have an

NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing

several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not

reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there

were several foreign symbols present on the outer packaging of the box, including the "CE"

mark.

486.   **Gregory Sargent.**  On January 15, 2016, Abbott purchased one box of

100-count FreeStyle Lite test strips through eBay from the user ghs-corp.  The seller's name,

from the payment information and return address, was Gregory Sargent.  A package containing

these test strips was delivered from 19118 10th Avenue Court East, Spanaway, Washington

98387, to Sunnyside, New York in the Eastern District of New York.  This box was marked with

an expiration date of April 2017 and Lot Number 1525905, which was intended for sale in

Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.

The outer packaging of this box was missing several written warnings and instructions, including

"For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F -

8780757v.1

86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

487.   **NWHOLESALEDEALS.**  On January 15, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user nwholesaledeals.  The seller's name was listed as NWHOLESALEDEALS, INC on the payment information and as Hsiu Sargent on the shipping information.  A package containing these test strips was delivered from 19118 10th Avenue Court East, Spanaway, WA 98387, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of April 2017 and Lot Number 1525905, which was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

488.   **Thomas Gulik.**  On January 15, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user guli.us2013.  The seller's name, from the payment information and return address, was Thomas Gulik.  A package containing these test strips was delivered from 430 3rd Avenue, Dunedin, FL 34698, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of August 2016 and Lot Number 1503405, which was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including

the "CE" mark.

489.    **Insight Design.**  In the past 24 months, Insight Design has supplied diverted international FreeStyle test strips to defendant DP Solutions.  On January 15, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through eBay from the user insightdesign3.  The seller's name was listed on the return address as Insight Design and on the payment information as Tony Kvenvold.  A package containing these test strips was delivered from 41 South Shaker Road, Harvard, MA 01451, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of October 2016 and Lot Number 1476501, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For in vitro diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)." In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

490.    **Carl Telander.**  On January 14, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user justabgkid.  The seller's name, from the payment information and return address, was Carl C. Telander.  A package containing these test strips was delivered from 430 South Grant Avenue, Springfield, MO 65806, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of March 2016 and Lot Number 1475208, which was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the

box, including the "CE" mark.

491.   **Attila and Pat Kekesi.**  On January 15, 2016, Abbott purchased two boxes of 50-count FreeStyle Lite test strips through eBay from the user kekes.kekes, and then another two boxes on January 17, 2016.  The seller's name was listed on the return addresses as Attila Kekesi and Mr. and Mrs. Attila Kekesi, and on the payment information as Pat Kekesi.  A package containing these test strips was delivered from 16 Holloway Lane, Bordentown, NJ 08505 to Sunnyside, New York, in the Eastern District of New York.  These boxes were marked with expiration dates of May 2017 and June 2017 and Lot Numbers 1510515, 1510616, 1511106, and 1514819.  Lot 1510515 was intended for sale in Australia; Lots 1510616 and 1511106 were intended for sale in the United Kingdom; and Lot 1514819 was intended for sale in the United Kingdom, Barbados, Ireland, and the Netherlands.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)." In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

492.   **Astute Healthcare.**  On January 15, 2016, Abbott purchased two boxes of 50-count FreeStyle Lite test strips through eBay from the user lyolawire.  The seller's name was listed on the payment information as Deal Beans LLC.  A package containing these test strips was delivered to Sunnyside, New York in the Eastern District of New York.  An Amazon invoice contained in the package showed that the strips had been purchased from the Amazon seller e-net solution.  The return address also listed the shipper as e-net solution.  These boxes were marked with an expiration date of June 2017 and Lot Number 1514803, which was intended for sale in Italy.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.

-116-

The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)." In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

493.    **MISAR.** On January 12, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through Amazon from the user MISAR LLC. The seller's name, from the return address, was MISAR LLC. A package containing these test strips was delivered to Sunnyside, New York in the Eastern District of New York. This box was marked with an expiration date of April 2017 and Lot Number 1525907, which was intended for sale in Australia. This box of test strips did not have an NDC number or a U.S. toll-free phone number. The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)." In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

494.    **Jacqueline Herrera.** On January 15, 2016, Abbott purchased one vial of 50-count FreeStyle Lite test strips through eBay from the user pinkyjackie932011. The seller's name, from the payment information and return address, was Jacqueline Herrera. A package containing these test strips was delivered from 31631 Brucite Street, Lucerne Valley, CA 92356, to Sunnyside, New York in the Eastern District of New York. This vial was marked with an expiration date of August 2016 and Lot Number 1501402, which was intended for sale in Australia. This vial of test strips—which had already been removed from its outer, sealed packaging—did not have an NDC number or a U.S. toll-free phone number. In addition, there were several foreign symbols present on the vial, including the "CE" mark.

495.    **VLS.** On January 17, 2016, Abbott purchased one box of 50-count

-117-

FreeStyle Lite test strips through eBay from the user qualitywebsites.  The seller's name, from

the return address, was VLS.  A package containing these test strips was delivered from 2125 S.

48th Street, #103, Tempe, AZ 85282, to Sunnyside, New York in the Eastern District of New

York.  This box was marked with an expiration date of April 2017 and Lot Number 1506906,

which was intended for sale in New Zealand.  This box of test strips did not have an NDC

number or a U.S. toll-free phone number.  The outer packaging of this box was missing several

written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse";

and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were

several foreign symbols present on the outer packaging of the box, including the "CE" mark.

496.  **Sherwood.**  On January 15, 2016, Abbott purchased one box of 100-count

FreeStyle Lite test strips through eBay from the user sherwoodmedical.  The seller's name was

listed on the payment information as Sherwood Prime, Inc., and on the shipping information as

Sherwood Medical Supplies.  A package containing these test strips was delivered from 2232

Homecrest Avenue, Brooklyn, NY 11229, to Sunnyside, New York.  This box was marked with

an expiration date of January 2017 and Lot Number 1516109, which was intended for sale in

Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.

The outer packaging of this box was missing several written warnings and instructions, including

"For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F -

86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer

packaging of the box, including the "CE" mark.

