UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ABBOTT LABORATORIES, et al.,

               Plaintiffs,

    -against-

ADELPHIA SUPPLY USA, et al.,

               Defendants.
----------------------------------------------------------x

<u>NOT FOR PUBLICATION</u>
**MEMORANDUM & ORDER**
15-CV-05826 (CBA) (LB)

**AMON, United States District Judge:**

## INTRODUCTION

Plaintiffs—Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corp. (collectively "Abbott")—filed a motion for case-ending sanctions against Defendants H&H Wholesale Services, Inc. ("H&H"), Howard Goldman, and Lori Goldman (collectively the "H&H Defendants"). (Docket Entry ("D.E.") # 1521.)[1] The Court referred Abbott's motion to the Honorable Magistrate Judge Lois Bloom for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1). (D.E. dated January 14, 2019.) The parties submitted briefing, and Magistrate Judge Bloom held oral argument, (D.E. dated February 27, 2019; D.E. # 1537). On May 2, 2019, Magistrate Judge Bloom issued a thorough and well-reasoned report and recommendation recommending that the Court grant Abbott's motion for sanctions and enter a default judgment against the H&H Defendants. (D.E. # 1545 (the "R&R").) The H&H Defendants timely filed objections to the R&R, (D.E. # 1548 ("H&H Def. Obj.")), and Abbott filed a reply to their objections, (D.E. # 1555). The H&H Defendants' objections brief also includes a request that,

---

[1] This Memorandum and Order ("M&O") includes references to a related action, <u>Abbott Laboratories et al. v. H&H Wholesale Services Inc. et al.</u>, 17-cv-03095 (CBA) (LB) (E.D.N.Y.), referred to herein as "<u>Abbott II</u>." Unless otherwise specified, all docket-entry citations in this M&O refer to the instant action, rather than to <u>Abbott II</u>.

should the Court find in favor of Abbott, the Court's order be certified for interlocutory appeal. On August 12, 2019, the H&H Defendants supplemented their objections brief, (D.E. # 1557), and Abbott responded on August 19, 2019, (D.E. # 1560). For the reasons set forth below, the Court adopts Magistrate Judge Bloom's recommendations.

## BACKGROUND

On October 5, 2015, Abbott filed the instant trademark action against the H&H Defendants and hundreds of other defendants, including pharmacies, distributors, importers, and online sellers, alleging that these defendants had violated Abbott's rights by selling the international version of Abbott's FreeStyle diabetes test strips in the United States. (D.E. # 1 ("Compl.").) On May 25, 2017, Abbott initiated a related action, Abbott Laboratories et al. v. H&H Wholesale Services Inc. et al., 17-cv-03095 (CBA) (LB) (E.D.N.Y.), alleging that the H&H Defendants were selling international FreeStyle test strips repackaged into counterfeit U.S. boxes, (hereinafter "Abbott II").

Abbott's sanctions motion is based on the discovery conduct of Howard Goldman, President of H&H; Lori Goldman, Howard Goldman's wife and an H&H employee; Andrew Sweet, H&H's general manager who was involved with the response to the Court's discovery orders; and David Gulas, H&H's 30(b)(6) witness and the employee primarily involved with sales of the test strips. The facts underlying this motion are laid out in detail in the R&R. They are summarized below.

On January 13, 2017, Magistrate Judge Bloom held her first of many conferences with the parties to address various discovery issues.[2] (R&R at 2.) On January 17, 2017, Magistrate Judge Bloom ordered all defendants to "review all formal and informal communications regarding [their]

---

[2] The Honorable Magistrate Judge Marilyn Go had been the magistrate judge assigned to the action before it was reassigned to Judge Bloom.

purchases and sales of International FreeStyle test strips in 2014, including emails, text messages, purchase orders, delivery invoices, and check/wire transfers." (Id. (citing D.E. # 925).) On January 25, 2017, counsel for the H&H Defendants informed the Court that the H&H Defendants "have conducted a review of all formal and information [sic] communications regarding the purchase and sale of International FreeStyle test strips for the year of 2014 . . . . Individual Defendants Howard Goldman and Lori Goldman do not have any responsive documents. As to H&H, there are approximately 6,000 responsive documents[.]" (Id. (citing D.E. # 933).) In light of the H&H Defendants' claim that producing more than one year of responsive documents would be unduly burdensome, Magistrate Judge Bloom, in an order dated January 27, 2017, directed the H&H Defendants to produce only their 2014 documents. (Id. at 2–3 (citing D.E. # 963 ("[D]ue to the disproportionate number of responsive documents identified by defendants H&H Wholesale Services, Inc, Howard Goldman, and Lori Goldman, these defendants need only produce the documents for 2014.")).) All other defendants were directed to produce responsive documents for the years 2013, 2014, and 2015. (Id. at 3.)

The H&H Defendants' production was coordinated by Andrew Sweet, H&H's general manager, and Jason Yert, H&H's counsel from Kerr, Russell and Webber PLC ("Kerr Russell").[3] (Id.) On February 10, 2017, despite their previous assertion that there were 6,000 responsive documents for the year 2014, the H&H Defendants produced only 314 responsive documents. (Id.;

---

[3] Jason Yert of Kerr Russell was terminated as counsel for H&H on August 14, 2017. (D.E. # 1173.) The H&H Defendants have since terminated and retained new counsel five times in this lawsuit. Fox Rothschild LLP and Kerr Russell were H&H's original counsel. On June 6, 2017, Alan Levine of Cooley LLP ("Cooley") substituted to replace Fox Rothschild LLP. (D.E. # 1131.) On August 3, 2017, Cohen & Gresser LLP ("C&G") substituted to replace Cooley. (D.E. # 1163.) On August 14, 2017, C&G also replaced Kerr Russell. (D.E. # 1173.) On January 10, 2018, C&G moved to withdraw as counsel, and Milton Springut of Springut Law, P.C. filed a notice of appearance on the H&H Defendants' behalf. (D.E. # 1249.) On January 21, 2019, the H&H Defendants requested a stay of the proceeding so that they could obtain new counsel, and on February 5, 2019, Gottlieb & Janey LLP appeared on behalf of the H&H Defendants replacing Springut Law, P.C. (D.E. # 1533.) Gottlieb & Janey LLP are the H&H Defendants' counsel as of the time of this M&O.

