Clerk's Office
Filed Date:  12/23/2020

12:36 PM

U.S. DISTRICT COURT
EASTERN DISTRICT OF
NEW YORK
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

ABBOTT LABORATORIES, ABBOTT
DIABETES CARE INC., and ABBOTT
DIABETES CARE SALES CORPORATION,

                    Plaintiffs,

     -against-

ADELPHIA SUPPLY USA, et al.,

                    Defendants.
---------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-5826 (CBA) (LB)

**AMON, United States District Judge:**

    Abbott[1] initiated this action in October 2015, asserting claims against multiple defendants, including the H&H Defendants[2], in connection with the unlawful sale of Abbott's international FreeStyle test strips in the United States.  (ECF Docket Entry ("D.E.") # 1.)  Following extensive discovery, Abbott moved for summary judgment against the defendants, seeking, inter alia, summary judgment on its claims against H&H under the Lanham Act for trademark infringement and willfulness.  (D.E. # 1414.)  The Court granted Abbott's motion for summary judgment as to liability, finding H&H liable for willful infringement as a matter of law.  (D.E. # 1563.)  The Court also found all defendants (save for a few individual defendants) liable at summary judgment for Lanham Act trademark infringement, although it determined that damages could not be resolved on summary judgment.

    During the same time in which Abbott was preparing its motion for summary judgment, Abbott commenced a related action, Abbott Laboratories et al. v. H&H Wholesale Services Inc. et al., No. 17-cv-3095 (E.D.N.Y.), against the H&H Defendants for their sale of international

---

[1] Plaintiffs Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corp. (collectively, "Abbott").

[2] H&H Wholesale Services, Inc. ("H&H"), Howard Goldman, and Lori Goldman (collectively, the "H&H Defendants").

FreeStyle strips repacked in counterfeit U.S. packaging.  In that action, Abbott conducted a Court-authorized search of H&H's premises, which resulted in the seizure of their email server.  Review of the contents of that server revealed that the H&H Defendants had engaged in a calculated pattern of discovery misconduct in this action that amounted to a fraud on the Court.  (D.E. # 1613 at 4–6.)

Abbott moved for case-ending sanctions against the H&H Defendants in the instant action, and the motion was referred to Magistrate Judge Bloom for report and recommendation ("R&R"). See Jan. 14, 2019 Order Referring Mot. On May 2, 2019, Judge Bloom issued an R&R recommending that the Court grant Abbott's motion and enter a default judgment against the H&H Defendants. (D.E. # 1545.)  After receiving objections to the R&R and Abbott's reply to those objections, the Court adopted Judge Bloom's R&R in its entirety and entered a default judgment against the H&H Defendants.  (D.E. # 1613.)  Among the Court's findings were that "the H&H Defendants—including the Goldmans—had a duty to comply with the Court's orders, and each willfully and grossly failed to do so."  Id. at 15; see also id. at 16, 19 (finding the Goldmans "individually liable for the willful discovery fraud and cover-up they undertook personally or that was undertaken by their agents in their name"); id. at 25 (finding that "the H&H Defendants' withholding of … documents constituted willful discovery misconduct" regardless of the reason they were withheld).

Given the entry of default, on March 24, 2020, the Court ordered briefing on the issue of when the damages inquest under Federal Rule of Civil Procedure 55(b)(2) against the H&H Defendants should occur in relation to trial against the remaining non-defaulting defendants.

Abbott, the H&H Defendants, the G&S Defendants[3] and the S&S[4] Defendants have all submitted briefing on the issue.  The H&H Defendants argue that the damages inquest should either (a) come after the non-defaulting defendants' trial; or (b) be consolidated with the non-defaulting defendants' trial.  (D.E. # 1614.)  Abbott and the S&S Defendants argue that the damages inquest as to the H&H Defendants should be held prior to the trial for the non-defaulting defendants.  (D.E. ## 1619, 1622.)  The G&S Defendants express no view on the sequencing, arguing only argue that the inquest and trial should not be consolidated.  (D.E. # 1618.)

A more developed statement of the facts, issues, and procedural history of this complex action is provided in the Court's September 30, 2019 Memorandum and Order.  Familiarity with the matter is here presumed, and the Court recounts only those facts necessary to adjudicate the present issue.  For the reasons provided below, the damages inquest shall be held prior to the trial for the non-defaulting defendants.

