**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

ABBOTT LABORATORIES, ABBOTT      :
DIABETES CARE INC., and ABBOTT      :
DIABETES CARE SALES CORPORATION,      :    15 Civ. 5826 (CBA) (LB)
     :
                Plaintiffs,      :    **SUBJECT TO PROTECTIVE ORDER**
     :
       -against-      :    **REDACTED**
     :
     :
ADELPHIA SUPPLY USA, et al.,      :
     :
                Defendants.      :
     :

---------------------------------------------------------------- x


**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF DEFAULT**
**JUDGMENT DAMAGES AGAINST THE H&H DEFENDANTS**

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT .............................................................................................2

I.     THE QUANTUM OF ABBOTT'S ACTUAL DAMAGES IS WELL
       ESTABLISHED AND NOT REASONABLY DISPUTED.................................2

       A.     The H&H Defendants Do Not Challenge Most Aspects of Abbott's
              Damages Calculations.................................................................2

       B.     The H&H Defendants' Eleventh-Hour Attempt to Manufacture a Dispute
              About the Number of Boxes It Sold Should Be Rejected Out of Hand.................3

       C.     The H&H Defendants' Attempt to Re-Argue that Their Infringement Did
              Not Displace Authentic Sales Fails as a Matter of Law .........................................5

              1.     The H&H Defendants Do Not Even Attempt to Dispute that
                     Displaced Sales Is a Proximate Cause Issue that Is Established by
                     the Pleadings .............................................................................6

              2.     The H&H Defendants Do Not Even Attempt to Dispute that This
                     Court's Rulings at Summary Judgment Dictate an Award of
                     Abbott's Claimed Damages ..........................................................6

              3.     Every Infringing Box Sold Through Insurance Literally Replaced
                     an Authentic Box on a One-for-One Basis at the Point of Sale.................7

              4.     The Record Evidence Confirms Abbott's Allegations that Each
                     Infringing Box Displaced an Authentic Box ................................8

              5.     The H&H Defendants' Newly Introduced Secondary Evidence Is
                     Irrelevant and Cannot Affect the Outcome of This Inquest.......................9

II.    AN AWARD OF TREBLED DAMAGES IS NECESSARY TO COMPENSATE
       ABBOTT AND DETER THE H&H DEFENDANTS ...................................................12

       A.     There Is No Dispute that Abbott's Calculations Significantly Understate
              Its Actual Damages .................................................................12

       B.     The Need for Deterrence Could Hardly Be Greater .............................................13

              1.     The H&H Defendants Remain Defiant and Unrepentant .........................13

12577892

### TABLE OF CONTENTS
### (CONTINUED)

**Page**

2.    The H&H Defendants Have Previously Conducted—and Been Sued for—the Exact Same Diversion Scheme ..............................................13

3.    The H&H Defendants Have Previously Conducted—and Been Sued for—the Exact Same Counterfeiting Scheme ...................................14

4.    The H&H Defendants' Actions Put Patients at Risk ................................15

5.    The H&H Defendants' Fraud on this Court Calls for Enhanced Damages...........................................................................................................16

C.    The Fact that the H&H Defendants Were the Biggest Seller of Infringing Products in the United States Is Not Exculpatory....................................16

III.    THE H&H DEFENDANTS' "FACT SETTING" IS ALMOST ENTIRELY IRRELEVANT ..............................................................................................17

IV.    THE H&H DEFENDANTS ARE NOT ENTITLED TO ANY SETOFFS ......................19

V.    THE H&H DEFENDANTS OFFER NO OPPOSITION TO ATTORNEYS' FEES AND COSTS .........................................................................................20

VI.    THE H&H DEFENDANTS OFFER NO OPPOSITION TO PREJUDGMENT INTEREST....................................................................................................21

VII.    THERE IS NO NEED FOR AN EVIDENTIARY HEARING .......................................22

CONCLUSION..............................................................................................................23

ii

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abbott Labs. v. H&H Wholesale Servs. Inc.*,
   No. 17-cv-3095, D.E. # 77 (E.D.N.Y. Nov. 30, 2017) ...........................................................15

*Action S.A. v. Marc Rich & Co.*,
   951 F.2d 504 (2d Cir. 1991)................................................................................................22, 23

*Allstate Ins. Co. v. Yehudian*,
   2018 WL 1767873 (E.D.N.Y. Feb. 15, 2018), *adopted*, 2018 WL 1686106
   (E.D.N.Y. Mar. 31, 2018) .......................................................................................................19

*Argonaut Ins. Co. v. Manetta Enters.*,
   2021 U.S. Dist. LEXIS 10056 (E.D.N.Y. Jan. 19, 2021) .......................................................21

*Barkley v. United Homes*,
   848 F. Supp. 2d 248 (E.D.N.Y. 2012) ....................................................................................20

*Broadcast Music, Inc. v. My Image Studios LLC*,
   2020 U.S. Dist. LEXIS 78476 (S.D.N.Y. May 4, 2020)..........................................................21

*Chloe v. Queen Bee of Beverly Hills*,
   2009 U.S. Dist. LEXIS 84133 (S.D.N.Y. July 16, 2009) ........................................................20

*Colon v. City of New York*,
   2012 U.S. Dist. LEXIS 28197 (E.D.N.Y, Feb. 9, 2012), *adopted*, 2012 U.S.
   Dist. LEXIS 28198 (E.D.N.Y. Feb. 28, 2012)...................................................................19, 20

*Dyson, Inc. v. SharkNinja Operating LLC*,
   2019 U.S. Dist. LEXIS 56028 (N.D. Ill. Mar. 31, 2019)........................................................21

*Furminator, Inc. v. Kim Laube & Co.*,
   2011 U.S. Dist. LEXIS 33446 (E.D. Mo. Mar. 30, 2011) ......................................................16

*Fustok v. Conticommodity Servs., Inc.*,
   873 F.2d 38 (2d Cir. 1989)......................................................................................................22

*Getty Petroleum Corp. v. Island Transp. Corp.*,
   862 F.2d 10 (2d Cir. 1988).......................................................................................................20

*Giannullo v. City of New York*,
   322 F.3d 139 (2d Cir. 2003).......................................................................................................5

*Gov't Employees Ins. Co. v. Sanni-Thomas*,
   2015 U.S. Dist. LEXIS 135117 (E.D.N.Y. Sept. 4, 2015).......................................................19

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*James v. Frame*,
  6 F.3d 307 (5th Cir. 1993) ..........................................................................22

*Johnson & Johnson v. South Pointe Wholesale, Inc.*,
  No. 1:08-cv-1297 (E.D.N.Y. Mar. 31, 2008)...............................................14