497.  **Premier Equipment Solutions and Trusted Medical Supply.**  On

January 15, 2016, Abbott purchased two boxes of 50-count FreeStyle Lite test strips through

eBay from the user treasurechest500.  The seller's name, from the payment information and

eBay listing, was Premier Equipment Solutions, Inc., located at 173 Sherry Street, Rutherfordton,

North Carolina 28139, and the name listed on the return address was Trusted Medical Supply Inc.  A package containing these test strips was delivered from Trusted Medical Supply Inc. at 222 North Lafayette Street, Suite 02, Shelby, NC 28150, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of May 2017 and Lot Numbers 1512502 and 1510420, which were both intended for sale in France.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

498.     **Danjal Hansen.**  On January 15, 2016, and again on January 17, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user djhansentlc, for a total of two 100-count boxes.  The seller's name, from the payment information and return address, was Danjal Hansen.  Packages containing these test strips were delivered from 275 Rexford Drive, Hamilton, Ontario, L8W2A6, Canada, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of November 2016 and Lot Number 1481615, which was intended for sale in Canada.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

499.     **Product Ltd.**  On January 15, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through eBay from the user products.ltd2002.  The seller's name,

from the payment information and return address, was Product Ltd.  A package containing these test strips was delivered from Arlozorov 176, Tel-Aviv, 99885, Israel, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of June 2017 and Lot Number 1515301, which was intended for sale in Saudi Arabia and Israel.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

500.   **Erik Berg.**  In the past 24 months, Berg has supplied diverted international FreeStyle test strips to defendant Diabetes Supplies 4 Less.

501.   **Tiffany Riggs.**  In the past 24 months, Riggs has supplied diverted international FreeStyle test strips to defendant DP Solutions.

502.   **Leonid Beigelman.**  In the past 24 months, Beigelman has supplied diverted international FreeStyle test strips to defendant DP Solutions.

503.   **National Medical Management.**  In the past 24 months, National Medical Management has supplied diverted international FreeStyle test strips to defendant DP Solutions.

504.   **Yusuf Muse.**  In the past 24 months, Muse has supplied diverted international FreeStyle test strips to defendant DP Solutions.

505.   **Ran Lev.**  In the past 24 months, Ran Lev has supplied diverted international FreeStyle test strips to defendant DP Solutions.

506.   **Sharine and Chaoying Xuan.**  In the past 24 months, Sharine and Chaoying Xuan have supplied diverted international FreeStyle test strips to defendants DP

Solutions and Diabetes Supplies 4 Less.

507.   **Brian McClelland.**  In the past 24 months, McClelland has supplied diverted international FreeStyle test strips to defendant Diabetes Supplies 4 Less.

508.   **James H. Redecopp.**  In the past 24 months, Redecopp has supplied diverted international FreeStyle test strips to defendant Diabetes Supplies 4 Less.

509.   **Christopher Aarons.**  On January 15, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through eBay from the user aarons_gaming_supplies.  The seller's name, per the return address, was Christopher Aarons.  A package containing these test strips was delivered to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of May 2016 and Lot Number 1479404, which was intended for sale in Lithuania, Israel, and Egypt.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

510.   **Avi Frankman.**  On January 15, 2016, Abbott purchased two boxes of 50-count FreeStyle Lite test strips through eBay from the user avi621981.  The seller's name, from the payment information and return address, was Avi Frankman.  A package containing these test strips was delivered from Zikhorn Ya'Akov 10 Apt 25, Jerusalem, 94421, Israel, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of July 2017 and Lot Number 1518111, which was intended for sale in Lithuania and Israel.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F -

86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer

packaging of each box, including the "CE" mark.

511.  **Johnny K. Chan.**  On January 17, 2016, Abbott purchased one box of 50-

count FreeStyle Lite test strips through eBay from the user bbkenken.  The seller's name, per the

payment information and return address, was Johnny Chan.  A package containing these test

strips was delivered from 450 Lane E, Hazlet, New Jersey 07730-6000, to Sunnyside, New York

in the Eastern District of New York.  This box was marked with an expiration date of February

2017 and Lot Number 1503603, which was intended for sale in Lithuania and Israel.  This box of

test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging

of this box was missing several written warnings and instructions, including "For *in vitro*

diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C

- 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the

box, including the "CE" mark.

512.  **Ashraf Awad.**  In the past 24 months, Ashraf Awad has supplied diverted

international FreeStyle test strips to defendant DP Solutions.  On January 9, 2016, Abbott

purchased one box of 100-count FreeStyle Lite test strips through eBay from the user

bid2win_au.  The seller's name, from the payment information and return address, was Ashraf

Awad.  A package containing these test strips was delivered from Unit 4/163 Pitt Street,

Merrylands, NSW 2160, Australia, to Sunnyside, New York in the Eastern District of New York.

This box was marked with an expiration date of January 2017 and Lot Number 1516117, which

was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S.

toll-free phone number.  The outer packaging of this box was missing several written warnings

and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room

temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign

symbols present on the outer packaging of the box, including the "CE" mark.

513.    **Jiri Svec.**  On January 15, 2016, Abbott purchased two boxes of 100-count FreeStyle Lite test strips through eBay from the user christmasfromczech.  The seller's name, from the payment information and return address, was Jiri Svec.  A package containing these test strips was delivered from Kozusany 134, Kozusany, 78378, Czech Republic, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of April 2017 and Lot Number 1526410, which was intended for sale in the Czech Republic.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

514.    **Ella Sela.**  On January 11, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through Amazon from the user ELLA'S VISION.  On January 15, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through eBay from the user ellasvision.  The seller's name was listed on the eBay payment information as Ella Sela.  Packages containing these test strips were delivered from Petrou Ralli Street 77, 12241 Aigaleo, Greece, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of July 2017 and Lot Number 1517619, which was intended for sale in Portugal and Spain.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

515.   **Konstantinos Polychronopoulos.**   On January 9, 2016, Abbott purchased

four boxes of 50-count FreeStyle Lite test strips through Amazon from the user freepharma.   The

seller's name, per the return address, was Konstantinos Polychronopoulos.   A package

containing these test strips was delivered from Notara 12, Patras, 26441, Greece, to Sunnyside,

New York in the Eastern District of New York.   These boxes were marked with an expiration

date of November 2017 and Lot Number 1528103, which was intended for sale in Spain and

Greece.   These boxes of test strips did not have an NDC number or a U.S. toll-free phone

number.   The outer packaging of these boxes was missing several written warnings and

instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room

temperature between 40° F - 86° F (4° C - 30° C)."   In addition, there were several foreign

symbols present on the outer packaging of the boxes, including the "CE" mark.

516.   **Joseph Karas.**   On January 17, 2016, Abbott purchased three boxes of

100-count FreeStyle Lite test strips through eBay from the user josep-kara.   The seller's name,

from the payment information and return address, was Joseph Karas.   A package containing

these test strips was delivered from 69 Ormiston Circuit, Harrison, Australian Capital Territory

2914, Australia, to Sunnyside, New York in the Eastern District of New York.   These boxes were

marked with an expiration date of February 2017 and Lot Number 1520113, which was intended

for sale in Australia.   These boxes of test strips did not have an NDC number or a U.S. toll-free

phone number.   The outer packaging of these boxes was missing several written warnings and

instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room

temperature between 40° F - 86° F (4° C - 30° C)."   In addition, there were several foreign

symbols present on the outer packaging of the boxes, including the "CE" mark.