D.E. # 1522 ("Waters Decl.") ¶ 2.) On March 22, 2017, Abbott raised objections to the H&H

Defendants' February 10, 2017 production, including that the documents produced were printed

"in hard copy, scanning them all together, and produc[ed] . . . as a single, 1,941-page PDF file."

(R&R at 3 (citing D.E. # 1075 at 2).) On March 24, 2017, Magistrate Judge Bloom ordered the

H&H Defendants to "produce an electronic copy of the 2014 emails (1,941 pages)," including

metadata. (Id. (citing D.E. # 1080).)

On May 24, 2017, the Court entered a seizure order in <u>Abbott II</u> that authorized Abbott to

seize, <u>inter alia</u>, a copy of H&H's email server. (<u>Id.</u> at 3–4 (citing <u>Abbott II</u>, D.E. # 11).) Once

Abbott had seized H&H's email server, Abbott "had the proverbial smoking gun" and raised

concerns that the H&H Defendants had failed to comply with the Court's order to produce

responsive documents in the instant action. (<u>Id.</u> at 4; D.E. # 1147.) On July 12, 2017, Magistrate

Judge Bloom ordered the H&H Defendants to "re-run the document search outlined in the Court's

January 17 and January 21 [2017] Orders,"[4] "produce the documents from the re-run search to

Abbott," and produce "an affidavit of someone with personal knowledge" regarding alleged

technical errors that affected the earlier production. (R&R at 4 (citing D.E. # 1156).) This time,

the H&H Defendants produced 3,569 responsive documents from 2014. (<u>Id.</u> (citing Waters Decl.

¶ 3).)

It quickly became clear that the H&H Defendants' initial representation to the Court that

they had 6,000 responsive documents from 2014 had been false. (R&R at 8–11 (describing the

H&H Defendants' "wholly unsubstantiated serial explanations" regarding why they had provided

this incorrect figure to the Court and finding that the H&H Defendants had "materially

---

[4] As acknowledged in the R&R, the reference to January 21 was an error, as Judge Bloom's order was in fact dated
January 27, 2017. (See R&R at 4 n.4.)

misrepresented the number of responsive documents/pages to the Court").) Providing this inaccurately high number had facilitated their objective: the H&H Defendants were granted a modification of the Court's discovery order, so that they had to produce documents from only 2014 while all other defendants were ordered to produce documents from 2013, 2014, and 2015. (Id.)

It also became clear that the search terms the H&H Defendants had used to make their 2014 production—containing only 314 documents—were intentionally deficient, and did not capture the vast majority of the documents the Court had ordered them to produce. (Id. at 10–13 (describing the improper search terms used and noting that "both sides agree that H&H's search terms were inadequate and failed to capture the documents responsive to the Court's Orders").)

Even more egregiously, the H&H Defendants had willfully withheld every single document sent by, received by, or referencing Howard Goldman or Lori Goldman in their initial production. (Id. at 14–15.) They had also intentionally withheld every document concerning Holland Trading Group, a Dutch company from whom H&H was allegedly purchasing counterfeit test strips. (Id. at 13–15; see also id. at 23 ("There is no credible explanation for why the Holland Trading, Howard Goldman, and Lori Goldman documents were not produced except that the documents were willfully withheld.").)

Not only were these documents willfully withheld when they should have been produced, but the H&H Defendants—largely through their then-counsel and through their general manager, Andrew Sweet—proffered serial, inconsistent excuses as to why they were not produced. As explained in the R&R, "the H&H [D]efendants' explanations regarding the Holland Trading, Howard Goldman, and Lori Goldman documents continue to change as the scent becomes too fresh and the trail too hot to risk further non-compliance. . . . The H&H [D]efendants have always had one more excuse up their sleeve in this series of episodes of nonfeasance, which amounts to

deliberate tactical intransigence." (Id. at 23 (internal quotation marks omitted).) In light of the H&H Defendants' "ever-changing explanations as to [these] withheld documents, Mr. Sweet's inconsistent testimony, and assertions of former counsel," Magistrate Judge Bloom found that the H&H Defendants had "calculatedly attempted to manipulate the judicial process." (Id. at 23–24.)

Finally, the R&R describes perjured testimony by David Gulas, who served as H&H's 30(b)(6) witness. (Id. at 24–26.) And it details the inconsistent and evasive testimony of Howard Goldman. (Id. at 26–27.)

As summarized in the R&R, the misconduct involved in this case "was not an isolated instance of perjury or one withheld document"; rather, "it was a calculated pattern of pervasive misconduct that started early on and continued even after [the H&H] [D]efendants were caught red handed." (Id. at 29–30.) Considering the record as a whole, the R&R found that the H&H Defendants perpetrated a fraud upon the Court. (Id. at 30.)

## STANDARDS OF REVIEW

### I.  Report and Recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. Id.; see also United States v. Romano, 794 F.3d 317, 340 (2d Cir. 2015). Even in a de novo review of a party's specific objections, the court "ordinarily will not consider arguments, case law, or evidentiary material which could have been, but [were] not, submitted to the magistrate judge in the first instance." Chao v. Int'l Broth. Of Indus. Workers Health & Welfare Fund, 97 F. Supp. 3d 268 (E.D.N.Y. 2015) (alteration in original) (internal

quotation marks omitted).

The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. <u>John Hancock Life Ins. Co. v. Neuman</u>, No. 15-cv-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. <u>Chime v. Peak Sec. Plus, Inc.</u>, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (internal quotation marks omitted)); <u>see also</u> <u>DePrima v. N.Y.C. Dep't of Educ.</u>, No. 12-cv-3626, 2014 WL 1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

## II. Substantive Law

Abbott makes its motion under Federal Rule of Civil Procedure 37, and it invokes the Court's inherent power to sanction parties for perpetrating fraud upon the Court. Abbott moves to strike the H&H Defendants' pleadings, to enter a default judgment against them, and for an order directing them to pay Abbott's attorneys' fees and costs for investigating and litigating the H&H Defendants' discovery fraud.