## DISCUSSION

The decision of whether to enter a final judgment against some but fewer than all of the parties in an action is left to the sound discretion of the district court.  Bleecker v. Zetian Sys., Inc., No. 12 CIV. 2151 DLC, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013).  The standard is governed by Rule 54(b), which provides in relevant part:

> [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

---

[3] Defendants Able Wholesalers of Tennessee LLC, Kevin Singer, Paul Leight, Massalah Trading U.S.A., Ltd. Saad (Sam) Haddad, Matrix Distributors, Inc. Christopher Benevent, Seth Grumet, Drugplace, Inc., Neil Feig, Save Rite Medical.com LLC, Mark Kaplan, Shie Greenfeld, Dream Cereal, Inc. and Douglas Hauck are represented by Goodman & Saperstein LLC, the ("G&S Defendants").

[4] Value Wholesaler, Inc., Adelphia Supply USA, and Primed Pharmaceuticals LLC are represented by Stern & Schurin LLP (the S&S Defendants").

Fed. R. Civ. P. 54(b).

In making such a determination, "there are no fixed criteria." Bleecker, 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (internal quotation marks omitted).   However, courts have interpreted the Supreme Court's nineteenth-century decision in Frow v. De La Vega, 82 U.S. (15 Wall.) 552, 21 L.Ed. 60 (1872) as informing the propriety—at least in certain circumstances—of a court's entering final judgment against a defaulting defendant while answering defendants remain in the action.  See id.  Accordingly, the Court must determine whether holding a damages inquest and entering final judgment against the H&H Defendants prior to the trial of the non-defaulting defendants is consistent with both Rule 54 and Frow.

A.  Frow *and Joint Liability*

The H&H Defendants primarily argue that a damages inquest conducted prior to the trial of the answering defendants is premature and impermissible in light of Frow.  Abbott contends that Frow's holding is not controlling here, and that the rationale underlying Frow is not implicated by the facts of the present case.  The Court concludes that Frow is not controlling here and does not necessarily prohibit the damages inquest and entry of a final judgment under Rule 54.

In Frow, the plaintiff filed a bill in equity to determine title to a parcel of real property. The pleading alleged that fourteen defendants engaged in a joint conspiracy to defraud plaintiff of the property.  When one of these defendants failed to plead, a default judgment was entered against him.  The answering defendants proceeded to trial and prevailed on the merits.  The Supreme Court vacated the default judgment, observing that it would be "absurd[]" to have "one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge. . . ."  Id. at 554.

Accordingly, courts have determined that where Frow applies, notice of defendant's default may be docketed, "but entry of final judgment should be deferred pending disposition as to the non-defaulting defendants, so that the case can be resolved by one final, consistent judgment." Mitchell v. Lyons Prof'l Servs., Inc., 727 F. Supp. 2d 116, 119 (E.D.N.Y. 2010).  Exactly when Frow applies and what it stands for, however, is not entirely clear from the opinion itself.  See Farzetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 n.2 (3d Cir. 1986) (noting Frow's "ambiguity").  Courts interpreting Frow "have treated this holding narrowly," Rivera v. Mattingly, No. 06-CIV-7077(LAP)(HBP), 2017 WL 7050323, at *6 (S.D.N.Y. June 23, 2017), finding the holding applies to defendants who are jointly liable.  See Lemache v. Tunnel Taxi Mgmt., LLC, 354 F. Supp. 3d 149, 152 (E.D.N.Y. 2019) ("[Frow] explained that in a multi-defendant case where defendants are alleged to be jointly liable, entering a default judgment runs the risk of inconsistent judgments.") (emphasis original); Mitchell, 727 F. Supp. 2d at 119 (noting Frow's "holding has been narrowed to cases involving true joint liability") (internal quotation marks omitted); see also 10A Charles Alan Wright, et al., Federal Practice and Procedure: Civil 3D § 2690 (2001) (Frow stands for the proposition that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted.").

Similarly, the Second Circuit "has cast doubt on the vitality of Frow in light of the subsequent enactment of Federal Rule of Civil Procedure 54(b), which authorizes entry of default judgment against fewer than all parties as long as there is no just reason for delay."  Consumer Fin. Prot. Bureau v. NDG Fin. Corp., No. 15-CIV-5211(CMR)(WL), 2018 WL 1605067, at *6 (S.D.N.Y. Mar. 12, 2018) (citing Int'l Controls Corp. v. Vesco, 535 F.2d 742, 746 n.4 (2d Cir. 1976)).  The Second Circuit observed that "it is most unlikely that Frow retains any force

subsequent to the adoption of Rule 54(b).  In any event, at most, <u>Frow</u> controls in situations where the liability of one defendant necessarily depends upon the liability of the others."  <u>Int'l Controls Corp</u>, 535 F.2d at 746 n.4.  "In contrast, if the liability sought to be imposed is joint and several rather than joint, most courts have held that the rationale of <u>Frow</u> does not directly apply, since it would not be inconsistent to hold some but not all defendants liable."  <u>Rivera</u>, 2017 WL 7050323, at *7.  <u>See also</u> <u>Lemache</u>, 354 F. Supp. 3d at 153 (explaining that, unlike a theory of joint and several liability, it is "impossible" under a theory of joint liability "for one defendant to be liable unless all other defendants are also liable");  <u>In re Uranium Antitrust Litig.</u>, 617 F.2d 1248, 1257–58 (7th Cir. 1980) (same).