*Landstar Sys. v. Am. Landstar Logistics Corp.*,
  2019 U.S. Dist. LEXIS 41043 (E.D.N.Y. Mar. 13, 2019).............................21

*Lelchook v. Islamic Republic of Iran*,
  2020 U.S. Dist. LEXIS 221606 (E.D.N.Y. Nov. 23, 2020)...........................19

*Merck Eprova AG v. Brookstone Pharm., LLC*,
  920 F. Supp. 2d 404 (S.D.N.Y. 2013).............................................13, 16

*Merck Eprova AG v. Gnosis S.p.A.*,
  760 F.3d 247 (2d Cir. 2014)...........................................................13, 16

*Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*,
  880 F. Supp. 1005 (S.D.N.Y. 1994).......................................................13

*Montefiore Med. Ctr. v. Local 272 Welfare Fund*,
  2019 U.S. Dist. LEXIS 13385 (S.D.N.Y. Jan. 25, 2019), *adopted*, 2019 U.S.
  Dist. LEXIS 22743, at *3-4 (S.D.N.Y. Feb. 12, 2019).........................21

*United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Env't'l Universal Servs.*,
  2014 U.S. Dist. 97351 (S.D.N.Y. July 15, 2014), *adopted*, 2014 U.S. Dist.
  LEXIS 123173 (S.D.N.Y. Sept. 2, 2014).............................................17

*RLI Ins. Co. v. King Sha Grp., Inc.*,
  598 F. Supp. 2d 438 (S.D.N.Y. 2009).................................................20

*State Farm Mut. Auto. Ins. Co. v. Grafman*,
  968 F. Supp. 2d 480 (E.D.N.Y. 2013) ..............................................19

*Tax Services of America v. Mitchell*,
  2009 U.S. Dist. LEXIS 16814 (D. Colo. Jan. 13, 2009), *adopted in part*, 2009
  U.S. Dist. LEXIS 14196 (D. Colo. Feb. 24, 2009) ............................22

*Two Plus Two Publ'g, LLC v. Jacknames.com*,
  572 F. App'x 466 (9th Cir. 2014) .....................................................21

## TABLE OF AUTHORITIES
### (CONTINUED)

**Page(s)**

**Statutes**

15 U.S.C. § 1117 ...................................................................................................12, 16, 23

21 U.S.C. § 331 .................................................................................................................16

21 U.S.C. § 333 .................................................................................................................16

21 U.S.C. § 352 .................................................................................................................16

**Other Authorities**

Brian O'Donnell, Eric Rollins, James Mathews, *Competitive Bidding Reduced
    Medicare Spending On Diabetes Testing Supplies Without Negatively
    Affecting Beneficiary Outcomes* (April 8, 2020),
    https://www.healthaffairs.org/do/10.1377/hblog20200326.122054/full/ ...............10

Fed. R. Civ. P. 54 .......................................................................................................21, 23

Fed. R. Civ. P. 56 ...............................................................................................................5

12577892

Plaintiffs Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales Corp. (collectively, "Abbott") respectfully submit this reply brief in further support of its claimed damages against H&H Wholesale Services, Inc. ("H&H"), Howard Goldman, and Lori Goldman (collectively, the "H&H Defendants").

## PRELIMINARY STATEMENT

The H&H Defendants' opposition fails to join issue with the evidence or the precedent supporting Abbott's damages claim. Their overall approach is to ignore (without disputing) the applicable legal standards, offer no response to Abbott's dispositive arguments, and attempt to redirect the conversation to newly minted factual assertions or irrelevant sideshows. However, the law and record evidence that are determinative of this damages inquest are straightforward. The Court should simply decline the H&H Defendants' invitation to wade into the morass of unsupported factual assertions and irrelevant arguments.

The Court already held at summary judgment that a reasonable jury could find Abbott's claimed damages to be correct and fully supported by the record evidence. And the Court has already found the H&H Defendants to be willful, repeat infringers on a massive scale who engaged in an equally massive campaign of perjury, litigation misconduct, and fraud on this Court to subvert the judicial process. All reasonable inferences must now be drawn in Abbott's favor. The Court should award Abbott its claimed actual damages; treble those damages for manifest compensatory and deterrence purposes; and award Abbott prejudgment interest and find Abbott entitled to attorneys' fees and costs (neither of which the H&H Defendants oppose).

12577892

## ARGUMENT

## I.   THE QUANTUM OF ABBOTT'S ACTUAL DAMAGES IS WELL ESTABLISHED AND NOT REASONABLY DISPUTED

The H&H Defendants do not dispute the plaintiff-friendly legal standards that apply to this damages inquest, as set forth in Abbott's opening brief.  *See* H&H Opp'n Br. at 7, 9-10, 14, 30, 41.  Putting aside their quibbles about causes of action that do not affect Abbott's damages (*see infra* 17-18), the H&H Defendants do not dispute that Abbott's pleadings establish as a matter of law: (1) their liability; (2) the fact that Abbott was damaged; and (3) proximate causation.  *See* Abbott Br. at 8-10, 21.  Thus, the only question before the Court is the quantum of damages.

The H&H Defendants also do not dispute that all reasonable inferences must be drawn in Abbott's favor.  But rather than grappling with this legal standard, the H&H Defendants ignore it.  They do so because it is fatal to all of their arguments about the quantum of damages.  At best, the H&H Defendants make various arguments that there are "material disputes of fact," and that the factual record "may" or "might" or "could" be interpreted a certain way that favors the H&H Defendants instead of Abbott.  *See, e.g.*, H&H Opp'n Br. at 14, 32, 35.  Those arguments are entitled to no weight at a damages inquest.  A defaulted defendant's argument that the evidence can be interpreted in favor of either party is tantamount to an admission that the plaintiff has met its burden of proof.  For the reasons stated below, Abbott has met its burden of establishing the H&H Defendants have caused Abbott ███████ in actual damages.