517.   **Laurynas and Tadas Lemesovas.**   In the past 24 months, Laurynas and

Tadas Lemesovas supplied diverted international FreeStyle test strips to defendant Adelphia in

the Eastern District of New York, as well as to defendant Delray.  On January 15, 2016, Abbott purchased ten boxes of 50-count FreeStyle Lite test strips through eBay from the user laurynas1986.  The seller's name was Laurynas Lemesovas per the payment information.  A package containing these test strips was delivered from Gamyklos 52-16, Vilnius, Rudamina 13251, Lithuania, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with expiration dates of April 2017, June 2017, and September 2017 and Lot Numbers 1509102, 1513907, 151422, and 1524415.  Lots 1513907, 151422, and 1524415 were intended for sale in Germany, and Lot 1509102 was intended for sale in Germany and Singapore.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

518.    **Luis Santiago.**  On January 15, 2016, Abbott purchased one box of 100-count FreeStyle Lite test strips through eBay from the user lsantiago02.  The seller's name, per the payment information and return address, was Luis E. Santiago.  A package containing these test strips was delivered from P.O. Box 1127, Stratford, Connecticut 06615, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of December 2016 and Lot Number 1510512, which was intended for sale in Australia.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

519.   **Spyridon Psonis.**  On January 9, 2016, Abbott purchased one box of 50-count FreeStyle Lite test strips through Amazon from the user Parapharmacy Store.  The seller's name, from the return address, was Parapharmacy Store.  A package containing these test strips was delivered from Evangelistrias 14, 241 00 Kalamata, Greece, to Sunnyside, New York in the Eastern District of New York.  This box was marked with an expiration date of November 2017 and Lot Number 1528103, which was intended for sale in Spain and Greece.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.

520.   **Towers Pharmacy.**  On January 15, 2016, Abbott purchased ten boxes of 100-count FreeStyle Lite test strips through eBay from the user towerspharmacy1967.  The seller's name was listed on the payment information as Simon Duffell and on the receipt as Towers Pharmacy.  A package containing these test strips was delivered from 3059 Surfers Paradise Boulevard, Surfers Paradise, Queensland 4217, Australia, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of January 2017 and Lot Number 1516109, which was intended for sale in Australia.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

521.   **Raleigh Paolella-Titschinger.**  On January 15, 2016, Abbott purchased

one box of 100-count FreeStyle Lite test strips through eBay from the user just_a_mom1.  The

seller's name, from the return address, was Titschinger.  A package containing these test strips

was delivered from 2743 Mull Avenue, Copley, Ohio, 44321, to Sunnyside, New York in the

Eastern District of New York.  This box was marked with an expiration date of April 2016 and

Lot Number 1476007, which was intended for sale in Australia.  This box of test strips did not

have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was

missing several written warnings and instructions, including "For *in vitro* diagnostic testing";

"Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  In

addition, there were several foreign symbols present on the outer packaging of the box, including

the "CE" mark.

522.    **Al Gray.**  On January 15, 2016, Abbott purchased three boxes of 50-count

FreeStyle Lite test strips through eBay from the user sdfrog.  The seller's name, from the return

address, was S D'FROG.  A package containing these test strips was delivered to Sunnyside,

New York in the Eastern District of New York.  These boxes were marked with an expiration

date of November 2016 and Lot Number 1479508, which was intended for sale in France.  These

boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer

packaging of these boxes was missing several written warnings and instructions, including "For

*in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86°

F (4° C - 30° C)."  In addition, there were several foreign symbols present on the outer

packaging of the boxes, including the "CE" mark.

523.    **Manish Mittal.**  On January 17, 2016, Abbott purchased two boxes of 50-

count FreeStyle Lite test strips through eBay from the user thesmartshopallinone.  The seller's

name, from the return address and payment information, was Manish Mittal.  A package

containing these test strips was delivered from WZ47B, Manohar Park, East Punjab Bagh, Delhi,

-127-

DL 110026, India, to Sunnyside, New York in the Eastern District of New York.  These boxes were marked with an expiration date of January 2017 and Lot Number 1519016, which was intended for sale in India.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several written warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)."  The boxes are also marked "For sale in India only."  In addition, there were several foreign symbols present on the outer packaging of the boxes, including the "CE" mark.

   524. **86th Street Community Pharmacy.**  In the past 24 months, 86th Street Community Pharmacy has purchased diverted international FreeStyle test strips from defendant H&H.  On December 2, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from 86th Street Community Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1510701, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased boxes with Lot Number 1510701 from defendants H&H, Careway

Pharmacy, and Bay Pharmacy.

525.    **Amin Pharmacy.**  In the past 24 months, Amin Pharmacy has purchased diverted international FreeStyle test strips from defendant Payless.  On December 14, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Amin Pharmacy. This box was marked with an expiration date of January 2017 and Lot Number 1485206, which was intended for sale in the United Kingdom and Jamaica.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.  Abbott also purchased boxes with Lot Number 1485206 from defendant Adelphia.

526.    **Desai's Pharmacy.**  In the past 24 months, Desai's Pharmacy has purchased diverted international FreeStyle test strips from defendant Medical Discount Services. On December 1, 2015, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Desai's Pharmacy.  This box was marked with an expiration date of September 2016 and Lot Number 1505012, which was intended for sale in the Czech Republic and Israel.  This box was repackaged in an unauthorized replica of a box intended for sale in the European Union; and an unauthorized label was adhered to the vial of test strips located inside the box.  This

-129-

repackaging was not performed under Abbott's oversight and was therefore not subjected to Abbott's quality-control standards and procedures.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

527.  **Falcon Drugs.**  In the past 24 months, Falcon Drugs has purchased diverted international FreeStyle test strips from defendant Adelphia.  On November 2, 2015, Abbott served Falcon Drugs with a subpoena and a copy of the Court's October 22, 2015 Expedited Discovery Order.  Falcon Drugs responded to the subpoena on November 5, 2015, producing invoices showing that it purchased diverted international FreeStyle test strips from defendant Adelphia in the Eastern District of New York.  Notwithstanding the fact that it received and produced documents responsive to the subpoena, Falcon Drugs continued to sell diverted international FreeStyle test strips.  On February 19, 2016, Abbott purchased two boxes of diverted 50-count FreeStyle Lite test strips from Falcon Drugs.  These boxes were marked with an expiration date of November 2016 and Lot Number 1481513, which was intended for sale in the United Kingdom.  These boxes of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of these boxes was missing several warnings and

instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of each box, including the "CE" mark.  These diverted international boxes also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in these boxes of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