### A. Rule 37 Motion for Case-Ending Sanctions

Rule 37 of the Federal Rules of Civil Procedure applies to circumstances where a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2). Under Rule 37, Abbott's request for sanctions is limited to the H&H Defendants' violations of Magistrate Judge Bloom's January 17, 2017 and January 27, 2017 discovery orders. (D.E. # 925, 963.)

### B. Fraud Upon the Court

Rather than viewing a party's failure to comply with discovery orders in isolation, courts

are permitted to analyze such failures under their broader inherent power—a power that "extends to a full range of litigation abuses," including, most importantly, to fraud upon the court. <u>Chambers v NASCO, Inc.</u>, 501 U.S. 32, 46 (1991); <u>see also</u> <u>Skywark v. Isaacson</u>, No. 96 Civ. 2815 JFK, 1999 WL 1489038, at *14 n.27 (S.D.N.Y. Oct. 14, 1999) (considering defendants' motion "in the more inclusive context of fraud upon the court," rather than solely under Rule 37, because plaintiffs' "fraudulent approach as a whole . . . is not simply covered by any one rule"), <u>report and recommendation adopted by</u> 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000). Indeed, as the Second Circuit has explained:

> [I]t would be excessively formalistic to view the defiance of the order in isolation rather than against the background of [plaintiff's] prolonged and vexatious obstruction of discovery . . . through perjurious testimony of its top officials and false representations to the court by its counsel.

<u>Penthouse Int'l Ltd. v. Playboy Enters.</u>, 663 F.2d 371, 388 (2d Cir. 1981). Magistrate Judge Bloom considered the H&H Defendants' conduct under this rubric, and the H&H Defendants expressly note that they do not object to her having done so, (H&H Def. Obj. at 10–11 & 11 n.4).

A fraud upon the court occurs where it is established by clear and convincing evidence "that [a party] has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate the action." <u>New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.</u>, 432 Fed. App'x 25 (2d Cir. 2011) (summary order) (internal quotation marks omitted) (quoting <u>Scholastic, Inc. v. Stouffer</u>, 221 F. Supp. 2d 425, 439 (S.D.N.Y. 2002)); <u>McMunn v. Mem'l Sloan-Kettering Cancer Ctr.</u>, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (noting a party interferes with the "the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense" (internal quotation marks omitted)); <u>see also</u> <u>Hargrove v. Riley</u>, 04-cv-04587, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007); <u>Shangold v. Walt Disney</u>

Co., 03-cv-09522, 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (dismissing plaintiff's case with prejudice where plaintiff fabricated evidence and manipulated the judicial process).

The "essence of a fraud upon the court" is "when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." McMunn, 191 F. Supp. 2d at 445. "[A]n isolated instance of perjury, standing alone, will not constitute a fraud upon the court." Id.; see also Jung v. Neschis, 01-cv-06993, 2009 WL 762835, at *21 (S.D.N.Y. Mar. 23, 2009); Skywark, 1999 WL 1489038, at *14 (describing "persistent misrepresentations"). "Rather, fraud upon the court 'occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action.'" McMunn, 191 F. Supp. 2d at 445 (quoting Skywark, 1999 WL 1489038, at *14).

A movant claiming fraud upon the court bears the burden of proving the sanctionable conduct by "clear and convincing evidence." Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 393–94 (S.D.N.Y. 2010). Under this high standard, the Court may only find a fraud upon the court based on evidence that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Blair v. Inside Edition Prods., 7 F. Supp. 3d 348, 358 (S.D.N.Y. 2014) (alterations in original) (internal quotation marks omitted). Thus, the proof must be "highly probable" and "leave[ ] no substantial doubt." Waran v. Christie's Inc., 315 F. Supp. 3d 713, 718–19 (S.D.N.Y. 2018) (quoting Dongguk Univ. v. Yale Univ., 734 F.3d 113, 123 (2d Cir. 2013)).

If it is shown by clear and convincing evidence that a party perpetrated a fraud upon the court, courts consider the following five factors to determine the appropriate sanction: (i) "whether the misconduct was the product of intentional bad faith;" (ii) "whether and to what extent the

misconduct prejudiced the injured party;" (iii) "whether there is a pattern of misbehavior rather than an isolated instance;" (iv) "whether and when the misconduct was corrected;" and (v) "whether further misconduct is likely to occur in the future." McMunn, 191 F. Supp. 2d at 461. When faced with a fraud upon the court, "[t]he available sanctions at a court's disposal . . . range from the issuance of a jury charge on falsehoods under oath, to the imposition of attorney's fees occasioned by the conduct in question, and finally to the entry of judgment against the offending party." Skywark, 1999 WL 1489038, at *14 (citations omitted).

## DISCUSSION

### I.      Unopposed Recommendations

As aforementioned, the H&H Defendants do not object to the propriety of analyzing the full record of their misconduct under the rubric of the Court's inherent power. (H&H Def. Obj. at 10–11 & 11 n.4.) Further, although the H&H Defendants dispute certain findings and inferences regarding their willfulness and motivations for the discovery misconduct, they do not dispute the R&R's factual findings as to the existence of this misconduct. (See e.g., id. at 7 ("The objections here are not in any way meant to trivialize some of the very serious conduct that has occurred during discovery . . . .").) The Court has reviewed these unopposed portions of the R&R and, finding no clear error, adopts them as the opinion of the Court pursuant to 28 U.S.C. § 636(b)(1).

### II.     The H&H Defendants' Objections

The H&H Defendants do, however, raise several objections to the R&R. For the reasons explained below, each of these objections is rejected.[5]

---

[5] The structure of this M&O deviates slightly from that of the H&H Defendants' objections brief; specifically, it groups their objections by subject matter rather than by the subheadings used in the objections brief.