 <u>Frow</u> is not directly controlling in this action.  As an initial matter, <u>Frow</u> concerned jointly liable defendants, some of which were exonerated on the merits.  Here, both the defaulting and non-defaulting defendants have already (with minimal exception) been found liable for trademark infringement at summary judgment; the non-defaulting defendants are proceeding to trial on the question of damages.  Moreover, the H&H Defendants were placed in default in light of their unique actions.  Accordingly, there is no risk of inconsistent judgments as to liability on these claims.  Moreover, with regard to the Lanham Act claims for trademark infringement against both the defaulting and the non-defaulting defendants, Abbott has alleged a theory of joint and several liability.  <u>See In re Uranium Antitrust Litig.</u>, 617 F.2d 1248, 1257–58 (7th Cir. 1980) ("The result in <u>Frow</u> was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability.  However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the <u>Frow</u> rule is lacking.  Such is this case involving joint and several liability.").  Abbott does not argue that any one defendant is automatically liable for the entirety of the damages sought by Abbott regardless of which boxes the defendant actually

trafficked.  Rather, each defendant is liable for the unlawfully diverted boxes that it trafficked, and Abbott is seeking varying damages amounts against different defendants based on that varying number of boxes.  Cf. Frow, 82 U.S. (15 Wall.) 552 (regarding a single res in controversy).

   B. Frow *and Joint and Several Liability*

   Abbott has also, however, maintained that defendants are jointly and severally liable for trademark infringement damages attributable to those boxes for which multiple defendants were in the same distribution chain.  H&H Defendants agree.  (See D.E. # 1614 at 23 ("[W]e do accept that H&H, like any other individual defendant in this case, is jointly and severally liable for the damages specifically allocated to its particular distribution chain.").)  H&H Defendants point to this doctrine as raising the specter of inconsistent damages awards as between such defendants and, under the principles guiding Frow and its progeny, precluding entry of a final judgment prior to the damage determination at trial for the non-defaulting defendants.

   Although "[t]he Frow holding has been narrowed to cases involving true joint liability," courts have, in the absence of countervailing justifications, nonetheless "also consistently delayed damages inquests even where a plaintiff seeks joint and several liability in order to avoid the problems of dealing with inconsistent damage determinations."  Harvey v. Home Savers Consulting Corp., No. 07-CV-2645 (JG), 2008 WL 724152, at *1 (E.D.N.Y. Mar. 17, 2008) (internal citations and quotation marks omitted) (collecting cases); Gesualdi v. MMK Trucking, Inc., No. CV 09-1484 SLT AKT, 2010 WL 3619569, at *5 (E.D.N.Y. Aug. 24, 2010), report and recommendation adopted, No. 09 CV 1484 SLT AKT, 2010 WL 3619719 (E.D.N.Y. Sept. 9, 2010) ("Even though[] the defaulting and non-defaulting Defendants may be held jointly and severally liable for the same damages, deferring consideration of damages with respect to the defendants in

default until after Plaintiffs' contested claims are litigated will minimize the risk of inconsistent awards.") (internal brackets and quotation marks omitted).

These cases are, however, distinguishable in that the risk of an inconsistent damages award arose there because the plaintiff was seeking a single, unitary damages amount against multiple defendants. Where a unitary damages figure is sought against defaulting and non-defaulting defendants alike, there is a risk that logically inconsistent awards be entered. As stated above, Abbott is here seeking different and unique damages amounts against different defendants based on the boxes that particular defendant sold.

On the other hand, the H&H Defendants rightly observe that the defendants in this action did not operate in neat silos, and that the distribution chains involving multiple defendants that trafficked the same infringing box(es) are interweaving. Moreover, at summary judgment, several defendants argued that Abbott could not prove that the defendants' infringement displaced sales of non-infringing boxes and caused actual damages. The Court declined to grant summary judgment as to damages, determining that the jury must decide the extent to which Abbott suffered any actual damages. The H&H Defendants now argue that Abbott's theory of the case places them at the center of a complicated distribution-chain web, leaving H&H jointly and severally liable with multiple non-defaulting defendants for an outsize portion of the total number of infringing boxes that Abbott alleges the H&H Defendants trafficked in. They argue that it would be at the heart of Frow's concern were the Court to impose damages on the H&H Defendants at an inquest for trafficking in infringing boxes where the jury determined, vis-à-vis a non-defaulting defendant in the same distribution chain as H&H, that those same boxes did not cause actual damages at the point of sale. They argue that the presence of this common issue between the defendants as to

whether an infringing box caused actual damages renders them and non-defaulting defendants in the same distribution chain "similarly situated."