### A.   The H&H Defendants Do Not Challenge Most Aspects of Abbott's Damages Calculations

Abbott laid out its damages calculations as calculated by Dr. Bell in his report, and the evidence upon which Abbott and Dr. Bell rely, in detail in its opening brief.  *See* Abbott Br. at 10-20.  In their opposition, the H&H Defendants limit their challenge of Abbott's damages to

2

two specific points: (1) the number of infringing boxes they sold, and (2) the fact that each infringing sale caused Abbott to suffer lost revenue.  Neither argument withstands even modest scrutiny.[1]

## B.    The H&H Defendants' Eleventh-Hour Attempt to Manufacture a Dispute About the Number of Boxes It Sold Should Be Rejected Out of Hand

Dr. Bell relied on the H&H Defendants' purchase data rather than their sales data because the Defendants, including the H&H Defendants, did not produce "sufficient information to trace [sales] through the supply chain to the end customer."  Ex. P543 (Bell Supp. Report ¶ 23).[2]  But while their sales records lacked basic information, H&H's purchase records often provided more information to use in the damages calculations—for example, the boxes' country of origin.  *Id.*; *see also* Ex. P542 (Bell Report) at ¶ 27.  Thus, the H&H Defendants' records of their purchases of infringing goods are at least as accurate, if not more accurate, a baseline for Abbott's damages as the H&H Defendants' sales records.  With all reasonable inferences drawn in Abbott's favor, that alone is sufficient for the Court to reject the H&H Defendants' challenge to the number of infringing boxes at issue.

Moreover, the distinction the H&H Defendants draw is irrelevant.  The parties have already fully hashed out the issue of reliance on the H&H Defendants' purchases versus their sales of infringing products.  Prior to summary judgment, the H&H Defendants claimed that they never sold a small number of the infringing FreeStyle strips they purchased.  Their damages

---

[1] The H&H Defendants do not challenge that when an infringing box in fact displaced the sale of an authentic box, Dr. Bell accurately calculates Abbott's actual damages.  And they do not challenge the fact that Dr. Bell's calculations make a number of conservative assumptions that significantly understate Abbott's damages—in every case, assuming facts that minimize the amount of Abbott's losses.  *See* Abbott Br. at 15-16.

[2] As Dr. Bell explains in his report, "Abbott's economic loss is tied to sales that it did not make (but should have made) at the wholesale level."  Ex. P543 (Bell Supp. Report) ¶ 23.

expert, Dr. David, listed in his opening report every infringing box that the H&H Defendants claimed they had purchased but not sold.  *See* H&H Defs.'s Ex. C (David Report) App'x 3 at A3-2, A3-4.  Dr. Bell fully credited the H&H Defendants' contention.  In his supplemental report, Dr. Bell removed from his damages calculations all infringing boxes that the H&H Defendants claimed to have purchased but never sold.  *See* Ex. P543 (Bell Supp. Report).  ¶ 31(a); Abbott Br. at 15-17.  Dr. David at deposition was unable to identify any purported issues that Dr. Bell had failed to correct.  *See* Ex. P529 (David Dep.) 157:2-161:10.

Those updated damages calculations—the ones that remove the boxes the H&H Defendants claim to have never sold—are the ones Abbott relied upon at summary judgment and in this damages inquest.  In sum, the H&H Defendants already identified every purchase that did not lead to a sale, and Abbott already fully credited the H&H Defendants' claims in its damages calculations.  The H&H Defendants now claim, for the first time, that there are additional boxes that were not sold.  That claim should be rejected out of hand.

In their brief, the H&H Defendants do not even acknowledge that they previously identified all purportedly unsold infringing boxes, or that Abbott removed those boxes from its damages calculation.  They make no attempt to explain how or why these "new" unsold boxes were purchased but never resold, or where those boxes are now, or how they are different from (or overlapping with) the unsold boxes they previously identified.  Instead, they proceed entirely on attorney say-so, claiming in their brief that "Ex. P113 in its native format … shows that ██████ ████████████████████████████████████████████████."  H&H Opp'n Br. at 7.  The H&H Defendants do not submit the native file into evidence or give *any* explanation,

4

through expert testimony, attorney affidavit, or otherwise, how they arrived at this brand-new figure.[3]

Finally, Abbott's calculation of the number of infringing boxes sold by H&H was put to the test at summary judgment. Abbott's statement of undisputed material facts stated that the H&H Defendants "purchased, and then sold within the United States, at least ██████ ██████████████████████ boxes of international FreeStyle test strips." D.E. # 1457-1 ¶ 216. In response, the H&H Defendants disputed **only** the attribution of those sales to Howard and Lori Goldman—they did **not** dispute the quantities of boxes that H&H sold. D.E. # 1457-1 ¶ 216. That constitutes a binding admission concerning the total number of infringing international FreeStyle boxes sold: ████████████████████████ ████. *See* Fed. R. Civ. P. 56(g); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

For all of the reasons stated above, the Court should reject the H&H Defendants' attempts to argue they sold fewer infringing boxes than identified in Dr. Bell's supplemental report.

## C. The H&H Defendants' Attempt to Re-Argue that Their Infringement Did Not Displace Authentic Sales Fails as a Matter of Law

The H&H Defendants continue to speculate that a small number of boxes might have been sold for cash at a discount, and that it is possible that some patients who purchased for cash

---

[3] Moreover, the H&H Defendants also mischaracterize the document upon which they rely: Ex. P113 is an H&H-produced document that bears the native file title: "Sales 2012-2015." *See* Declaration of Timothy A. Waters, Inquest Ex. P612. As the title indicates, and the contents confirm, Ex. P113 only identifies the H&H Defendants' sales of international FreeStyle strips from 2012 to 2015. The H&H Defendants omit reference to the other native file they produced in discovery, "Sales 2009-2012," which reflects all of the sales the H&H Defendants made between 2009 and 2011 (the reference to 2012 in the native file appears to be a typo). In other words, the H&H Defendants claim that Abbott has overcounted its sales, but then ignores their own documentary evidence from three of the six relevant years.

5

at a discount would have purchased another brand but for the H&H Defendants' infringement. That argument fails as a matter of law for several reasons.

> **1.    The H&H Defendants Do Not Even Attempt to Dispute that Displaced Sales Is a Proximate Cause Issue that Is Established by the Pleadings**

In its opening brief, Abbott explained that the Court should not reach the issue of displaced sales, because at an inquest the proximate causation of damages, as opposed to the quantum of damages, is established by the pleadings as a matter of law. Abbott Br. at 21-22. The question of whether patients would have purchased authentic FreeStyle strips "but for" the H&H Defendants' infringement is a quintessential question of proximate causation of damages. *Id.* at 20-22. And the issue of proximate cause is closed as a result of the H&H Defendants default sanction.

The H&H Defendants do not dispute that the "displaced sales" issue is a proximate causation question. They do not dispute that at an inquest, issues of proximate causation must be resolved on the pleadings. And they do not dispute that Abbott's pleadings allege that each infringing box sold caused Abbott to lose a sale of an authentic box. *See* D.E. # 307 (Second Am. Compl.) ¶¶ 382-383, 387-388, 391-392. Because they cannot contest the pleadings due to their default, the issue of proximate cause is resolved in Abbott's favor, and the Court should find that Abbott's pleadings establish one-for-one displacement of sales as a matter of law, and end the inquiry there.