528.  **Lafayette Drugs.**  In the past 24 months, Lafayette Drugs has purchased diverted international FreeStyle test strips from defendant H&H.  On November 24, 2015, Abbott served Lafayette Drugs with a subpoena and a copy of the Court's October 22, 2015 Expedited Discovery Order.  Lafayette Drugs responded to the subpoena on December 16, 2015, producing invoices showing that it purchased diverted international FreeStyle test strips from defendant H&H.  Notwithstanding the fact that it received and produced documents responsive to the subpoena, Lafayette Drugs continued to sell diverted international FreeStyle test strips.  On February 22, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Lafayette Drugs.  This box was marked with an expiration date of November 2016 and Lot Number 1480216, which was intended for sale in the United Kingdom.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially

-131-

different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

529. **Medex Supply.** On February 16, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Medex Supply. This box was marked with an expiration date of April 2017 and Lot Number 1508902, which was intended for sale in Greece, Portugal, and Cyprus. This box of test strips did not have an NDC number or a U.S. toll-free phone number. The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

530. **East Tremont Pharmacy.** In the past 24 months, East Tremont Pharmacy has purchased diverted international FreeStyle test strips from defendants Adelphia and Payless. On March 1, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from East Tremont Pharmacy. This box was marked with an expiration date of April 2017 and Lot Number 1506906, which was intended for sale in New Zealand. This box of test

strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

531.    **An-Noor Pharmacy.**  In the past 24 months, An-Noor Pharmacy has purchased diverted international FreeStyle test strips from defendants H&H and Pharmacy Wholesale Services.  On March 3, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from An-Noor Pharmacy.  This box was marked with an expiration date of June 2016 and Lot Number 1465812, which was intended for sale in the United Kingdom. This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and

thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

532.   **6122 Pharmacy.**  In the past 24 months, 6122 Pharmacy has purchased diverted international FreeStyle test strips from defendant Pharmacy Wholesale Services.  On February 25, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from 6122 Pharmacy.  This box was marked with an expiration date of June 2017 and Lot Number 1513904, which was intended for sale in Spain and Greece.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

533.   **Bell Apothecary.**  In the past 24 months, Bell Apothecary has purchased diverted international FreeStyle test strips from defendant Payless in the Eastern District of New York.

534.   **Lansdale Rx Pharmacy.**  In the past 24 months, Lansdale Rx Pharmacy has purchased diverted international FreeStyle test strips from defendant Adelphia in the Eastern District of New York.

-134-

535.     **Bridesburg Pharmacy.**  In the past 24 months, Bridesburg Pharmacy has purchased diverted international FreeStyle test strips from defendant Primed, which operates out of an address in the Eastern District of New York.

536.     **Gabecare Direct.**  In the past 24 months, Gabecare Direct has purchased diverted international FreeStyle test strips from defendant Adelphia in the Eastern District of New York.

537.     **Discover Pharmacy.**  In the past 24 months, Discover Pharmacy has purchased diverted international FreeStyle test strips from defendant Matrix.  On March 8, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Discover Pharmacy.  This box was marked with an expiration date of September 2016 and Lot Number 1475514, which was intended for sale in Spain, Portugal, and Greece.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

538.     **Glendale Prescription Center.**  In the past 24 months, Glendale Prescription Center has purchased diverted international FreeStyle test strips from defendant Primed, which operates out of an address in the Eastern District of New York.  On March 8,

-135-

2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Glendale Prescription Center.  This box was marked with an expiration date of June 2017 and Lot Number 1514819, which was intended for sale in the United Kingdom, Barbados, Ireland, and the Netherlands.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

539.  **Oxford Pharmacy.**  In the past 24 months, Oxford Pharmacy has purchased diverted international FreeStyle test strips from defendant H&H.  On March 9, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from Oxford Pharmacy.  This box was marked with an expiration date of May 2017 and Lot Number 1510405, which was intended for sale in the United Kingdom and Ireland.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark.  This diverted international box also contained an instructional insert that is materially different in

many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

540.  **QRx2 Pharmacy.**  In the past 24 months, QRx2 Pharmacy has purchased diverted international FreeStyle test strips from defendant Matrix.  On March 11, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from QRx2 Pharmacy.  This box was marked with an expiration date of March 2017 and Lot Number 1506306, which was intended for sale in the United Kingdom and Ireland.  This box of test strips did not have an NDC number or a U.S. toll-free phone number.  The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)".  In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States.  For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

541.  **EZ Pharmacy.**  In the past 24 months, EZ Pharmacy has purchased diverted international FreeStyle test strips from defendant Matrix.  On March 22, 2016, Abbott purchased one box of diverted 50-count FreeStyle Lite test strips from EZ Pharmacy.  This box was marked with an expiration date of June 2017 and Lot Number 1513904, which was intended

for sale in Spain and Greece. This box bore signs of having been opened and resealed with a piece of yellow tape. This box of test strips did not have an NDC number or a U.S. toll-free phone number. The outer packaging of this box was missing several warnings and instructions, including "For *in vitro* diagnostic testing"; "Do not reuse"; and "Store at room temperature between 40° F - 86° F (4° C - 30° C)". In addition, there were several foreign symbols present on the outer packaging of the box, including the "CE" mark. This diverted international box also contained an instructional insert that is materially different in many ways from the insert contained in all boxes of FreeStyle test strips packaged for sale in the United States. For example, the insert in this box of diverted FreeStyle test strips instructs patients to test from sites including the hand, forearm, calf, and thigh, all of which are test site locations that have been rejected by the U.S. FDA and are, therefore, not included in instructions contained in boxes manufactured for sale in the United States.

542.    All of these sales and related conduct demonstrate each Defendant's necessary connection and participation in the conspiracy. This cannot be done alone. The importers, the distributors, and the pharmacies are all necessary to the success of the conspiracy. They must work together to make their conspiracy successful—i.e., profitable.

**Defendants' Prior Acts**

543.    For several Defendants, this is not the first time they have been involved in the unauthorized sale of blood glucose test strips. Defendants Matrix; Adelphia; H&H; Novex; and Ixthus have each been sued previously for the unlawful importation and/or sale of LifeScan OneTouch blood glucose test strips—a competitor product to Abbott's FreeStyle test strips.

544.    **Matrix**. In October 2006, Matrix was sued by Johnson & Johnson and its subsidiary, LifeScan, Inc., for the unlawful manufacture, sale, and distribution of counterfeit

LifeScan OneTouch Ultra brand of blood glucose test strips.  *See* Complaint, *Johnson & Johnson v. Champion Sales, Inc.* et al., No. 1:06-cv-05451, Dkt. No. 1 (E.D.N.Y.).