A.  First Objection: Magistrate Judge Bloom Failed to Consider and Explain on the Record Less Drastic Remedies Before Recommending the Sanction of Default

The H&H Defendants assert that Magistrate Judge Bloom failed to consider lesser sanctions on the record before recommending the imposition of case-ending sanctions and thereby committed an abuse of discretion.  (H&H Def. Obj. at 8–10.)  The H&H Defendants acknowledge that the Second Circuit does not require that district courts "explicitly consider the efficacy of lesser sanctions" before imposing the sanction of default under all circumstances.  (Id.)  But they argue that failing to do so is only appropriate where the sanctioned party has been (1) subjected to a lesser sanction at an earlier phase of the litigation, or (2) repeatedly warned of the potential for such sanctions.  (Id. at 8–9.)  Here, because the H&H Defendants were not previously sanctioned for the non-compliance that is the subject of Abbott's sanctions motion,[6] nor warned of the possibility of default, they argue that the imposition of default without an on-the-record consideration of the efficacy of lesser sanctions was contrary to law and therefore an abuse of discretion.  (Id. at 9–10.)  In the context of this case, this argument is entirely unpersuasive.

First, all of the cases that the H&H Defendants cite in support of their position that the Second Circuit "requires" district courts to consider lesser sanctions before imposing dismissal are cases that were decided under the framework of Federal Rule of Civil Procedure 37.  (H&H Def. Obj. at 8–10 (citing cases).)  They are therefore distinguishable from the instant case—in which Abbott's sanctions motion was considered under the Court's inherent authority, and the H&H Defendants are being sanctioned not merely for committing discovery violations but for fraud upon the Court.  The R&R correctly recites the standard in this Circuit for determining the appropriate

[6] The H&H Defendants acknowledge that H&H was sanctioned by this Court for violating the parties' protective order, (D.E. # 1115), but point out that the violation at issue there "is not the subject of or related to the basis of [Abbott's] motion for sanctions here."  (H&H Def. Obj. at 10 n.3.)

sanction for punishing fraud upon the court,[7] (R&R at 7, 28–29), and it carefully applies this standard to the facts in this case, (id. at 29–31). As part of its analysis, the R&R analogizes the facts of the instant case to other district court decisions that have imposed the same sanction. (Id.) The R&R concludes that the H&H Defendants' repeated and egregious misconduct renders default "the only appropriate sanction." (Id. at 30.)

Second, although the H&H Defendants are correct that the R&R does not specifically list less severe sanctions and explain in detail why each would be ineffective, it does not follow that Magistrate Judge Bloom did not consider and reject such sanctions when deciding to recommend the most severe sanction in this case. Rather, the R&R's recitation of the legal standard provides examples of less severe sanctions. (Id. at 7 (noting that the "available sanctions at a court's disposal" include the "issuance of a jury charge on falsehoods under oath" and "the imposition of attorney's fees occasioned by the conduct in question" (internal quotation marks omitted)).) And Magistrate Judge Bloom of course rejected such lesser sanctions, which by definition have less punitive and deterrent effects, in concluding, after consideration of all of the factors, that the "harshest sanction is warranted" here. (R&R at 30; see also id. ("Defendants' discovery misconduct must be appropriately punished to deter such abuse of the Court's process. . . . [T]his is an extreme case because we are dealing here with repeated rather than with isolated or discrete

---

[7] As aforementioned, (see supra at 9), the proper standard is as follows. When it has been shown by clear and convincing evidence that a party has perpetrated a fraud upon the court, courts consider five factors to determine the appropriate sanction. Those five factors are:

(i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the injured party; (iii) whether there is a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future.

The H&H Defendants agree that these are the proper factors to consider. (See H&H Opp'n at 54.)

abuses and judgment against the offending party is the only appropriate sanction." (internal quotation marks omitted)).)

In any event, it is clear to this Court that lesser sanctions would be ineffective in this case. Given (1) the bad-faith, repeated, and egregious nature of the H&H Defendants' discovery misconduct, (2) their repeated misrepresentations to the Court in an attempt to cover up this misconduct, (3) the fact that their misconduct may never have come to light if not for their having being caught, (4) their continued evasion even after having been caught, (5) the prejudice suffered by Abbott as a result of the foregoing, and (6) the particular stage of the proceedings,[8] lesser sanctions—such as merely awarding attorneys' fees or providing an adverse inference instruction at a potential trial—would not sufficiently punish the H&H Defendants nor deter those who might be tempted to similar conduct. Indeed, the H&H Defendants themselves are unable to suggest any lesser sanctions that might be effective here.[9]

Finally, there is no requirement in the Second Circuit that parties be subjected to incremental sanctions, nor that they be warned prior to the issuance of case-ending sanctions. See e.g., Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1366 (2d Cir.1991) (holding parties have "no absolute entitlement to be 'warned' that they disobey court orders at their peril."). In addition, although not provided with formal and specific warnings, the H&H Defendants were repeatedly made aware of the seriousness of their discovery misconduct and were given multiple

---

[8] Summary judgment has already been granted against the H&H Defendants on many claims against them, thereby rendering the sanction of default less punitive than it would be in other cases. In other words, the effect of granting default judgment against the H&H Defendants overlaps with much of the relief already granted by this Court on summary judgment, so the H&H Defendants' have less to lose from the imposition of default than do parties who would have prevailed on the merits. For example, the Court granted Abbott's motion for summary judgment against H&H and Howard Goldman on several claims, including on the issues of willfulness and Howard Goldman's individual liability for trademark infringement. (The Court acknowledges, however, that the overlap is only partial.)
[9] The H&H Defendants note that the sanctioned party in another case, Penthouse Int'l Ltd., 663 F.2d at 371, failed to "provide proposals for lesser sanctions," "despite being provided an explicit opportunity to [do so]." (H&H Def. Obj. at 9 n.2.) Oddly, the H&H Defendants identify this failure while simultaneously exhibiting it themselves.

opportunities to try to explain or correct it.  (See R&R at 17–24.)  Instead of doing so, the H&H Defendants continued to mislead the Court.  (Id.)  In light of these circumstances, the H&H Defendants cannot credibly claim ignorance or surprise as to the potential consequences of their fraud.  For all of the above reasons, the H&H Defendants' first objection does not stand as an obstacle to adopting the R&R.