Courts have observed that "decisions in this Circuit subsequent to <u>Vesco</u> support extension of <u>Frow</u> to cases in which defendants are merely 'similarly situated.'" <u>Diarama Trading Co. Inc. v. J. Walter Thompson U.S.A., Inc.</u>, No. 01-cv-2950 (DAB), 2002 WL 31545845, at *4 (S.D.N.Y. Nov. 13, 2002) (quoting <u>Farberware v. Groben</u>, 1991 WL 123964, at *3 n. 4 (S.D.N.Y.1991)). The "similarly situated" principle has been applied in cases where <u>liability</u> of the answering defendants was yet undetermined, and the defendants' liability was inextricably connected. <u>Diarama Trading Co. Inc</u>, 2002 WL 31545845, at *4 (declining to enter default judgment for fear of prejudicing appearing defendants, who all claimed that their rights in the contested trademark derive from the defaulting defendant). Here, all of the defaulting and non-defaulting defendants (with minimal exception) have all already been found liable for trademark infringement. Moreover, it is not clear to the Court at this time which defendants may be jointly and severally liable with which other defendants, and for what boxes. Finally, the non-defaulting defendants may present different defenses and theories to the jury that are accepted by the jury but are inapplicable to the H&H Defendants.

The H&H Defendants have failed to show that "liability of one defendant necessarily depends upon the liability of others", <u>Int'l Controls Corp</u>, 535 F.2d at 746 n.4. And, even assuming <u>arguendo</u> that there is a common issue between the defendants within the purview of the "similarly situated" doctrine which presents a possible risk of inconsistent awards, the Court weighs this against the countervailing factors and determines there is no just reason for delay in entering final judgment against the H&H Defendants. See <u>Shanghai Automation Instrument Co. v. Kuei</u>, 194 F. Supp. 2d 995, 1009 (N.D. Cal. 2001) ("To hold that the mere possibility of inconsistent judgment

9

divests the Court of its discretion under Rule 54(b) would imply that whenever there are multiple defendants who raise similar defenses, the court could never enter a default judgment until conclusion of the entire case regardless of the substantial prejudice likely to be suffered by the plaintiff as a result of the delay.  Such a rule would contravene the purpose of the 1961 amendment to Rule 54(b).").

C. *Balancing the Equities*

In Int'l Gemmological Inst., Inc. v. Rafaeil, the court observed that while some decisions delayed a damages inquest over concerns of inconsistent awards, that interest in "judicial economy" must yield to the "interests of the parties in proceeding with the inquest."  No. 05-cv-2395 JGK JCF, 2005 WL 3880222, at *2 (S.D.N.Y. Aug. 17, 2005), report and recommendation adopted, 2006 WL 739822 (S.D.N.Y. Mar. 21, 2006).  Specifically, the parties there would have been prejudiced by delay because plaintiff could not begin to collect until final judgment was entered, and the "defaulting defendants would have ample opportunity to spend, secrete, or otherwise protect their ill-gotten gains . . . [which would] permanently prevent the plaintiff from being made whole."  Id. at *3.  Additionally, the court determined that this would also prejudice the non-defaulting defendants, since if "defaulting parties are able to insulate themselves from judgment during the continuing litigation, the non-defaulting parties could be forced to satisfy the entire damage award without the possibility of contribution from the defaulting defendants."  Id.; see also Bleecker v. Zetian Sys., Inc., No. 12-cv-2151 DLC, 2013 WL 5951162, at *7 (S.D.N.Y. Nov. 1, 2013) (declining to delay entry of final judgment against defaulting defendant because, inter alia, plaintiff plead that defaulting defendant against whom final judgment was sought was "seeking to avoid liability" by transferring out its assets); Lemache, 354 F. Supp. 3d at 154

("Courts in this Circuit have routinely declined to apply <u>Frow</u> in cases asserting joint and several liability, and proceeded to decide the default judgment motion while other parties are litigating.").