> **2.    The H&H Defendants Do Not Even Attempt to Dispute that This Court's Rulings at Summary Judgment Dictate an Award of Abbott's Claimed Damages**

As Abbott noted in its opening brief, this Court's rulings at summary judgment, based on the same damages-related evidence presented at this inquest, dictate that Abbott has met its relatively low burden at inquest. Abbott Br. at 22-29. Briefly summarized, this Court

determined that "it remains for a jury to decide whether Abbott has proven with 'reasonable probability' that defendants' sales of international strips caused damages to Abbott by displacing sales of domestic strips," and that "**the record allows a reasonable jury to find in favor of Abbott**." D.E. # 1563 at 110-113 (emphasis added).   Because, after a default judgment, all reasonable inferences concerning that evidence ***must*** be drawn in Abbott's favor at the subsequent damages inquest, Abbott has as a matter of law met its burden of proving "some reasonable basis" for finding a "reasonable probability" that every one of the H&H Defendants' sales of international FreeStyle strips displaced an authentic sale of U.S. retail strips by Abbott.

The H&H Defendants stick their heads in the sand, arguing that there are "clear and obvious disputes of material facts" about damages (H&H Opp'n Br. at 14), or, at best, claiming that in light of the evidence, certain hypothetical scenarios are "more likely" than others (*id.* at 41).  The H&H Defendants sacrificed their ability to make such arguments to a factfinder when they committed fraud on this Court and were held in default.  At inquest, those arguments fail as a matter of law.

### 3.   Every Infringing Box Sold Through Insurance Literally Replaced an Authentic Box on a One-for-One Basis at the Point of Sale

At various points in its opposition papers, the H&H Defendants assert that, but for their infringement, even patients who purchased the infringing strips through insurance might have chosen to purchase a different brand.  *See* H&H Opp'n Br. at 32-35.  The undisputed record debunks that baseless speculation.  As Abbott has repeatedly proven, and no defendant has ever contested, the *only* way an infringing international FreeStyle box can be sold through insurance is by misrepresenting it to be an authentic domestic Abbott box.  That means *every* consumer who purchased an infringing box through insurance paid the *exact same* co-pays, deductibles, etc. as if she were purchasing an authentic box.  The transaction was rung up as though she were

7

12577892

purchasing an authentic box, and her insurer was told she was being dispensed an authentic box. Abbott Br. at 23-24.  Every insured sale involved the literal, one-for-one replacement of an infringing box for an authentic box, and the H&H Defendants offer no evidence to the contrary. *Id.*

### 4. The Record Evidence Confirms Abbott's Allegations that Each Infringing Box Displaced an Authentic Box

The H&H Defendants attempt to manufacture a factual dispute by identifying ███ ███ international FreeStyle strips that they sold to online distributors, one of whom they claim "sells strips online at a lower price and markets itself to cash-buyers."  H&H Opp'n Br. at 36.  Consistent with the H&H Defendants' approach throughout this inquest, there is not a shred of evidence in the record or cited in the H&H Defendants' papers to support that claim.

Moreover, that figure represents ███████████ total infringing boxes sold. And even assuming *arguendo* that these were online retailers, the evidence in this case shows that strips sold by online retailers are not purchased by patients—they are almost exclusively bought up by large wholesalers who then resell to retail pharmacies.  *See, e.g.*, ███████.

The H&H Defendants then go on to discuss "lower priced alternatives."  H&H Opp'n Br. at 10, 31-36.  Abbott addressed the failings of this argument in its opening papers.  This argument fails at the threshold because the international FreeStyle strips the H&H Defendants trafficked were all sold to patients through insurance, making the issue of price sensitivity irrelevant.  Abbott Br. at 24-27.  And even if one of the infringing boxes the H&H Defendants sold ended up in the hands of a cash-paying patient, that patient would have otherwise purchased an authentic box of U.S. FreeStyle strips.  *See id.* at 27-29.  In making their opposing argument, the H&H Defendants claim there is a "***possibility*** that insured patients ***might*** purchase the lower price diverted box through cash rather than using their insurance."  H&H Opp'n Br. at 32

8

(emphasis added). Or that "the deductible or copayment *might* cause them to make that decision …." *Id.* (emphasis added). Or that "[*i*]*f* the pharmacies offer the diverted box at a less expensive price, they are *likely* doing so because there are a group of consumers who are looking for less expensive strips and the diverted box is an option." *Id.* at 34; *see also id.* at 35 ("it is also *fair to believe* that the consumer exercised that option for lower priced diverted boxes" (emphasis added)); *id.* ("some consumers with insurance *may* still pay out of pocket" (emphasis added)). None of this is evidence: it is merely unfounded speculation. And such speculation is entitled to no weight here, especially from parties who have defaulted as a sanction for their fraud on the Court. All the Court must decide here is whether Abbott, with all reasonable inferences taken in its favor, has established a "reasonable basis," with "some speculation permissible," for the Court to find there was a "reasonable probability" that the infringing sales displaced an authentic sale. *See* Abbott Br. at 6-7. Abbott has satisfied that standard.

### 5. The H&H Defendants' Newly Introduced Secondary Evidence Is Irrelevant and Cannot Affect the Outcome of This Inquest

The H&H Defendants' sudden reliance on secondary literature is misplaced. The secondary sources cited in their brief were not introduced at summary judgment or any earlier aspect of this litigation, were never considered by any party's expert, and have no connection to this case. At the inquest stage, the H&H Defendants cannot overcome the actual evidentiary record by citing to a handful of blog posts and articles about the insurance market in general.

First, the H&H Defendants assert that because the "uninsured rate in the U.S. ranged between 9 percent and 13 percent … [d]uring the damages period," the "percentage of consumer purchasing international product in the U.S. without insurance could be much higher" than the zero to five percent identified by Abbott. H&H Opp'n Br. at 35-36. But Abbott's undisputed evidence is that no more than 5% of FreeStyle strips were purchased without insurance

9

throughout the damages period.  *See* Abbott Br. at 25-26.  Especially at an inquest with all inferences drawn in Abbott's favor, the H&H Defendants cannot displace Abbott's direct evidence of how consumers pay for FreeStyle strips with vague national statistics about insurance rates generally.