545.    Lifescan's suit alleged claims for trademark infringement in violation of the Lanham Act, false descriptions, and false designations of origin in commerce in violation of Section 43 of the Lanham Act and Section 349 of the New York General Business Law, trademark dilution in violation of Section 43 of the Lanham Act and New York General Business Law Section 360-l, and common law unjust enrichment and unfair competition.

546.    In September 2015, Judge Townes signed an order permanently enjoining Matrix from "buying, selling, distributing or using in commerce in any way" blood glucose test strips that constituted "Diverted Product"—that is, in part, "blood glucose test strips ... that are contained in packaging that states 'Not for Sale in the U.S.'; or are contained in packaging that does not have [an NDC number] listed; or are contained in packaging that bears the 'CE' mark; or are contained in packaging on which the primary language is not English; or are covered with one or more stickers that are not price tags and were not applied by Plaintiffs."  Consent Judgment and Permanent Injunction, *Johnson & Johnson v. Champion Sales, Inc.* et al., No. 1:06-cv-05451, Dkt. No. 292 at 1 (E.D.N.Y. Sept. 28, 2015).

547.    The conduct Matrix has been enjoined from is the very course of conduct that Matrix has engaged in in this case, only now with Abbott's FreeStyle blood glucose test strips.

548.    **Adelphia**.  Adelphia is a recidivist infringer, having been sued on multiple occasions for the unlawful sale and distribution of diverted and counterfeit of blood glucose test strips.

549.    In 2014, LifeScan also brought suit against Adelphia and its owner, defendant Yudah ("Lenny") Neuman, alleging that Adelphia had intentionally imported foreign,

gray-market versions LifeScan test strips into the United States. *See* Complaint, *Johnson &*
*Johnson et al. v. Adelphia Discount Services, Inc. et al*, No. 1:14-cv-02311, Dkt. No. 1
(E.D.N.Y. April 10, 2014).  The complaint alleged gray-market diversion going as far back as
2011, when the FDA had first seized a shipment of counterfeit test strips intended for Adelphia,
and further alleged that Adelphia had also breached a 2013 settlement agreement in which it
agreed to refrain from distributing, marketing, or selling LifeScan test strips intended for
overseas markets in the United States. *Id.*  LifeScan alleged that, notwithstanding the 2013
agreement, Adelphia had continued to engage in gray-market sales of the test strips.

550.    The dispute was resolved with Judge Dearie permanently enjoining
Adelphia from selling LifeScan OneTouch Ultra test strips that were not meant for sale in the
United States.  Consent Judgment, Johnson & Johnson et al. v. Adelphia Discount Services, Inc.
et al, No. 1:14-cv-02311, Dkt. No. 38 at 2 (E.D.N.Y. Aug. 7, 2015).

551.    Yudah Neuman, was only recently released from prison following a
conviction on fraud charges.  Neuman pled guilty to attempt and conspiracy to commit mail
fraud in connection with a stranger-originated life insurance scam.  He was sentenced to a year
and a day in prison and ordered to forfeit $300,000.  Judgment in a Criminal Case, USA v.
Yudah Neuman, Case no. 1:11-cr-00134-SJ, filed in the U.S. District Court for the Eastern
District of New York on March 11, 2014.

552.    **H&H**.  Like Adelphia, H&H is a recidivist when it comes to the unlawful
sale and distribution of diverted and/or counterfeit test strips.

553.    H&H has been the subject of a series of government seizures, warning
letters, and enforcement actions dating as far back as 2005 concerning its purchase and sale of
non-FDA approved blood glucose test strips and related medical devices.  As recently as 2012,
the FDA warned H&H that its practices for purchasing, storing and selling glucose test strips

were in violation of federal regulations.  *See* Warning Letter 2012-DET-09, U.S. Food & Drug

Administration (March 27, 2012), *available* at

www.fda.gov/ICECI/EnforcementActions/WarningLetters/2012/ucm297885.htm.

554.    H&H has also been the subject of two civil suits relating to its sale of

blood glucose test strips.

555.    In 2009, H&H and its principal agent, defendant Howard Goldman, were

among several defendants sued by Johnson & Johnson and LifeScan in connection with the

manufacture and distribution of counterfeit boxes of OneTouch Ultra test strips.  *See* Sixth

Amended Complaint, *Johnson & Johnson et al. v. South Pointe Wholesale, Inc., et al.*, No. 08-

civ-1297, Dkt. No. 265 (E.D.N.Y. May 21, 2009).  In that case, H&H acknowledged that it

purchased more than 20,000 boxes of LifeScan test strips from abroad, and Chief Magistrate

Judge Gold concluded that all of those boxes were counterfeit.  Report & Recommendation,

*South Pointe Wholesale, Inc.*, No. 08-civ-1297, Dkt. No. 769 at 18, 40-41 (E.D.N.Y. Mar. 28,

2014).

556.    LifeScan sued H&H again in 2014, this time in Massachusetts federal

court, making allegations similar to those that Abbott makes here: that H&H's sale of diverted

international test strips within the United States was illegal.  Complaint, *Johnson & Johnson v.

H&H Wholesale Services, Inc.*, No. 1:14-cv-10346, Dkt. No. 1 (D. Mass. Feb. 18, 2014).

LifeScan and H&H settled the New York counterfeiting case and the Massachusetts illegal

diversion case, with H&H paying LifeScan $2 million.  Consent Judgment and Permanent

Injunction at 1, *LifeScan v. South Pointe Wholesale, Inc., et al.*, No. 08-civ-1297, Dkt. No. 816

(E.D.N.Y. Nov. 25, 2014).  The judgment signed by Judge Townes permanently enjoined H&H

from selling diverted international LifeScan test strips.  *Id.*  After this settlement, LifeScan

agreed to dismiss its Massachusetts lawsuit against H&H.  Stipulation of Dismissal, *Johnson &*

-141-

*Johnson v. H&H Wholesale Services, Inc.*, No. 1:14-cv-10346, Dkt. No. 40 (D. Mass. Dec. 4, 2014).

557. **Novex.** Like H&H, Novex and defendant Dennis Cantor were sued by LifeScan in *Johnson & Johnson et al. v. South Pointe Wholesale, Inc., et al.*, No. 08-civ-1297 (E.D.N.Y.). Chief Magistrate Judge Gold found that Dennis Cantor purchased counterfeit boxes of LifeScan test strips from abroad for Novex, and concluded that LifeScan was entitled to summary judgment on its trademark infringement claim against Novex and Cantor for having acquired and sold 116,736 counterfeit boxes of test strips. Report & Recommendation, *South Pointe Wholesale, Inc.*, No. 08-civ-1297, Dkt. No. 769 at 26-29 (E.D.N.Y. Mar. 28, 2014).