B. <u>Second Objection: Magistrate Judge Bloom's "Bad Faith" Finding Against the Goldmans Is Erroneous Because It Is Predicated on Her "Bad Faith" Finding Against H&H</u>

The H&H Defendants next argue that the R&R improperly recommends case-ending sanctions against Howard Goldman and Lori Goldman even though it makes findings of bad faith or willfulness only as to H&H.  (H&H Def. Obj. at 10–15.)  Specifically, the H&H Defendants contend that the R&R does not find bad faith on a clear and convincing basis against Howard Goldman and Lori Goldman individually but instead improperly imputes to them the bad faith of (1) agents of H&H, including David Gulas and Andrew Sweet; and (2) the company itself.  (Id.) This objection fails for the reasons set forth below.

1. Agents of H&H

The H&H Defendants contend that David Gulas and Andrew Sweet—managers of H&H involved in discovery matters—were found to have exhibited bad faith, but that Howard and Lori Goldman were not.  (Id. at 10–14.)  They argue that the R&R gives the impression that Magistrate Judge Bloom confused the "totality of the record" approach—which permits a court evaluating fraud on the court to consider a party's full range of litigation abuses—with a license to consider "all of the conduct demonstrated by all of the defendants" against individual defendants, "regardless of whether [the individual defendants] specifically participated in the specific bad

behavior." (Id. at 10–11; see also id. at 13 ("[W]e submit that the Court conflates 'totality of the record' . . . with the individual requirement for willfulness.").)

This objection fails because the R&R is quite clear that it did not simply impute the bad faith of H&H employees to the Goldmans but rather that it found bad faith as to each of the H&H Defendants, including the Goldmans. There is no dispute that the discovery orders that were violated in this action were directed toward all of the H&H Defendants, including Howard and Lori Goldman, and there is no dispute that they were both individually required to respond. (See, e.g., D.E. # 925, 963.) There is also no dispute that, like H&H, the Goldmans relied on H&H employees and their counsel to respond to the Court's discovery orders on their behalf, including by producing their individual work emails. (See, e.g., D.E. # 933.)[10] And they relied on their agents to respond to the Court's subsequent orders to conduct an internal investigation and submit a written report explaining how the original orders were violated in the first place. (D.E. # 1189.) The R&R concludes that "the H&H [D]efendants' bad faith can be inferred from the H&H [D]efendants' deliberate and strategic non-compliance with discovery, their selective withholding of responsive documents, and their perjury as well as deceptive and evasive testimony." (R&R at 29.) Each of the H&H Defendants—including the Goldmans—had a duty to comply with the Court's orders, and each willfully and grossly failed to do so.

Even if the Court were to credit the Goldmans' assertions that the fraud was committed by their agents without their knowledge or participation, they would not be absolved of liability. Magistrate Judge Bloom correctly rejected this argument in the R&R, holding that the H&H Defendants "cannot absolve themselves of liability here by shifting blame to their former counsel."

---

[10] H&H, Howard Godman, and Lori Goldman have chosen to be represented by the same counsel throughout this litigation. The H&H Defendants have filed a legal malpractice lawsuit against their former counsel, with Howard and Lori Goldman individually named as plaintiffs. (D.E. ## 1555-1, 1555-2.)

(R&R at 11.) The R&R goes on to cite controlling caselaw establishing that, when facing a sanctions motion, clients are bound by the actions of the agents whom they have selected to comply with court orders, including their counsel of record. (Id. (citing cases).) The same caselaw makes clear that the H&H Defendants cannot absolve themselves by blaming the employees whom they selected as their agents to work with counsel in responding to the discovery requests. See, e.g., Chevron Corp., 833 F.3d at 149–50 (the rule that clients are liable for the actions of counsel "rests upon well-settled principles of agency law" (internal quotation marks omitted)).

In short, the R&R correctly states and applies the law concerning clients' liability for the sanctionable conduct of their agents, and the extensive evidence of bad faith committed by the Goldmans' agents is attributable as a matter of law to each of them individually. It was not improper to consider the conduct of these agents in determining that there is clear and convincing evidence of bad faith as to the Goldmans individually.

2. H&H, as a Corporate Entity

The H&H Defendants also contend that Magistrate Judge Bloom could not find individual liability against Howard and Lori Goldman for the actions of H&H unless the Court (1) pierced the corporate veil or (2) found that the Goldmans were the "conscious active force" of the company. (Id. at 15 & n.5.) However, the Goldmans appear to confuse the standards for finding individual liability under the substantive law at issue in this case with the standard for finding individual liability when a party perpetrates fraud upon the court. As aforementioned, the Goldmans were individually responsible for complying with the Court's discovery orders, and they are individually liable for the willful discovery fraud and cover-up they undertook personally or that was undertaken by their agents in their name. Whether or not Howard or Lori Goldman may

be held individually liable for the trademark infringement of H&H is an entirely separate inquiry.[11]

In sum, because the R&R did not improperly impute the bad faith of others or of the company to Howard and Lori Goldman, but rather properly found bad faith as to each of them individually, the H&H Defendants' second objection is rejected.

C. <u>Third Objection: There Is Insufficient Evidence To Hold the Goldmans Personally Liable</u>

In a related vein, the H&H Defendants next suggest that there is insufficient evidence to hold Howard Goldman personally liable for fraud upon the Court and recommend default judgment against him, (H&H Def. Obj. at 11–14), and they argue that there is "no legal or factual basis" to support the same against Lori Goldman, (<u>id.</u> at 13–14, 15–22).