Abbott asserts that they will be prejudiced by a delay of final judgment against the H&H Defendants because there is a serious risk that those defendants will dissipate their assets prior to final judgment and collection.  Citing to declarations filed under seal, Abbott avers that the H&H Defendants' former counsel stated early in this litigation that his firm had taken steps to render the H&H Defendants judgment proof.  (<u>See</u> D.E. # 1619 at 26.)  Abbott further avers that during this litigation, the H&H Defendants "took additional steps to move to protect their assets from collection."  (<u>Id.</u>)  The non-defaulting defendants argue that they would be similarly prejudiced by granting the H&H Defendants more time to insulate themselves from collection.  The H&H Defendants have not responded to this allegation in their briefing on this damages-sequencing issue.  The Court finds this risk is credible and substantial.  Additionally, the Court takes notice of the ongoing global pandemic and the substantial delay in jury trials that it has caused. <u>See e.g.,</u> E.D.N.Y. Administrative Order 2020-26 (postponing all jury selection and trials until further notice).  Considering that criminal matters will likely be prioritized over civil matters when jury trials resume, the Court expects a substantial delay before a jury trial may be conducted for the non-defaulting defendants.

The H&H Defendants do, however, argue that a separate damages inquest prior to trial would be inefficient.  As an initial matter, the Court determines that any risk of judicial inefficiency is here outweighed by the risk of prejudice to the other parties.  <u>Int'l Gemmological Inst.</u>, 2005 WL 3880222, at *2.  Moreover, the H&H Defendants overstate the risk of inefficiency.  Their assertion that the proceedings at an inquest and trial would be entirely duplicative is unfounded.  Although there may be some overlap in the evidence presented during the different stages, the

facts and findings relevant to Abbott's damages claim against the H&H Defendants are unique to them.  And for those defendants that go to trial, the jury will be making findings unique to the damages liability of those defendants appearing before it, based on their conduct and arguments relating to defenses applicable to their circumstances but not others.  In contrast, delaying the inquest until after a jury trial would not reduce the scope of the inquest, because the H&H Defendants' liability for Lanham Act damages, aiding-and-abetting-fraud damages, reputational harm, and attorneys' fees are all specific to them.  Finally, the decision to hold the inquest first may well prove to be a more efficient use of judicial resources if it helps to facilitate a settlement that obviates trial: if Abbott is successful at inquest against the H&H Defendants in establishing damages, the non-defaulting defendants may use that figure as a guide in evaluating their own exposure; if Abbott is not successful in proving a significant quantum of damages, that will inform Abbott that it may fare better if it tempers its demands in its future negotiations with the non-defaulting defendants.[5]

The H&H Defendants were placed in default as a result of their serious fraud upon the Court.  Delaying the inquest and entry of final judgment could frustrate the Court's interest in vindicating its sanctions and prejudice the other parties to this litigation.  Weighing these prejudices against the countervailing factors, the Court determines that there is no just reason for delay, and that the damages inquest and entry of final judgment should precede the trial of the non-defaulting defendants.  Cf. Diarama Trading Co. Inc., 2002 WL 31545845, at *4 (holding that "Plaintiff fail[ed] to convince the Court that good cause exists for the Court to exercise its authority under Rule 54(b) to enter final judgment against [defaulting defendant]" because, inter alia,

---

[5] Finally, the Court declines the H&H Defendants' invitation to consolidate the inquest with the jury trial.  In addition to the reasons provided in text, the Court concludes that consolidation would introduce undue prejudice to the parties and tax the jury's focus in what is already a complex case.

"Plaintiff has made no showing of prejudice flowing from" a decision holding the motion for final judgment in abeyance pending resolution of the merits against answering defendants); United States v. First Funds LLC, No. 10 Civ. 6540(JGK)(MHD), 2012 WL 1415327, at *3 (S.D.N.Y. Apr. 20, 2012) (citing Int'l Gemmological for the proposition that "one argument for separate damage assessments ... is that a plaintiff should be able to pursue prompt enforcement of judgment against a defaulted defendant," although finding that inapplicable to the case before it "because there is no prospect of such an asset pursuit").

## CONCLUSION

For these reasons, the Court concludes that the damages inquest against the H&H Defendants shall be held before the trial of the non-defaulting defendants.

The parties are directed to file briefing and relevant documentary evidence regarding the proper calculation and amount of damages to be entered against the H&H Defendants, in accordance with the following schedule: Abbott shall file its papers by January 29, 2021; the H&H Defendants shall file any opposition by March 1, 2021; Abbot's reply, if any, shall be filed by March 15, 2020.  If, after reviewing the papers, the Court determines that argument or an evidentiary hearing is warranted, one may be scheduled at a later date.

SO ORDERED.

Dated: December 23, 2020
        Brooklyn, New York                    /s/ Carol Bagley Amon
                                               Carol Bagley Amon
                                               United States District Judge