Next, the H&H Defendants attempt to muddy the waters by injecting a brand-new issue: competitive bidding.  Citing to blog posts, they argue that changes in Medicare reimbursement in 2011 led to changes in the marketplace that might lead to greater price sensitivity in patients. *See* H&H Opp'n Br. at 37-41.  They fail, however, to offer any evidence that a single consumer of an H&H-trafficked box was motivated or affected by competitive bidding, let alone that that consumer would have purchased something other than an authentic box of U.S. retail FreeStyle strips in the absence of international strips.  Indeed, the H&H Defendants do not proffer a single admissible fact or expert opinion to support this sideshow.

Moreover, like other major test-strip manufacturers, Abbott has a separate product targeted at Medicare patients: Not For Retail Sale, or NFRS, FreeStyle test strips.  NFRS strips are packaged and distributed differently from the retail FreeStyle test strips at issue in this litigation, and have a different NDC number.  D.E. # 106 (Nelson Decl.) ¶¶ 7-9.  Indeed, the blog post makes clear that "[r]etail test strips were ***not*** directly included in competitive bidding," and that it was not until July 2013—nearly four years after the damages period started—that Congress ordered the Centers for Medicare and Medicaid Services ("CMS") to align "the payment rate for test strips acquired in a retail setting [and those received by] mail-order."[4]  In fact, insurance claims for retail test strips (the type at issue in this action) went *unaffected* by

---

[4] *See* Brian O'Donnell, Eric Rollins, James Mathews, *Competitive Bidding Reduced Medicare Spending On Diabetes Testing Supplies Without Negatively Affecting Beneficiary Outcomes*, healthaffairs.org (April 8, 2020), https://www.healthaffairs.org/do/10.1377/hblog20200326.122054/full/ (emphasis added).

Medicare-related competitive bidding.  This is actually reflected in the chart the H&H Defendants include as Figure 4 in their brief.  *See* H&H Opp'n Br. at 39.

Finally, the H&H Defendants cite in passing an article that says in a footnote, without substantiation, that "copays [are] generally rising," and so "some patients are seeking lower-cost alternatives or testing less frequently."  *See* H&H Opp'n Br. at 40.  Even taken at face value, that supports Abbott's position, not the H&H Defendants'.  If patients were "seeking lower-cost alternatives," they would have sought any of the numerous FDA-approved test strips that sell far below the price range of the infringing FreeStyle test strips.  *See* H&H Defs.' Ex. C (David Report) at 6-8.  In their brief, █████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████ H&H Opp'n Br. at 33.  There is no reason to believe, and certainly no evidence in the record to support, that any insured patient's co-pay was so high that they could realize a cost savings by foregoing insurance and paying ████████████████ in cash for a box of infringing international FreeStyle strips.  The only evidence in the record is that international FreeStyle was intermingled with authentic product in pharmacies' stock and sold like authentic U.S. retail FreeStyle test strips.  Abbott Br. at 25-27.  This is how the entire scheme works, and why the H&H Defendants engaged in the infringing conduct they did with international FreeStyle strips, and why Abbott was forced to file this lawsuit to stop that conduct.

Once again, the weight of the evidence is strongly in Abbott's favor that there were no sales of the infringing international FreeStyle strips made at a cash discount, and that even if there were, those patients would have purchased the authentic product but for the presence of the infringing product distributed by the H&H Defendants.  Abbott Br. at 24-29.  But this is not a

11

trial, and the Court's role at an inquest is not to weigh each side's evidence to see who tips the scale.  All reasonable inferences must be drawn in Abbott's favor.  Under that standard, the secondary literature cited by the H&H Defendants at best supports Abbott's position—or, at worst, is irrelevant to these proceedings.  The Court should find that Abbott has more than met its burden of proof and that Abbott's actual damages are ███████.

## II.   AN AWARD OF TREBLED DAMAGES IS NECESSARY TO COMPENSATE ABBOTT AND DETER THE H&H DEFENDANTS

The H&H Defendants do not contest that they have twice been found to have willfully engaged in misconduct—once at summary judgment, and again as a result of their default—or that the Court may therefore issue an award of up to treble Abbott's actual damages pursuant to 15 U.S.C. § 1117(a).  *See* Abbott Br. at 29-34.  So they are left to argue that enhanced damages are unnecessary because Abbott's actual damages are sufficient.  Those arguments do not survive even a cursory look at the undisputed evidentiary record.

### A.   There Is No Dispute that Abbott's Calculations Significantly Understate Its Actual Damages

The H&H Defendants do not challenge the fact that Abbott's damages calculations seriously understate Abbott's actual lost revenues—or that they are understated in large part because the H&H Defendants failed to produce sufficient business records.  Abbott Br. at 15-16; *see* Exs. P542 (Bell Report) ¶¶ 24-25, 27-28; P543 (Bell Supp. Report) ¶¶ 21, 24.

The H&H Defendants' attempt to deny that Abbott has suffered damage to its goodwill fares no better.  At an inquest, the fact that the H&H Defendants' infringement has damaged Abbott's goodwill is established as a matter of law by the pleadings.  *See* D.E. # 307 (Second Am. Compl.) ¶¶ 15, 351, 567-569.  The law does not require Abbott to submit an expert report with "complex financial calculations" in order for the Court to compensate Abbott for its lost goodwill through enhanced damages.  *See* H&H Opp'n Br. at 25-27.   Part of the purpose of

12

enhanced damages is to compensate Abbott for losses where proving the amount of the loss is difficult or impossible, as is notoriously the case with lost goodwill.  *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 263 (2d Cir. 2014).  Indeed, perhaps the most often-cited purpose of awarding enhanced damages under the Lanham Act is to compensate plaintiffs for their lost goodwill, because goodwill is undeniably valuable but the loss is not typically quantifiable by plaintiffs.  *See, e.g.*, *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1025 (S.D.N.Y. 1994) (enhanced damages were necessary "to compensate the plaintiff for harm that is difficult to quantify, namely the loss of its goodwill"); *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) (enhanced damages award appropriate to compensate plaintiff for loss of goodwill).  The same is true with regard to the intangible gains the H&H Defendants received as ███████████████████ ██████████████████  *See* H&H Opp'n Br. at 25-26.

## B.     The Need for Deterrence Could Hardly Be Greater

### 1.     The H&H Defendants Remain Defiant and Unrepentant

The H&H Defendants are "unrepentant, recidivist infringers" (Abbott Br. at 3, 29), and their opposition fails to rebut that description.  Their submission contains not even a perfunctory show of contrition.  Instead, the H&H Defendants use their opposition to continue to repeatedly complain that the Court should not have sanctioned Ms. Goldman for her fraud on this Court, and should be moved by their charitable efforts.  *See* H&H Opp'n Br. at 16, 43-44.