558. **Ixthus.** Ixthus previously operated under the name Milwaukee Notions, Inc. ("Milwaukee Notions").

559. Like Matrix, Milwaukee Notions was sued in October 2006 by Johnson & Johnson and its subsidiary, LifeScan, Inc., for the unlawful manufacture, sale, and distribution of counterfeit LifeScan OneTouch Ultra brand of blood glucose test strips. *See* Complaint, *Johnson & Johnson v. Champion Sales, Inc.* et al., No. 1:06-cv-05451, Dkt. No. 1 (E.D.N.Y.).

560. Two weeks after being sued in the *Champion Sales* case, Milwaukee Notions filed for Chapter 11 bankruptcy protection. *See In re: Milwaukee Notions, Inc.*, Case No. 06-25918-svk (Bankr. E.D. Wis. Oct. 20, 2006).

561. The bankruptcy case was resolved with Milwaukee Notions' insurer paying LifeScan $237,500 and Milwaukee Notions being permanently enjoined from selling counterfeit LifeScan test strips. *See* Order, *In re Milwaukee Notions, Inc.*, No. 06-25918-SVK, Dkt. No. 215 at 2 (Bankr. E.D. Wis. May 28, 2010) (adopting and incorporating as permanent the terms of an earlier, temporary injunction that prohibited Milwaukee Notion's purchase or sale of counterfeit test strips); *see also* Order, *In re Milwaukee Notions, Inc.*, No. 06-25918-SVK,

-142-

Dkt. No. 69 at 2-3 (Bankr. E.D. Wis. Dec. 12, 2008).

562.     Pursuant to orders of this Court, Plaintiffs subpoenaed Ixthus for documents sufficient to identify its customers and suppliers of diverted international FreeStyle test strips.  Ixthus refused to produce documents called for by the subpoena, claiming that the corporation has a right against self-incrimination under the Fifth Amendment to the United States Constitution.

### FIRST CLAIM FOR RELIEF

**Federal Trademark Infringement**
**15 U.S.C. §1114(1) (Lanham Act Section 32)**
**(Against all Defendants)**

563.     Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

564.     Abbott is the owner of all right, title and, interest in and to the FreeStyle Marks and FreeStyle Trade Dress (as set forth above).

565.     Defendants, without authorization, have imported into the United States, and/or distributed and/or sold in the United States, and/or received in interstate commerce, diverted international FreeStyle test strips featuring the FreeStyle Marks and FreeStyle Trade Dress, which products are materially different from the U.S. FreeStyle test strips authorized by Abbott for sale in the United States and which are not subject to the Abbott's quality-control measures.  Such actions are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the diverted international FreeStyle test strips in that purchasers and others in this judicial district and elsewhere in the United States are likely to believe Abbott authorizes and controls the sale of Defendants' diverted international FreeStyle test strips, or that Defendants are associated with or related to Abbott or are authorized by Abbott to sell FreeStyle products in the United States.

566.     Defendants' acts have injured or are likely to injure Abbott's image and reputation with consumers in this judicial district and elsewhere in the United States by creating confusion about, and/or dissatisfaction with, Abbott's FreeStyle products.

567.     Defendants' acts have injured or are likely to injure Abbott's reputation in this judicial district and elsewhere in the United States by causing customer dissatisfaction, a diminution of the value of the goodwill associated with the FreeStyle Marks and FreeStyle Trade Dress, and a loss of sales and/or market share to Abbott's competition.

568.     Defendants' acts have been committed deliberately and willfully, with knowledge of Abbott's exclusive rights and goodwill in the FreeStyle Marks and FreeStyle Trade Dress, and with knowledge of the infringing nature of the marks when used in connection with the diverted international FreeStyle test strips.  Defendants' acts have also been committed with bad faith and the intent to cause confusion, or to cause mistake and/or to deceive.

569.     As a result of Defendants' trademark infringement, Abbott has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the FreeStyle Marks and FreeStyle Trade Dress, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

570.     If not restrained, Defendant will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of infringement.

571.     As the acts alleged herein constitute infringement of the FreeStyle Marks and FreeStyle Trade Dress under 15 U.S.C. § 1114(1), and as Abbott has no adequate remedy at law, Abbott is entitled to injunctive relief as well as to Defendants' profits, Abbott's damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## SECOND CLAIM FOR RELIEF

**Federal Unfair Competition**
**15 U.S.C. § 1125(a)(i)(A) (Lanham Act Section 43(a))**
**(Against all Defendants)**

572.     Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

573.     Defendants have, without authorization, imported into the United States and/or distributed and/or sold in the United States and/or received in interstate commerce, diverted international FreeStyle test strips featuring the FreeStyle Marks and FreeStyle Trade Dress, which products are materially different from the U.S. FreeStyle test strips authorized by Abbott for sale in the United States and which are not subject to the Abbott's quality-control measures.  Such use is likely to cause confusion, or to cause mistake and/or to deceive as to the affiliation, connection or association of Defendants with Abbott, and as to the origin, sponsorship or approval by Abbott of Defendants' diverted international FreeStyle test strips and the commercial activities related to Defendants' diverted international FreeStyle test strips.

574.     Defendants' acts constitute a false representation and a false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

575.     Defendants' acts have been committed with knowledge of Abbott's exclusive common law rights and goodwill in the FreeStyle Marks and FreeStyle Trade Dress, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive.

576.     Abbott has suffered and, if Defendants are not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in and to the FreeStyle Marks and FreeStyle Trade Dress and to the goodwill associated therewith for which Abbott has no adequate remedy at law.

577.     If not restrained, Defendants will have unfairly derived and will continue

to derive income, profits, and business opportunities as a result of their acts of infringement.

578.    As the acts alleged herein violate Section 43(a) of the Lanham Act, 15

U.S.C.§ 1125(a), and as Abbott has no adequate remedy at law, Abbott is entitled to injunctive

relief and to Defendants' profits, Abbott's damages, and other remedies provided by 15 U.S.C.

§§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to

15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
**Common Law Unfair Competition**
**(Against all Defendants)**

579.    Abbott incorporates each paragraph of this Complaint as if fully set forth

herein.

580.    Defendants' acts constitute an infringement of Abbott's trademark rights

in violation of common law, including the common law of the State of New York and elsewhere.