However, as discussed above—and at length in the R&R—there is, in fact, a very robust record of evidence upon which Magistrate Judge Bloom properly found that Howard and Lori Goldman are individually liable for fraud upon the Court, and that a sanction of default is therefore warranted. The R&R summarizes this clear and convincing evidence of the H&H Defendants' fraud upon the Court as follows:

> Based on the full record of the case, there is clear and convincing evidence that [the H&H] [D]efendants have perpetrated a fraud upon the court. Defendants' initial conduct of formulating search terms designed to fail in deliberate disregard of the lawful orders of the Court allowed H&H to purposely withhold responsive documents, including the Holland Trading, Howard Goldman, and Lori Goldman documents. Defendants proffered inconsistent positions with three successive counsel as to why the documents were withheld. Mr. Sweet's testimony is clearly inconsistent if not perjured from his deposition to his declaration in opposition to the instant motion. Mr. Goldman's deposition testimony is evasive and self-serving

---

[11] Indeed, this separate inquiry was undertaken at summary judgment. There, this Court granted summary judgment in favor of Abbott on the issue of Howard Goldman's personal liability, holding that Howard Goldman was a moving, active, conscious force behind H&H's infringement and therefore personally liable as a matter of law. (D.E. # 1563 at 38–39.) The Court denied Lori Goldman's motion for summary judgment regarding her personal liability, holding that a reasonable jury could find that she was a moving, active, conscious force behind H&H's infringing activities. (<u>Id.</u> at 40–41; <u>see also</u> R&R at 19 n.13 ("[Abbott's] instant motion requires a different showing than the motion for summary judgment; specifically, that there is clear and convincing evidence of a scheme calculated to interfere with the judicial process. . . . Ms. Goldman need not be the moving force to be part of the scheme." (citation omitted)).)

at best. Finally, Mr. Gulas' deposition testimony is clearly perjured. Had [Abbott] never seized H&H's server pursuant to the Court's Order in [Abbott II], H&H would have gotten away with their fraud upon this Court. H&H only complied with the Court's orders and their discovery obligations when their backs were against the wall. Their email server had been seized. There was no longer an escape from responsibility for their bad faith conduct. . . . But for being caught in a web of irrefutable evidence, H&H would have profited from their misconduct.

(R&R at 28.)

Ignoring the majority of the R&R, including the above summary, the H&H Defendants emphasize the R&R's finding that "Abbott's allegation that [Howard Goldman] committed perjury was an over-statement." (Id. at 11.) As such, they argue, the R&R "clearly acknowledges there is no basis in fact to hold that Howard Goldman demonstrated 'repeated lies' or that he even lied whatsoever in his deposition testimony." (Id. at 11–12 (emphasis omitted).)

In fact, the R&R finds that Abbott's assertion that Howard Goldman committed "serial perjury [at his deposition] . . . may be a bit overstated," (R&R at 27 (emphasis added)), and the R&R's findings as to Howard Goldman's candor at his deposition are far from an exoneration. To the contrary, the R&R found that Howard Goldman's deposition testimony is "riddled with evasion, inconsistencies, and contradictions," and that, "[e]ven on the simplest matter, Mr. Goldman could not give a straight answer." (Id. at 26.) Moreover, although it acknowledges that Howard Goldman's deposition testimony standing alone would not warrant case-ending sanctions, the R&R in no way suggests that there is "no basis in fact" for such a finding against him. Rather, the R&R notes that Howard Goldman's testimony "cannot be considered in isolation," and in light of the full record of the case—viz., the egregious misconduct summarized above—the Court finds that each of the H&H Defendants perpetrated a fraud upon the Court and that case-ending sanctions against Howard Goldman are warranted. (Id. at 27–28.)

Regarding Lori Goldman, the H&H Defendants point out that there is no evidence that Lori

Goldman participated in the concealment of any documents, (id. at 18), and that, even if Lori Goldman did make "misstatements" in her declaration, these misstatements—viewed in the context of the entire record—did not impede the truth-finding process or constitute "intentional and repeated lies," as required for a finding of fraud upon the Court, (id. at 17–21). Accordingly, they argue, "insofar as there is no evidence . . . that Ms. Goldman conspired with persons that the Court believes, in sum and substance, repeatedly lied to the court (e.g., Sweet or Gulas) or acted in concert with them, it is impossible to draw from the record Ms. Goldman's bad faith state of mind from which to base this sanction." (Id. at 17.)

This objection fails for substantially the same reasons as the objection to Howard Goldman's liability fails: Lori Goldman was herself responsible for the willful and egregious discovery fraud and cover-up that she committed either personally or through her agents. As with her husband, simply because Lori Goldman's individual statements would be insufficient to support a finding of fraud against her personally does not mean that the record as a whole does not support such a finding. The R&R's findings concerning the H&H Defendants' document discovery fraud and cover-up are specific, well supported by the documentary record, and definitive. Each of these findings is applicable to Lori Goldman as well as to H&H and Howard Goldman, and they refute her argument that there is insufficient evidence of her individual liability.

Accordingly, the H&H Defendants' objection to the R&R on the ground that there is no basis to render default judgment against the Goldmans individually fails.

D. Fourth Objection: Magistrate Judge Bloom Abused Her Discretion in Declining to Hold an Evidentiary Hearing

The H&H Defendants next contend that Magistrate Judge Bloom was required to hold an evidentiary hearing before entering sanctions and that her failure to do so was an abuse of discretion. (H&H Def. Obj. at 22–25.) Specifically, they assert that "the court's undeniable

discretion surrounding a sanctions motion is inherently limited by the constitutional boundaries of the Fifth Amendment that no person shall be deprived of property without due process of law." (Id. at 22–24 (discussing Lori Goldman's due process rights); id. at 24–25 (discussing Howard's).) Regarding Lori Goldman, the H&H Defendants assert that an evidentiary hearing was necessary to "clarify for the Court whether she actually . . . showed bad faith by and through her declaration." (Id. at 23.)  With regard to Howard Goldman, they argue that an evidentiary hearing would have afforded an opportunity to examine Gulas and Sweet, to determine whether Howard had any role in their misrepresentations to the Court.  (Id. at 25.)

This objection fails because the H&H Defendants misconstrue the due process rights at issue.  Here, an evidentiary hearing was not required, and Magistrate Judge Bloom properly exercised her discretion in declining to hold one.