### 2.     The H&H Defendants Have Previously Conducted—and Been Sued for—the Exact Same Diversion Scheme

The Court should not ignore that the H&H Defendants ran the *exact same* scheme before in the *exact same* manner.  Johnson and Johnson ("J&J"), another major test-strip manufacturer, sued them for unlawfully selling diverted international boxes of J&J's test strips, resulting in a

13

multi-million-dollar settlement of those claims, as well as a permanent injunction prohibiting them from selling international J&J strips.  *See* D.E. # 1563 at 55; D.E. # 307 (Second Am. Compl.) ¶¶ 552-556; D.E. # 4-6 (*Johnson & Johnson v. Southpointe Wholesale, Inc.*, No. 08 Civ. 1297 (SLT) (SMG), Consent Judgment and Permanent Injunction (E.D.N.Y. Nov. 25, 2014)). After being subject to that injunction, the H&H Defendants simply turned to selling hundreds of thousands of unlawfully diverted international versions of *Abbott's* test strips.



Having just concluded a gray-goods Lanham Act lawsuit from a test-strip manufacturer, it is clear that the H&H Defendants were not deterred at all at the threat of being ordered to compensate Abbott for its actual damages in another such a lawsuit.

### 3.    The H&H Defendants Have Previously Conducted—and Been Sued for—the Exact Same Counterfeiting Scheme

The sale of international boxes of test strips was not the only scheme the H&H Defendants repeated here.  J&J also previously sued them for selling international boxes of J&J test strips that had been removed from their international packaging and sold in counterfeit U.S. packaging. *See Johnson & Johnson v. South Pointe Wholesale, Inc.*, No. 1:08-cv-1297 (E.D.N.Y. Mar. 31, 2008); *see also* D.E. # 4-3.  The H&H Defendants purchased those counterfeit repackaged J&J test strips from a company in the Netherlands.  D.E. # 4-4 at 41.  The

14

H&H Defendants settled those claims with J&J as well, and received a permanent injunction

prohibiting their sale of counterfeit J&J strips.  D.E. # 4-6.  As the Court is well aware, during

the pendency of this litigation, the H&H Defendants started importing from the Netherlands

large quantities of international boxes of *Abbott's* FreeStyle test strips that had been removed

from their international packaging and repackaged into counterfeit U.S. packaging.

In their opposition brief, the H&H Defendants cry foul, claiming that their counterfeiting

has nothing to do with this litigation.  H&H Opp'n Br. at 5-6.  Not so.  The H&H Defendants

began importing the counterfeits during the course of this litigation—*after* this Court enjoined

them from selling international FreeStyle strips in the United States.[5]  The H&H Defendants

grossly violated that injunction by importing international FreeStyle strips in counterfeit U.S.

packaging.  And as this Court has already found, the H&H Defendants committed massive

discovery fraud and perjury in *this* action to conceal their ongoing counterfeiting, as well as to

hide evidence pertinent to their unlawful diversion of non-counterfeit product.  D.E. # 1613 at

11-19.

### 4.   The H&H Defendants' Actions Put Patients at Risk

There is no disputing that the H&H Defendants' willful infringement put patients at risk.

FreeStyle test strips are life-saving medical devices.  As this Court has already found,

international FreeStyle strips are sold with instructions for use that have been specifically

rejected by the FDA.  *See* D.E. # 1563 at 7.  The seriousness of this violation is reflected in the

criminal law, which defines medical devices with incorrect instructions for use to be

---

[5] This is not "alleged" counterfeiting—the H&H Defendants have admitted they sold tens of thousands of counterfeit boxes of FreeStyle strips, and stipulated to that fact on the record.  *See* Ex. P111 (*Abbott Labs. v. H&H Wholesale Servs. Inc.*, No. 17-cv-3095, D.E. # 77 (E.D.N.Y. Nov. 30, 2017)).

"misbranded devices," the sale of which is one of an exceedingly small number of strict-liability

federal crimes.  21 U.S.C. §§ 331, 333, 352.

> **5.     The H&H Defendants' Fraud on this Court Calls for Enhanced Damages**

The H&H Defendants' long-running string of litigation misconduct and fraud on this

Court is yet another reason to impose treble damages.  *See* Abbott Br. at 30, 33-34; *see also*

*Brookstone Pharms. LLC,* 920 F. Supp. 2d at 421, 430 (awarding trebled damages in part

because of defendants' "egregious" willful litigation conduct); *cf. Furminator, Inc. v. Kim Laube*

*& Co.*, 2011 U.S. Dist. LEXIS 33446, at *17-18 (E.D. Mo. Mar. 30, 2011) (awarding enhanced

damages against patent infringer "considering the seriousness of [his] fraudulent actions" during

the litigation).

The H&H Defendants' only opposition on this point is a bizarre, long discussion of the

disgorgement damages that were awarded in the twin *Merck* decisions: *Merck v. Gnosis* and

*Merck v. Brookstone.*   H&H Opp'n Br. at 25-26.  Abbott has elected to pursue its actual

damages, not disgorgement of the H&H Defendants' profits, under 15 U.S.C. § 1117(a).  The

disgorgement issues in the *Merck* cases are completely inapposite.  The *Merck* court's finding

that perjury and discovery fraud warrant an award of treble damages is, on the other hand,

directly on point.  Abbott Br. at 32-34

> **C.     The Fact that the H&H Defendants Were the Biggest Seller of Infringing Products in the United States Is Not Exculpatory**

Finally, the H&H Defendants argue that the Court should not award any enhanced

damages because Abbott's actual damages are substantial.  To state the obvious: Abbott's

damages are substantial because the H&H Defendants intentionally infringed Abbott's

trademarks on a massive scale, which caused Abbott substantial financial injury.  That hardly

warrants foregoing imposing enhanced damages.  Large-scale infringement resulting in large-

16

scale injury is not a defense.  The argument finds no support in the caselaw or the Lanham Act, and the Court should reject it out of hand.

## III.    THE H&H DEFENDANTS' "FACT SETTING" IS ALMOST ENTIRELY IRRELEVANT

The H&H Defendants spend over half of their brief discussing issues that have no effect on this inquest, referring to their arguments as "fact-setting."  Because those issues are ultimately irrelevant, Abbott responds only briefly here.