581.    As a result of Defendants' acts Abbott has suffered and, if Defendants are

not enjoined, will continue to suffer great and irreparable injury, loss, and damage to its rights in

and to the FreeStyle Marks and FreeStyle Trade Dress, and to the goodwill associated therewith

for which Abbott has no adequate remedy at law.

### FOURTH CLAIM FOR RELIEF
**Federal Trademark Dilution**
**15 U.S.C. § 1125(c) (Lanham Act Section 43(c))**
**(Against all Defendants)**

582.    Abbott incorporates each paragraph of this Complaint as if fully set forth

herein.

583.    Abbott's FreeStyle Marks and FreeStyle Trade Dress are famous and

distinctive within the meaning of 15 U.S.C. § 1125(c).

-146-

584.    Abbott's FreeStyle Marks and FreeStyle Trade Dress are widely recognized by the general consuming public of the United States as a designation of source of Abbott's goods, including FreeStyle products.

585.    Since the FreeStyle Marks and FreeStyle Trade Dress have become famous, Defendants have utilized marks that are likely to cause dilution by blurring and/or tarnishment of Abbott's famous FreeStyle Marks and FreeStyle Trade Dress.

586.    Defendants' acts greatly and irreparably damage Abbott and will continue to do so unless restrained by this Court.  Therefore, Abbott is without an adequate remedy at law and is entitled to, among other things, an order enjoining and restraining Defendants from selling diverted international FreeStyle test strips.

### FIFTH CLAIM FOR RELIEF

**State Law Trademark Dilution**
**(Against all Defendants)**

587.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

588.    Abbott's FreeStyle Marks and FreeStyle Trade Dress are distinctive under state law, including New York General Business Law § 360-l.

589.    Defendants' acts are likely to cause dilution by blurring and/or tarnishment, and damage the business reputation of Abbott in violation of state law, including New York General Business Law § 360-l.

590.    Through their acts, Defendants have injured and are continuing to injure Abbott's business reputation and/or have diluted and are continuing to dilute the distinctive quality of the FreeStyle Marks and FreeStyle Trade Dress, in violation of state law, including New York General Business Law § 360-l.

591.    Defendants' acts greatly and irreparably damage Abbott and will continue

-147-

to do so unless restrained by this Court. Therefore, Abbott is without an adequate remedy at law

and is entitled to, among other things, an order enjoining and restraining Defendants from selling

diverted international FreeStyle test strips.

## SIXTH CLAIM FOR RELIEF

### State Law Deceptive Business Practices
### (Against all Defendants)

592.    Abbott incorporates each paragraph of this Complaint as if fully set forth

herein.

593.    Defendants' acts were consumer-oriented.

594.    Defendants' acts were materially misleading.

595.    Defendants' acts have caused and are continuing to cause injury to Abbott

in violation of state law, including New York General Business Law § 349.

596.    Defendants' acts greatly and irreparably damage Abbott and will continue

to do so unless restrained by this Court. Therefore, Abbott is without an adequate remedy at law

and is entitled to, among other things, an order enjoining and restraining Defendants from selling

diverted international FreeStyle test strips.

## SEVENTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Against all Defendants)

597.    Abbott incorporates each paragraph of this Complaint as if fully set forth

herein.

598.    The Defendants made false representations and material omissions in

fraudulently seeking reimbursement for diverted international boxes of FreeStyle test strips.

599.    As a result of these false representations and material omissions,

Defendants wrongfully obtained a monetary benefit to which they were not legally entitled.

600.    Each individual Defendant personally benefitted as a result of the additional profits the Defendants reaped as a result of the diversion scheme.

601.    Defendants have no right to retain these unjust gains.

602.    If Defendants are permitted to keep this monetary benefit, it would be manifestly unjust.

603.    By selling diverted international FreeStyle test strips in the United States, Defendants have been unjustly enriched at Abbott's expense in violation of the common law of New York and elsewhere.

## EIGHTH CLAIM FOR RELIEF

### Violation of Federal RICO, 18 U.S.C. § 1962(c)
### (Against all Defendants)

604.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

605.    At all relevant times, Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1964(c).

606.    At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1962(c).

607.    Defendants formed an association-in-fact for the purpose of defrauding Abbott and insurers, including private insurers and Medicare and Medicaid.  This association-in-fact was an "enterprise" within the meaning of RICO, 18 U.S.C. § 1961(4).  This enterprise consists of Defendants as well as other importers, distributors, and pharmacies who have yet to be discovered.  Defendants organized their RICO enterprise into a continuing and cohesive unit with specific and assigned responsibilities.  All Defendants participated in the operation and management of the enterprise.  At all relevant times, this enterprise was engaged in, and its

-149-

activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S.C. §
1962(c)

608.    Each Defendant, by engaging in the acts set forth above, conducted or
participated, directly or indirectly, in the conduct of the enterprise's affairs through a "pattern of
racketeering activity" within the meaning of RICO, 18 U.S.C. § 1961(1) & (5), in violation of
RICO, 18 U.S.C. § 1962(c).

609.    Defendants, on multiple occasions, and in furtherance of their scheme to
defraud and to obtain money by means of false and fraudulent pretenses, knowingly caused to be
sent and delivered across state lines by commercial interstate carrier shipments of diverted
international FreeStyle test strips.  These acts constituted violations of the federal mail fraud
statute, 18 U.S.C. § 1341.

610.    Defendants, on multiple occasions and in furtherance of their scheme to
defraud and to obtain money by means of false and fraudulent pretenses, knowingly caused to be
transmitted, by means of wire communication in interstate or foreign commerce, writings, signs,
signals, pictures, and sounds, in violation of the federal wire fraud statute, 18 U.S.C. § 1343.
Each false insurance reimbursement claim Defendants made was transmitted by means of wire
communication in interstate or foreign commerce and constituted a separate violation of 18
U.S.C. § 1343, and a separate act of racketeering.

611.    Defendants also knowingly caused to be transmitted, by means of wire
communication in interstate or foreign commerce, false statements to Abbott.  Defendants also
knowingly caused to be transmitted, by means of wire communication in interstate or foreign
commerce, false statements to the insurance companies covering the product manufactured by
these other manufacturers, namely, statements that the product Defendants were dispensing was
product packaged and intended for retail sale in the United States (when in fact it was product

-150-

packaged and intended for sale outside the United States).  All of these acts constituted separate violations of 18 U.S.C. § 1343.

612.    Each Defendant committed and/or aided and abetted the commission of two or more of these racketeering acts in violation of 18 U.S.C. §§ 1341 and 1343.  In fact, Defendants' racketeering acts were and are multiple, repeated, and continuous.