### 1.  Legal Standard

The Second Circuit has held that due process requires courts to provide notice and an opportunity to be heard before imposing any kind of sanctions.  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 334 (2d Cir. 1999).  "[T]he notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense."  Id.  The Second Circuit has repeatedly held that "the opportunity to be heard does not necessarily entitle the subject of a motion for sanctions to an evidentiary hearing."  Id. at 335 (citing cases).  Rather, because "[a]n evidentiary hearing serves as a forum for finding facts, . . . its need can be obviated when there is no disputed question of fact or when sanctions are based entirely on an established record."  Id.  The Second Circuit contrasts evidentiary hearings with hearings at which the subject is permitted to present an

oral argument. Id. The latter does not serve as a forum for finding facts but rather "vindicates a purpose that is sui generis," and "[i]t is this latter purpose to which the phrase 'opportunity to be heard' aspires in our context." Id. Accordingly, "irrespective of the state of the factual record, a district court will often exercise its discretion to provide someone facing [sanctions] the opportunity to speak to the very court that is about to pronounce judgment." Id.

In support of their argument that an evidentiary hearing is a due process requirement before a court imposes case-ending sanctions, the H&H Defendants rely on Flaks v. Koegel, 504 F.2d 702 (2d Cir. 1979), and Jay v. Spectrum Brands Holdings, Inc., 13-cv-08137 (LTS) (DF), 2015 WL 6437581 (E.D.N.Y. Oct. 20, 2015).

The H&H Defendants cite to the following language in Jay: "Only where the court imposes sanctions that require a finding of willfulness is an evidentiary hearing required." Jay, 2015 WL 6437581, at *6. However, the movants in Jay did not request, and the court never considered, case-ending sanctions. The Jay court also did not hold an evidentiary hearing. Although the H&H Defendants do not identify it as such, this language from Jay is merely dicta, and it is neither controlling nor particularly persuasive in this context.

Flaks also does not stand for the proposition that a court is required to hold an evidentiary hearing before entering case-ending sanctions. Flaks involved a sanctioned defendant who failed to adequately respond to interrogatories and then, when he was proceeding pro se, failed to appear for a deposition. Flaks, 504 F.2d at 704. After retaining new counsel, he filed a motion for reconsideration and offered evidence that he had made serious efforts to find the records necessary to answer plaintiff's discovery requests but was unable to do so, and that he was unaware of various other court orders. Id. at 711. The district court declined to reconsider its entry of case-ending sanctions. Id. On appeal, the Second Circuit held that the district court's entry of case-ending

sanctions was sustainable only "if it has been demonstrated that the defendant's failure to comply was in fact due to willfulness, bad faith, or fault and not to an inability to comply." Id. Because affidavits submitted by the defendant on reconsideration "created . . . material issues of fact" as to whether the defendant had been unable to comply rather than had refused to comply, the Second Circuit held that the district court could not determine whether the defendant's claims were credible without additional "evidence which a hearing could produce." Id. at 712–13. Under these particular facts, an evidentiary hearing was necessary to preserve the defendant's due process rights. Id.

A plain reading of Flaks therefore makes clear that it does not stand for the proposition that evidentiary hearings are always required before entry of case-ending sanctions. But in case there was any doubt, more recent case law confirms that such a reading of Flaks is improper. As discussed above, the Second Circuit has held that an evidentiary hearing is unnecessary when sanctions are based on an established record. Schlaifer Nance Co., 194 F.3d at 335; see also Shah v. Eclipsys Corp., 2010 WL 2710618, at *15 (E.D.N.Y. July 7, 2010) (holding that "an evidentiary hearing is not always necessary before finding a party has committed fraud on the court," but noting that some courts "have exercised their discretion" to hold such hearings); Zimmerman v. Poly Prep Cty. Day Sch., 2012 WL 2049493, at *34 (E.D.N.Y. June 6, 2012) (quoting Shah).

And indeed, multiple courts in this Circuit have entered case-ending sanctions without holding such a hearing. See, e.g., Skywark, 1999 WL 1489038, at *15 & n.29 (finding fraud on the court had been established by clear and convincing evidence and noting that "the extensive documented record, the admissions, and the patent nature of the falsehoods eliminate any need for a hearing"); see also Shangold v. Walt Disney Co., 275 F. App'x 72 (2d Cir. 2008) (affirming district court's imposition of case-ending sanctions based on a paper record where the moving

party had "established, by clear and convincing evidence," a willful fraud on the court).

### 2. Application

The H&H Defendants do not dispute that the notice requirement of due process was satisfied. The H&H Defendants were also afforded opportunities to be heard and to defend themselves against Abbott's motion, including via an oral argument in front of Magistrate Judge Bloom before she issued the R&R. (D.E. dated February 27, 2019.) Rather, the H&H Defendants argue that they were entitled to an evidentiary hearing as part of their opportunity to be heard.

Evidentiary hearings are not required when sanctions are based entirely on an established record. Schlaifer Nance & Co., 194 F.3d at 335. Here, Magistrate Judge Bloom based her recommendation on a robust record that clearly establishes the H&H Defendants' fraud on the court. This record includes (1) the H&H Defendants' original, inadequate document production, as well as the much more voluminous document production that was made after their prior withholding was revealed; (2) an expert report and deposition on the alleged "technical errors" that the H&H Defendants claimed caused the original production to be incomplete; (3) the transcripts of multiple court conferences concerning the discovery violations; (4) an internal investigation report authored by the H&H Defendants' counsel; and (5) the depositions of the Goldmans, their former counsel, and their agents. In light of the extensive paper record in this case, it was proper to conclude that an evidentiary hearing was not necessary. Moreover, unlike in Flaks, the facts in this case do not present material issues of fact as to whether the Goldmans' noncompliance resulted from an inability to comply or a lack of awareness as to the Court's orders rather than from bad faith, willfulness, or fault. And indeed, the Goldmans do not claim as much. Given the clarity and robustness of the record, Magistrate Judge Bloom also sensibly predicted that an evidentiary hearing would likely "raise problems of privilege that would outweigh any probative value such a

hearing could have."  (R&R at 5 n.5 (quoting <u>Cine</u>, 602 F.2d at 1062 n.7).)