First, Abbott was explicit that it is seeking no additional damages for its fraud claims, and so the Court can simply ignore the H&H Defendants' tortured discussion of those claims. Abbott Br. at 10, 34, 35 n.8; H&H Opp'n Br. at 2-5, 9-10, 17-18.   But to set the record straight: It is undisputed that as a result of their default, H&H and Howard Goldman are liable for aiding and abetting fraud.  It is also undisputed that the remaining fraud claims against the H&H Defendants were dismissed at summary judgment because Abbott did not submit sufficient evidence supporting those claims as pled.  But as the H&H Defendant's own cited caselaw shows, it is the allegations of the complaint that establish the liability of a defaulted party, not the sufficiency of later-introduced evidence.  *See* H&H Opp'n Br. at 17-18 (citing *United States ex rel. Nat'l Dev. & Constr. Corp. v. U.S. Envt'l Universal Servs.*, 2014 U.S. Dist. 97351, at *10 (S.D.N.Y. July 15, 2014), *adopted*, 2014 U.S. Dist. LEXIS 123173 (S.D.N.Y. Sept. 2, 2014)). The Court has already found Abbott to have pled valid fraud, fraud in the inducement, and aiding-and-abetting fraud claims against each one of the three H&H Defendants, and so all three H&H Defendants are liable for all three of those claims on default.  But, again, this is largely an academic issue because Abbott does not seek punitive damages or additional actual damages on its fraud claims at this inquest.

17

Second, the H&H Defendants bizarrely argue that Abbott is slandering them by stating they are liable under Abbott's unlawful importation claim. *See* H&H Opp'n Br. at 3. The H&H Defendants did, in fact, import infringing FreeStyle strips. *See* Ex. P112; *see also* Exs. P155 (H. Goldman Decl.) ¶ 10; P137 (Gulas Dep.) 79:2-79:20; P159. The Court has already found Abbott's complaint stated a claim for unlawful importation, but Abbott has repeatedly stated that it is not seeking additional damages for that unlawful importation claim. Abbott Br. at 9 & n.4. And so once again, the H&H Defendants are liable for unlawful importation as a result of their default, but the question is academic at this inquest because it does not affect Abbott's damages award.

Third, the H&H Defendants claim Abbott falsely stated in their papers that H&H sold



*See* Abbott Br. at 26. This is undisputed. Moreover, the fact that the H&H Defendants █████████ ███████████████████████ has no effect on the damages to which Abbott is entitled at this inquest. The H&H Defendants do not claim otherwise.

Fourth, the H&H Defendants engage in frivolous wordplay in twice accusing Dr. Bell of not having attempted to calculate Abbott's damages, because Dr. Bell's report at one point says he is calculating Abbott's losses from "unlawful diversion," which the H&H Defendants insist is not the name of an actionable tort. H&H Opp'n Br. at 7, 30. Dr. Bell's report goes on to describe in detail that he is analyzing Abbott's losses from the sale of the infringing international FreeStyle test strips, and those infringing sales are the exclusive focus of his damages

18

calculations.  This Court has repeatedly ruled that the sale of unlawfully diverted international FreeStyle test strips is an unlawful act of infringement under the Lanham Act.  *See, e.g.*, D.E. # 1563 at 22.

## IV.  THE H&H DEFENDANTS ARE NOT ENTITLED TO ANY SETOFFS

As set forth in Abbott's opening brief, the vast majority of courts in this Circuit have held that "a defendant in default may not invoke the benefits of the set-off rule."  *Gov't Employees Ins. Co. v. Sanni-Thomas*, 2015 U.S. Dist. LEXIS 135117, at *3 (E.D.N.Y. Sept. 4, 2015) (internal quotation marks omitted).  The H&H Defendants identify in their brief a small minority of cases in which courts exercised their discretion to apply a setoffs to a defaulting defendant.  *See* H&H Opp'n Br. at 20.  "Most courts in the Second Circuit" have rejected that approach.  *Allstate Ins. Co. v. Yehudian*, 2018 WL 1767873, at *19 (E.D.N.Y. Feb. 15, 2018), *adopted*, 2018 WL 1686106 (E.D.N.Y. Mar. 31, 2018) (internal quotation marks omitted).  And, importantly, none of those cases allowed a setoff for a defendant who defaulted not through inaction, but through active litigation malfeasance.  In fact, in the only case identified by the H&H Defendants in which the defendant intentionally defaulted, the court declined to award a setoff.  *See Lelchook v. Islamic Republic of Iran*, 2020 U.S. Dist. LEXIS 221606, at *36-37 (E.D.N.Y. Nov. 23, 2020).  As set forth in Abbott's opening brief, courts have held it is especially appropriate to deny the benefit of the setoff rule to a defendant whose default is the result of sanctions for fraud on the Court.  Abbott Br. at 17 (citing *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 484 (E.D.N.Y. 2013)); *see also Colon v. City of New York*, 2012 U.S. Dist. LEXIS 28197, at *52-53 (E.D.N.Y, Feb. 9, 2012) (conduct of defaulting defendants in civil rights action was so egregious that "the need to off-set the settlement received

19

from the damages found by the Court is less compelling"), *adopted*, 2012 U.S. Dist. LEXIS

28198 (E.D.N.Y. Feb. 28, 2012).

Even if the Court were to consider a setoff argument, the H&H Defendants have failed to

meet their burden. *See* Abbott Br. at 17. They do not even identify the settlement amount for

most of the defendants for whom they claim entitlement to a setoff. *See* H&H Opp'n Br. at 20-

21. Moreover, the settlements other Defendants entered into with Abbott include sums that go

beyond Abbott's actual damages. They encompass, for example, enhanced damages, punitive

damages, and attorneys' fees and costs. At most a portion of those settlements are attributable to

actual damages, and thus only potentially available as a setoff. *See Getty Petroleum Corp. v.

Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988) (holding setoff was not appropriate

because, among other reasons, the "settlement represented actual and punitive damages as well

as attorney fees and costs"); *see also Barkley v. United Homes*, 848 F. Supp. 2d 248, 267

(E.D.N.Y. 2012) (finding that "a dollar-for-dollar reduction is not appropriate" when settlements

encompassed non-economic harms as well). It is the H&H Defendants' burden to make a

showing of what portion of previous settlements is attributable to overlapping damages, and they

have not attempted to do so. *See RLI Ins. Co. v. King Sha Grp., Inc.*, 598 F. Supp. 2d 438, 447

(S.D.N.Y. 2009); *Chloe v. Queen Bee of Beverly Hills*, 2009 U.S. Dist. LEXIS 84133, at *20

(S.D.N.Y. July 16, 2009) (a defaulting defendant, having failed to show how a recovery against

him would be duplicative of plaintiff's recovery from settling defendants, "may not invoke the

benefits of the set-off rule").