613.    These multiple racketeering acts were related and constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).  The acts alleged were related to each other by virtue of common participants; common victims (Abbott and the insurance companies covering those products); a common method of commission; and the common purpose and common result of defrauding Abbott, Medicare and Medicaid, and other insurers, and of enriching Defendants while concealing their fraudulent activities.  The pattern of racketeering activity continues to date.

614.    Abbott was directly and proximately injured by Defendants' pattern of racketeering activity.  As a result of their misconduct, Defendants are liable to Abbott for these injuries.

615.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorneys' fees.

## NINTH CLAIM FOR RELIEF

### Conspiracy to Violate Federal RICO, 18 U.S.C. § 1962(d)
### (Against all Defendants)

616.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

617.    At all relevant times, Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation were "persons" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1964(c).

-151-

618.    At all relevant times, each Defendant was a "person" within the meaning of RICO, 18 U.S.C. §§ 1961(3) & 1962(d).

619.    Each Defendant was associated with the enterprise and agreed and conspired to violate 18 U.S.C. § 1962(c), that is, agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through the pattern of racketeering activity described herein, in violation of 18 U.S.C. § 1962(d).

620.    Defendants committed and caused to be committed a series of overt acts in furtherance of the conspiracy and to affect the objects thereof, including but not limited to the acts set forth above.

621.    Abbott was directly and proximately injured by Defendants' pattern of racketeering activity.  As a result of their misconduct, Defendants are liable to Abbott for these injuries.

622.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold their damages plus costs and attorneys' fees.

## TENTH CLAIM FOR RELIEF

### Importation of Goods Bearing Infringing Marks
### 15 U.S.C. § 1124
### (Against all Defendants)

623.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

624.    By illegally importing diverted international FreeStyle test strips from foreign countries with the intent of inducing diabetic consumers into believing that the products are authorized for resale in the United States, Defendants have violated 15 U.S.C. § 1124.

625.    Abbott has been, and continues to be, damaged by Defendants' activities and conduct.  Defendants have profited thereby and, unless their conduct is enjoined, Abbott's

-152-

reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, Abbott is entitled to injunctive relief under 15 U.S.C. § 1116.

## ELEVENTH CLAIM FOR RELIEF

### Fraud and Fraudulent Inducement
### (Against all Defendants)

626.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

627.    Defendants intentionally made or caused to be made knowingly false representations to Abbott and insurers, and intentionally omitted material facts from Abbott and insurers.

628.    Namely, Defendants intentionally misrepresented to insurers that the Pharmacy Defendants dispensed authorized domestic FreeStyle test strips when, in fact, they dispensed diverted international FreeStyle test strips.  As Defendants knew, these misrepresentations were inadvertently passed along by the insurers, which in turn caused Abbott to pay the insurers rebates.

629.    Defendants never informed Abbott or the insurers, that they have been selling diverted international test strips, or that they had submitted false NDC numbers in insurance reimbursement claims.

630.    Defendants made or caused to be made these false representations and material omissions with the intent of defrauding Abbott.

631.    Defendants knew and intended that Abbott would rely on their false representations and material omissions and, as a result, would incorrectly pay rebates.

632.    Had Abbott known the true facts regarding Defendants' fraud, it would not have paid rebates to the insurers for the diverted international test strips.

633.    As a result of Defendants' conduct, Abbott has suffered significant injury.

## TWELTH CLAIM FOR RELIEF

### Aiding and Abetting Fraud
### (Against all Defendants)

634.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

635.    Each Defendant intentionally provided substantial assistance to the others in advancing the fraud against Abbott.

636.    Each Defendant either directed a Pharmacy Defendant or endorsed the direction of a Pharmacy Defendant to fraudulently adjudicate the sale of diverted international FreeStyle test strips as domestic FreeStyle test strips in order to profit from the higher reimbursements and rebates associated with the latter.

637.    All Defendants knowingly hid the fraud from Abbott, by omitting to inform Abbott of the fraud.

638.    Defendants could not have perpetrated and expanded their fraud without the substantial and material assistance of each other Defendant.  Each Defendant benefited from the success of the fraud.

639.    All Defendants had actual knowledge of, and substantially assisted in, the fraudulent scheme.

640.    As a result of Defendants' conduct, Abbott has suffered significant injury.

## THIRTEENTH CLAIM FOR RELIEF

### Contributory Trademark Infringement
### (Against the Distributor Defendants)

641.    Abbott incorporates each paragraph of this Complaint as if fully set forth herein.

642.     The Distributor Defendants sold diverted international FreeStyle test strips knowing and/or having reason to know that their customers would use such diverted international FreeStyle test strips in commerce in a manner that constitutes trademark infringement.

643.     As a result of these Defendants' contributory trademark infringement, Abbott has suffered and will continue to suffer substantial and irreparable injury, loss and damage to its rights in and to the FreeStyle Marks and FreeStyle Trade Dress, and damage to the goodwill associated therewith, for which it has no adequate remedy at law.

644.     If not restrained, Defendants will have unfairly derived and will continue to derive income, profits, and business opportunities as a result of their acts of contributory infringement.

645.     As the acts alleged herein constitute contributory infringement of the FreeStyle Marks and FreeStyle Trade Dress under 15 U.S.C. § 1114(1), and as Abbott has no adequate remedy at law, Abbott is entitled to injunctive relief as well as to Defendants' profits, Abbott's damages, and other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and to reasonable attorneys' fees and prejudgment interest pursuant to 15 U.S.C. § 1117.

## PRAYER FOR RELIEF

WHEREFORE, Abbott demands judgment against all Defendants as follows:

(a)  an order entering judgment in favor of Abbott against Defendants, jointly and severally;

(b)  an order temporarily restraining, and preliminarily and permanently enjoining Defendants from engaging in the unlawful behavior described above;

(c)  an order awarding Abbott damages in an amount to be determined;

(d)  an order awarding Abbott trebling of damages;

(e)  an order awarding Abbott pre-judgment and post-judgment interest;

(f)  an order awarding Abbott punitive damages;

(g)  an order awarding Abbott reasonable attorneys' fees and other costs; and

(h)  for such additional relief as the Court finds just, equitable, and appropriate.

## <u>JURY DEMAND</u>

Abbott hereby requests a jury trial on all claims and issues asserted in this Complaint.


DATED:  March 28, 2016
New York, New York

By: _____

Geoffrey Potter
gpotter@pbwt.com
Aron Fischer
afischer@pbwt.com
Jeremy A. Weinberg
jweinberg@pbwt.com
R. James Madigan III
jmadigan@pbwt.com
Matthew Funk
mfunk@pbwt.com

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, NY  10036-6710
Tel: (212) 336-2000
Fax: (212) 336-2222

*Attorneys for Plaintiffs Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corporation*