The Goldmans argue that an evidentiary hearing would have "clarified for the Court whether [Lori Goldman] actually . . . showed bad faith by and through her declaration."  (H&H Def. Obj. at 23.)  And it would allow the Court to determine whether Gulas and Sweet were trying to cover up for Howard Goldman through their lies, "as the [R&R] seems to infer."  (<u>Id.</u> at 25.)  But Magistrate Judge Bloom's finding of bad faith as to Lori Goldman does not hinge on misrepresentations in her declaration, nor does her finding of bad faith as to Howard Goldman hinge on whether Sweet and Gulas were lying so as to cover up for him.  In other words, an evidentiary hearing was not necessary to clarify the factual record, because the matters which the Goldmans sought to clarify would not have affected the outcome of Abbott's motion.[12]  Rather, as discussed throughout this M&O, Magistrate Judge Bloom's finding that the Goldmans perpetrated a fraud upon the Court was based on a finding of egregious discovery misconduct and subsequent attempts to cover up this misconduct, all of which was clearly established on the record.

For all of the reasons above, an evidentiary hearing was not required here to preserve the Goldmans' due process rights, and Magistrate Judge Bloom's decision not to hold one before recommending a sanction of default was not an abuse of discretion.

E.  <u>Fifth Objection: The R&R Improperly Draws an Inference that Non-Disclosure of the Holland Trading Group Documents Was Motivated by the H&H Defendants' Participation in a Counterfeit Scheme</u>

The H&H Defendants' final objection to the R&R is that it improperly infers that the H&H Defendants participated in a counterfeiting scheme with Holland Trading Group, and that "this

---

[12] The H&H Defendants do not suggest that they were denied the opportunity to present an oral argument—a forum that "vindicates a purpose that is <u>sui generis</u>" and is the "purpose to which the phrase 'opportunity to be heard' aspires" in this context.  <u>Schlaifer Nance Co.</u>, 194 F.3d at 335.  Nor could they, of course, given that Judge Bloom held oral argument on this motion.  Rather, they argue that an evidentiary hearing was necessary for fact-finding purposes.

inference . . . undermines due process and is unduly prejudicial." (H&H Def. Obj. at 25–27.) The H&H Defendants do not dispute that they withheld documents regarding Holland Trading Group from their January 2017 discovery production; rather, they object to the R&R's purported "strong[] intimat[ion] that H&H did, in fact, participate in a counterfeiting scheme [with Holland Trading Group] and that [this was] the reason the [H&H] Defendants withheld those documents." (Id., at 25–26.) This objection is also the subject of their supplemental briefing. (D.E. # 1557 at 1 ("[W]e submit that the [R&R] improperly draws an inference that non-disclosure of [Holland Trading Group] documents was motivated by an effort to conceal and maintain knowing participation in a counterfeiting scheme.").) This argument fails.

First, the Court disagrees that the R&R "strongly intimates" that the H&H Defendants knowingly engaged in the alleged counterfeiting scheme. Rather, the R&R makes clear that this is a disputed issue that is the subject of a separate action pending before the Court. (See R&R at 13 n.8 ("The H&H [D]efendants deny that they knew they were buying counterfeits. That is the central issue in Abbott II.").)

Second, the H&H Defendants' withholding of the Holland Trading Group documents constituted willful discovery misconduct regardless of whether or not the reason they withheld these documents was to hide their alleged participation in a counterfeiting scheme. The H&H Defendants argue that they did not produce the Holland Trading Group documents because they did not believe that Magistrate Judge Bloom's January 2017 discovery order required them to do so. (H&H Def. Obj. at 25.) Specifically, they suggest that they were not required to produce these documents because they concerned a transaction that was not consummated. (H&H Opp'n at 38.)

But Magistrate Judge Bloom properly rejected this excuse as implausible.[13]  The H&H Defendants

offer no other legitimate explanation why these documents—which should have been produced in

response to the Court's January 27, 2017 discovery order, (see R&R at 13–14)—were not

produced.  In short, it does not matter whether the H&H Defendants willfully withheld responsive

documents in an attempt to hide their alleged participation in a counterfeiting scheme, or whether

they willfully withheld responsive documents for some other illegitimate purpose.  Either way, the

H&H Defendants engaged in discovery misconduct regarding the Holland Trading Group

documents and then proceeded to lie about it.  This misconduct properly contributed to Magistrate

Judge Bloom's finding of fraud upon the Court.

## III.    The H&H Defendants' Request for an Interlocutory Appeal

The H&H Defendants request that, should the Court decide to adopt the R&R, the Court's

final decision should contain a notation pursuant to 28 U.S.C. § 1292(b) allowing them to pursue

an immediate interlocutory appeal.  This request is denied.

Under 28 U.S.C. § 1292(b), if a district judge is of the opinion that his or her order

"involves a controlling question of law as to which there is substantial ground for difference of

opinion and . . . an immediate appeal from the order may materially advance the ultimate

termination of the litigation," the judge "shall so state in writing in such order."  Here, the H&H

Defendants assert that the R&R "implicates several controlling questions of law, including, among

other things, (a) whether an evidentiary hearing was required and (b) the personal liability of the

individual defendants here."  (H&H Def. Obj. at 27.)  Because this Court disagrees that there is

---

[13]  As noted in the R&R, the H&H Defendants were ordered to produce "all formal and informal communications regarding defendants' purchases and sales of International FreeStyle test strips in 2014 . . . ."  (R&R at 19 (quoting D.E. # 963).)  The discovery order did not specify that the purchases or sales must have been consummated, as the H&H Defendants suggest.  Moreover, the R&R reasons that the H&H Defendants' claim that they understood the order to be limited to completed sales is belied by their own production, which included documents relating to incomplete purchases and sales.  (R&R at 19.)

"substantial ground for difference of opinion" on these or any other legal issues raised in the R&R, the Court declines the H&H Defendants' request to certify this order for immediate interlocutory appeal.

## CONCLUSION

For the reasons stated above, the Court agrees with the thorough, thoughtful, and well-reasoned decision by Magistrate Judge Bloom and affirms its conclusions. The Court grants Abbott's motion for sanctions and enters a default judgment against the H&H Defendants. It denies the H&H Defendants' request to certify this order for interlocutory appeal under 28 U.S.C. § 1292(b).

SO ORDERED.

Dated: March 24, 2020
        Brooklyn, New York                          /s/ Carol Bagley Amon
                                                     Carol Bagley Amon
                                                     United States District Judge