## V.   THE H&H DEFENDANTS OFFER NO OPPOSITION TO ATTORNEYS' FEES AND COSTS

The H&H Defendants do not offer a substantive opposition to Abbott's entitlement to

attorneys' fees and costs. Nor do they take issue with the proposed procedure of referring the

12577892

calculation of attorneys' fees and costs to Judge Bloom pursuant to Federal Rule of Civil Procedure 54(d)(2)(D).  Abbott's request for an order finding this an "exceptional case" and that Abbott is entitled to attorneys' fees and costs should therefore be granted.  *See, e.g.*, *Broadcast Music, Inc. v. My Image Studios LLC*, 2020 U.S. Dist. LEXIS 78476, at *9-12 (S.D.N.Y. May 4, 2020) (granting plaintiffs' request for attorneys' fees where defendant did not oppose the request, and ordering the parties to meet and confer regarding the amount and, failing that, ordering plaintiffs to submit documentation demonstrating their fees and costs); *Landstar Sys. v. Am. Landstar Logistics Corp.*, 2019 U.S. Dist. LEXIS 41043, at *2, 15-16 (E.D.N.Y. Mar. 13, 2019) (finding plaintiff entitled to an award of attorneys' fees and costs where defendant did not oppose request).

## VI.   THE H&H DEFENDANTS OFFER NO OPPOSITION TO PREJUDGMENT INTEREST

The H&H Defendants offer no challenge to the appropriateness of prejudgment interest in this case or to the applicable rate, the compounding of interest, or the date of accrual. Prejudgment interest should therefore be awarded in full.  *See, e.g.*, *Argonaut Ins. Co. v. Manetta Enters.*, 2021 U.S. Dist. LEXIS 10056, at *24-25 (E.D.N.Y. Jan. 19, 2021) (adopting plaintiff's prejudgment interest calculations where "[d]efendant does not challenge [p]laintiff's claim of prejudgment interest"); *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2019 U.S. Dist. LEXIS 13385, at *28 (S.D.N.Y. Jan. 25, 2019) (same), *adopted*, 2019 U.S. Dist. LEXIS 22743, at *3-4 (S.D.N.Y. Feb. 12, 2019); *see also Two Plus Two Publ'g, LLC v. Jacknames.com*, 572 F. App'x 466, 467 (9th Cir. 2014) (finding waiver on appeal where defendant "did not oppose the imposition or calculation of prejudgment interest before the district court"); *Dyson, Inc. v. SharkNinja Operating LLC*, 2019 U.S. Dist. LEXIS 56028, at *67 (N.D. Ill. Mar. 31, 2019)

("[Defendant] does not challenge [plaintiff's] calculation of the prejudgment interest … thus forfeiting any such challenge." (citations omitted)).

## VII.   THERE IS NO NEED FOR AN EVIDENTIARY HEARING

There is no need for an evidentiary hearing where, as here, the Court is already familiar with the record and the relevant facts.  Abbott Br. at 6; *see Fustok v. Conticommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).   The H&H Defendants do not identify any caselaw to the contrary.  Their thinly veiled attempt to further delay judgment on damages should be rejected. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991) (affirming denial of evidentiary hearing, which the district court explained to defense counsel "would just be prolonging this further, which I'm sure your client wishes to do").

*Tax Services of America v. Mitchell* is instructive.  2009 U.S. Dist. LEXIS 16814 (D. Colo. Jan. 13, 2009), *adopted in part*, 2009 U.S. Dist. LEXIS 14196 (D. Colo. Feb. 24, 2009). There, the court held that that in light of the evidence presented and rulings made on summary judgment, there was no need for an evidentiary hearing on damages against the defaulting defendant.  *Id.* at *9.  The *Mitchell* court also found that proceeding without an evidentiary hearing was especially appropriate because of the defendant's discovery misconduct: "Allowing [defendant] to attack the calculation derived by [p]laintiff's expert at this point, after he neglected his discovery responsibilities, would negate the adverse consequences of his discovery misconduct."  *Id.* at *9-10 (quoting *James v. Frame*, 6 F.3d 307, 309-11 (5th Cir. 1993) (affirming damages assessed on default judgment due to party's "persistent practice of delaying tactics and other discovery abuses" and recognizing that ample evidence existed to support such assessment without a hearing)).

12577892

There is no need to reexamine Dr. Bell.  Both the H&H Defendants' current counsel and prior counsel were at Dr. Bell's 10-hour deposition.  Notably, the H&H Defendants do not cite or quote Dr. Bell's deposition testimony ***even once*** to support their argument.  There is simply no merit to the H&H Defendants' current claim that they now want to ask Dr. Bell questions premised on a third-party article in the *Journal of Diabetic Sciences* that was never before raised in this litigation and was published in 2009.  *See* H&H Opp'n Br. at 10-11, 40 n. 19.

This Court, like the court in *Action S.A.*, has been "inundated with affidavits [and] evidence," and "[i]n view of the long and tortuous history of these proceedings," certainly has a "sufficient basis from which to evaluate the fairness of the sum" of Abbott's damages.  951 F.2d at 508.  The Court should decline to order an evidentiary hearing.

## CONCLUSION

For the reasons stated above and in Abbott's opening brief, the Court should enter a damages award against the H&H Defendants and in Abbott's favor of ██████████ in actual damages.  The Court should then treble those actual damages for overall combined damages award of ████████.  The Court should also find this an "exceptional case" and rule that Abbott is entitled to attorneys' fees and costs under 15 U.S.C. § 1117(a) and, at an appropriate time pursuant to Federal Rule of Civil Procedure 54(d)(2)(D), refer the matter to Magistrate Judge Bloom to set a briefing schedule for an inquest, to require the parties to meet and confer regarding an appropriate fees-and-costs award, or to set other means for determining attorneys' fees and costs.  The Court should also issue an award of prejudgment interest at a rate of 9%, compounded annually, measured at the midpoint of the year in which the infringement occurred, and should set a briefing schedule for Abbott to submit a final calculation of such prejudgment interest.

23

Dated: New York, New York
        April 5, 2021

                           Respectfully submitted,

                           PATTERSON BELKNAP WEBB & TYLER LLP

                           By:   */s/ Geoffrey Potter*
                                   Geoffrey Potter
                                   gpotter@pbwt.com
                                   William F. Cavanaugh, Jr.
                                   wfcavanaugh@pbwt.com
                                   Timothy A. Waters
                                   twaters@pbwt.com
                                   R. James Madigan III
                                   jmadigan@pbwt.com

                           1133 Avenue of the Americas
                           New York, NY  10036-6710
                           Tel: (212) 336-2000
                           Fax: (212) 336-2222

                           *Attorneys for Plaintiffs Abbott Laboratories,*
                           *Abbott Diabetes Care Inc., and Abbott*
                           *Diabetes Care Sales Corporation*