UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ABBOTT LABORATORIES, *et. al.*,

                        Plaintiffs,

      -against-

ADELPHIA SUPPLY USA, *et. al.*,

                      Defendants
-----------------------------------------------------------------X

**REPORT & RECOMMENDATION**
**15 CV 5826 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

    Abbott Laboratories, Abbott Diabetes Care Inc., and Abbott Diabetes Care Sales

Corporation (collectively "Abbott") move pursuant to Federal Rule of Civil Procedure 55(b)(2) for

a default judgment and permanent injunction against eighty-five[1] corporate[2] and individual[3]

---

[1] There are eighty-eight defendants listed in Abbott's motion for a default judgment. Although defendants Insight Design, Anthony Kvenvold and Wynne Treanor-Kvenvold are listed in Abbott's motion, ECF No. 2084, these three defendants settled with Abbott after the motion was filed and the Court so ordered the consent judgment on July 11, 2024. ECF No. 2099. Therefore, there are eighty-five defendants in this motion for a default judgment.

[2] The thirty-two defaulted corporate defendants and their corresponding entries of default are: Bay Pharmacy, Inc. (ECF No. 483); Comply USA, Inc. (ECF No. 484); Larke Drugs, Inc. d/b/a 110 Pharmacy & Surgical (ECF No. 485); Overstrockdrugstore.com LLC d/b/a SimpleMed Supply (ECF No. 486); TGIS Pharmacy, Inc. d/b/a Sunrise Family Pharmacy (ECF No. 487); Astute Healthcare Limited d/b/a e-net solution (ECF No. 1841); Carepointe Health Care Corporation (ECF No. 1841); Childrens Clinic Pharmacy (ECF No. 1841); Discover Pharmacy, Inc. (ECF No. 1842); Magchop, LLC (ECF No. 1843); Medex Supply Distributors, Inc. (ECF No. 1843); Medical Discount Services, LLC d/b/a Medical Wholesale Supplies (ECF No. 1843); N A & S Drugs, Inc. d/b/a Falcon Health-Mart Drugs (ECF No. 1843); NPR BioMedical Inc. (ECF No. 1844); QRx Pharmacy and Healthcare Supplies, Inc. d/b/a QRx2 Pharmacy & Medical Supplies, Inc. (ECF No. 1844); Savoy Medical Products, LLC d/b/a Savoy Medical Supply Co. (ECF No. 1844); Total Pharmacy, Inc. d/b/a EZ Pharmacy (ECF No. 1844); Trusted Medical Supply LLC (ECF No. 1845); Valley Liquidation Services, LLC d/b/a VLS, LLC (ECF No. 1845); YS Marketing Inc. f/k/a NuMed Pharma Inc. (ECF No. 1845); Pharmacy Wholesale Services, Inc. (ECF No. 1846); Product Trade Services, Ltd. (ECF No. 1846); Sherwood Prime, Inc. c/b/a Sherwood Medical Supplies (ECF No. 1848); Terrific Care LLC d/b/a Deanwood Nursing (ECF No. 1848); Tri-State Medical Supplies Equip, Corp. (ECF No. 1848); YX Enterprices (sic) Corp. (ECF No. 1848); Delray Marketing, LLC (ECF No. 1849); Globe Wanted a/k/a Globewanted International (ECF No. 1849); Medical Discount Services, Inc. (ECF No. 1849); Priority Care Pharmacy LLC (ECF No. 1849); Globalmed Limited (ECF No. 2027); Absolute Freight Services, Inc. (ECF No. 2062).

[3] The fifty-three individual defaulted defendants and their corresponding entries of default are: Kimberly Paszkiewicz (ECF No. 510); Ofek Messika (ECF No. 511); Rick Evenson (ECF No. 512); Prasad Venigalla (ECF No. 513); Sajid Javed (ECF No. 514); Christopher Aarons (ECF No. 1841); Chaya Braish (ECF No. 1841); Al Gray d/b/a S D'Frog (ECF No. 1841); Clinton Herman (ECF No. 1841); Delwar Kahn (ECF No. 1841); Brian McClelland (ECF No. 1841); David Strathy d/b/a Bargain Pawn (ECF No. 1841); Gregory S. Dixon (ECF No. 1842); Jennifer Herman (ECF No. 1842); Jacquiline Herrera (ECF No. 1842); Diptibahen Patel (ECF No. 1842); James H. Redecopp (ECF No. 1842); Kenneth Ruiz (ECF No. 1842); Guy Savia (ECF No. 1842); Joel Silberstein (ECF No. 1842); Moshe Braish (ECF No. 1843); Marleny Canete (ECF No. 1843); Nabila Chaudhry (ECF No. 1843); Nader Parsian (ECF No. 1843); Luis Santiago (ECF No. 1843); Kimberly Stevens (ECF No. 1843); Thomas Gulik (ECF No. 1844); Patricia Herman (ECF No. 1844); Paritosh Mazumder (ECF No. 1844); Raleigh Paolella-Titschinger (ECF No. 1844); Sayed Raza a/k/a Syed

1

defendants in this trademark diversion action brought under the Lanham Act. Abbott also moves for damages against a number of these defendants.[4] For the following reasons, I respectfully recommend that Abbott's motion for a default judgment as well as a permanent injunction should be granted against all defendants and plaintiff's motion for damages should be granted against the specified defendants. I further recommend that Abbott's motion for prejudgment interest should be denied.

## BACKGROUND

This case has been before the Court for almost nine years. Abbott's complaint, filed on October 5, 2015, named hundreds of defendants, including pharmacies, distributors, importers, and online sellers alleging defendants had infringed Abbott's trademark rights by selling the international version of Abbott's FreeStyle Diabetes test strips in the United States.[5] ECF No. 1. This is Abbott's second motion for a default judgment; the first motion for a default judgment was granted against different defendants. ECF Nos. 1521-1524.[6]

After Abbott filed proof of service of the summons and amended complaint, ECF No. 307, the Clerk of Court noted entry of default against all eighty-five nonresponsive defendants

---

Hasan (ECF No. 1844); Tiffany Riggs (ECF No. 1844); Nigel Huw Bush (ECF No. 1845); Danjal Hansen (ECF No. 1845); Danny Katz (ECF No. 1845); Yusuf Muse a/k/a Yusuf Mohamed (ECF No. 1845); Irany Nir (ECF No. 1845); Douglas Parker Rudderham (ECF No. 1845); Hetasveeben Mahendrabhai Vanapariya (ECF No. 1845); Johnny K. Chan (ECF No. 1846); Qaiser Chaudhry (ECF No. 1846); Nouri Ftiha (ECF No. 1846); Erwin Ganzfried (ECF No. 1846); Mordechai Kritzler (ECF No. 1846); Noemi Ruiz (ECF No. 1846); Tori Goldstein (ECF No. 1848); Albert Krizler (ECF No. 1848); Yuxin Xie (ECF No. 1848); Paul Michael Capper (ECF No. 2078); Brian Mesika (ECF No. 2078); Steve Michaels (ECF No. 2078); Konie Minga (ECF No. 2078); Luis Soto (ECF No. 2078);

[4] Abbott seeks individualized damages against twenty-eight defendants. Abbott's motion seeks damages against thirty-one defendants, however after filing the motion, Abbott and three of the defaulted defendants settled. Therefore Abbott seeks damages against twenty-eight defendants. These defendants are listed at fn. 11, infra.

[5] This is referred to as "gray market goods" and is defined as "goods manufactured under authorization from the trademark holder, legally purchased outside the United States from authorized distributors, and 'imported by persons other than the trademark holder and without the markholder's permission.'" ECF No. 1563 at 10 citing Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 241 (2d Cir. 2009).

[6] I recommended that plaintiff's motion for a default judgment should be granted against H&H Wholesale Services, Inc., Howard Goldman, and Lori Goldman. ECF No. 1545. Judge Amon adopted that Report on March 24, 2020. ECF No. 1613.

beginning with Bay Pharmacy on May 11, 2016, ECF No. 483, and most recently, with defendants Brian Mesika, Paul Michael Capper, Konie Minga, Luis Soto, and Steve Michaels on April 12, 2024. ECF No. 2078. Abbott filed the instant motion for a default judgment on May 10, 2024. ECF No. 2084. The only opposition to the motion was filed by defendants who subsequently settled the case with Abbott. ECF No. 2099.

The Court assumes familiarity with the procedural history of this case, which I recount only in a limited manner to explain this decision. This Report is limited to the facts relevant to Abbott's motion for a default judgment against the eighty-five nonresponsive defendants.[7] The motion was referred to me for a Report and Recommendation in accordance with 28 § 636(b)(1)(B). ECF Order dated May 13, 2024.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara et al., 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right

---

[7] The facts are drawn from the allegations in Abbott's complaint which are taken as true for the purpose of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment).

simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, "[i]t is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997). Even though the well-pleaded allegations are deemed admitted, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC et al. v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010). In other words, "[a]fter default ... it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

## DISCUSSION

### I. Defendants are Liable on Abbott's Lanham Act Claims.

Despite bringing claims against defendants in this lawsuit pursuant to a number of federal and state laws, Abbott's instant motion relies only on its Lanham Act claims. ECF No. 2084-1 at 8. Abbott seeks a default judgment for trademark infringement under Lanham Act Section 32; for false advertising, trade dress infringement, and unfair competition under Lanham Act Section

43(a); for trademark dilution under Lanham Act Section 43(c); and for importation of goods bearing infringing marks under Lanham Act Section 42.[8] Id.

Abbott alleges that defendants "trafficked international FreeStyle test strips in U.S. commerce" and that these international test strips are "non-authentic, infringing goods under the Lanham Act" thus "violating Abbott's rights as a registered markholder." ECF No. 2084-1 at 7. At the case's inception, the Court issued a temporary restraining order and ordered defendants to show cause why a preliminary injunction should not be entered. The Court found that Abbott amply demonstrated success on the merits of its Lanham Act claims. ECF No. 21. Later, when the Court granted a preliminary injunction, the Court found that Abbott had demonstrated it was "likely to succeed on the merits under both the materially-different and the quality-control standards." ECF No. 131 at 15. The Court dismissed Abbott's RICO and unjust enrichment claims, but denied defendants' motion to dismiss Abbott's fraud, import and trademark claims. ECF No. 892. The Court reiterated that the goods are "genuine." Id. at 28. The Court also held "that the sale and distribution of international strips constitutes trademark infringement as a matter of law under both the material differences and quality control standards." ECF No. 1563 at 14.

### a. Defendants are Liable for Trademark Infringement.

Abbott's first claim for relief is federal trademark infringement under Section 32 of the Lanham Act. ECF No. 307, ¶¶ 563-71. A person is liable for trademark infringement under Section 32 of the Lanham Act when that person "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale,

---

[8] Abbott seeks an injunction pursuant to their trademark dilution claims under Lanham Act Section 43(c) (codified at 15 U.S.C. § 1114) and importation of goods bearing infringing marks under Lanham Act Section 42 (codified at 15 U.S.C. § 1124). Abbott alleges that defendants violated § 1124 by illegally importing diverted international FreeStyle test strips and therefore alleges it is entitled to injunctive relief under § 1116. ECF No. 1 at ¶¶ 237-39. However, § 1116 provides for injunctive relief for violations of § 1114 and makes no mention of violations under § 1124. Because I find that Abbott is entitled to injunctive relief pursuant to their Section 43(c) claims, the Court need not consider whether Abbott is also entitled to injunctive relief against defendants for violations under § 1124.

distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a); see RiseandShine Corporation v. PepsiCo, Inc., 41 F.4th 112, 118 (2d Cir. 2022) ("To prevail in a federal trademark infringement claim, a plaintiff 'must demonstrate that … the defendant's actions are likely to cause confusion with [that] mark.'"). "In order to prevail on a trademark infringement claim for registered trademarks, pursuant to 15 U.S.C. § 1114…a plaintiff must establish that (1) it has a valid mark that is entitled to protection under the Lanham Act; and (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale…or advertising of goods or services, (5) without the plaintiff's consent...In addition, the plaintiff must show that defendant's use of that mark is likely to cause confusion…as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [defendant's] goods, services, or commercial activities by plaintiff." 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal quotations and citations omitted).

Abbott's pleading establishes it owns a family of trademarks including trademarks that appear on the packaging of all its blood glucose test strips, ECF No. 307, ¶ 344 (collectively referred to as the "FreeStyle Marks"). Abbott therefore has a valid mark that merits protection under the Lanham Act. This was not disputed at summary judgment. ECF No. 1563 at 10 ("[N]o defendant disputes that Abbott's trademarks merit protection."). Abbott also establishes that defendants used these marks in commerce in connection with their sale of plaintiff's goods without plaintiff's consent.

Abbott demonstrates that defendants' use of the mark is likely to cause consumer confusion. Traditionally, in evaluating the consumer confusion prong, courts in this Circuit have relied on Judge Friendly's multi-factor test set out in Polaroid Corp. v. Polarad Elecs. Corp., 287

F.2d 492, 495 (2d Cir. 1961); see Monbo v. Nathan, 623 F. Supp. 3d 56, 119 (E.D.N.Y. 2022) ("a court should focus on the ultimate question of whether consumers are likely to be confused."). However, as the Court's decision on the parties' motions for summary judgment explained, the Polaroid factors are of limited use in the context of "gray market goods."

Abbott has pled significant material differences between the FreeStyle Test Strips meant to be sold in the United States and those meant to be sold internationally. ECF No. 307, ¶¶ 353-367. Specifically, Abbott alleges that the international boxes do not have a specific National Drug Code number, ¶ 355, they list different bodily test sites to obtain blood drops, ¶ 356, there is no United States based toll-free phone number to call, ¶ 358, the packaging is in different languages, ¶ 359, the international boxes use symbols not approved by the Food and Drug Administration, ¶ 361, there are different units of measurement and temperature scales, ¶ 364-65, international boxes do not have several written warnings that the U.S. boxes do, ¶ 366, and the types of meters that are compatible with the strips are also different, ¶ 367. Therefore, Abbott has demonstrated that sale of these international test strips would likely cause consumer confusion in the United States.

Having established that their mark merits protection and that defendants' use[9] of the mark is likely to cause consumer confusion, Abbott establishes as a matter of law that the sale of its international test strips in the United States is trademark infringement under the Lanham Act. See Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68 (2d Cir. 1987) (affirming judgment and permanent injunction against a Spanish Cabbage Patch doll supplier that had a license permitting distribution of the dolls in Spain, the Canary Islands, Andorra, and Ceuta Melilla, but not in the United States, finding the dolls' Spanish language instructions and papers were materially different than the dolls distributed in the United States).

---

[9] Abbott's allegations regarding each defendant's culpable acts are found, infra, in Section III.

An allegation that a person has sold infringing goods establishes direct liability for trademark infringement. Innovation Ventures, LLC v. Ultimate One Distrib. Corp., 176 F. Supp. 3d 137, 154 (E.D.N.Y. 2016) ("The sale of counterfeit goods is sufficient use to establish liability.") citing El Greco Leather Prods. Co. v. Shoe World, Inc., 806 F.2d 392, 396 (2d Cir. 1986). For the reasons discussed below in Section III, Abbott has sufficiently pled specific liability against the individual defaulting defendants that sold its international test strips in the United States.[10]

**b. Defendants Engaged in Willful Infringement.**

Abbott also seeks to hold defendants liable for willful infringement. ECF No. 2084-1 at 9. In claims brought pursuant to the Lanham Act, the defendants' willfulness is established by their default. Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc., No. 03-CV-2132, 2006 WL 728407, at *5 (S.D.N.Y. Mar. 21, 2006) citing Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003); see also AW Industries, Inc. v. Sleepingwell Mattress Inc., No. 10-cv-4439, 2011 WL 4404029 at *21-22 (E.D.N.Y. Aug. 31, 2011) adopted 2011 WL 4406329 (E.D.N.Y. Sept. 21, 2011); Strippit, Inc. v. Coffee, No. 09-CV-509A, 2009 WL 3644247, at *4 (N.D.N.Y. Oct. 27, 2009) ("default [in a trademark infringement case brought under the Lanham Act] constitutes an admission of the allegation in the complaint that defendant acted at all relevant times willfully and intentionally, with knowledge of plaintiff's trademark rights.").[11] Here, defendants' willful infringement is established by their default and Abbott's well pled allegations.

---

[10] "Abbott chooses to rely solely on its Lanham Act claims" for the purposes of this motion for a default judgment. ECF No. 2084-1. Their complaint pleads additional Lanham Act claims of false advertising, trade dress infringement, and unfair competition under 15 U.S.C. § 1125, trademark dilution under 15 U.S.C. § 1125, and importation of goods bearing infringing marks under 15 U.S.C. § 1124. As Abbott acknowledges "all of its causes of action give rise to overlapping actual damages," an actual damages award "will apply equally to all of Abbott's claims under the Lanham Act." ECF No. 2084-1 at 8. Because all the defaulted defendants are liable for trademark infringement pursuant to 15 U.S.C. § 1114, the Court need not reach Abbott's other Lanham Act claims.

[11] Judge Orenstein's thoughtful analysis was adopted by Judge Gleeson in Century 21 Real Estate LLC v. Bercosa Corp., 666 F. Supp. 2d 274, fn. 10 (E.D.N.Y. 2009). There is a tension between a default constituting an admission

## II. Defendants are Entitled to Permanent Injunctive Relief

A plaintiff is entitled to injunctive relief under the Lanham Act "to prevent the violation of the registrant of a mark…or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). The Court is vested with discretion to issue a permanent injunction, "according to the principles of equity and upon such terms as the court may deem reasonable." Id.; See eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93 (2006). Upon a finding of liability, the Court applies a four-factor test to determine whether the plaintiff has shown:

> (1) [t]hat it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, 547 U.S. at 391; see also Hermes International v. Rothschild, 678 F. Supp. 3d 475, 489 (S.D.N.Y. 2023) (applying the eBay four-factor test and granting plaintiff a permanent injunction in a trademark infringement case brought pursuant to 15 U.S.C. § 1116(a)).

The Court has already granted Abbott a preliminary injunction against defendants; Abbott now seeks to make the injunction permanent against these defendants. ECF Nos. 131-1, 258-1, 268, 423-1, 697, 704, 717,[12] 718, 723, 728. The Court permanently enjoined other defendants in this case and stated:

> The diversion of international strips causes irreparable injury to Abbott's goodwill and reputation that cannot be compensated solely by monetary damages. Defendants have no legitimate interest in illegally diverting international strips into the United States. And the public interest would not be

---

as to willfulness and the principle that a default only establishes liability, not damages. In this case, as in Century 21 Real Estate LLC, the voluminous record includes decisions on prior motions for default judgment and summary judgment, all of which analyze plaintiff's well-pled allegations of willfulness.

[12] Defendants Insight Design, Inc., Anthony Kvenvold, and Wynne Treanor-Kvenvold consented to a permanent injunction by stipulation and Order. ECF No. 2099.

> disserved by enjoining the distribution of a materially different medical device not intended for sale in the United States. ECF No. 1563 at 122-23.

This rationale holds true against the instant defendants who have defaulted in this action. Having found that the four-factor <u>eBay</u> test weighs strongly in favor of entry of a permanent injunction, I recommend that Abbott's request for a permanent injunction against defendants should be granted.[13]

### III. Damages

It is well established that a default constitutes an admission of well-pleaded factual allegations in the complaint, except those relating to damages. <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999); <u>see also</u> <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). On a motion for a default judgment, the plaintiff has the burden to prove the amount

---

[13] Abbott does not seek money damages from twenty-five defendants, but only a permanent injunction. Abbott has properly pled allegations sufficient to demonstrate that a permanent injunction should be entered against these defendants based on the allegations in Abbott's second amended complaint: Larke Drugs, Inc. d/b/a 110 Pharmacy & Surgical and Prasad Venigalla, ECF No. 307, ¶¶ 277, 411, 417, 426; Al Gray d/b/a S D'FROG, id. at ¶ 522; Discover Pharmacy and Nader Parsian, id. at ¶¶ 319, 537; N A & S Drugs d/b/a Falcon Health-Mart Drugs and Diptibahen Patel, id. at ¶¶ 292, 527; Valley Liquidation Services, LLC d/b/a VLS, LLC, Patricia Herman, Clinton Herman and Jennifer Herman, id. at ¶¶ 207-09, 495; Terrific Care LLC d/b/a Deanwood Nursing and Tori Goldstein, id. at ¶¶ 132-33, 458; YX Enterprices Corp. and Yuxin Xie, id. at ¶¶ 135, 455, 459; Astute Healthcare d/b/a e-net solution and Hetasveeben Mahendrabhai Vanapariya, id. at ¶¶ 200, 492; Bay Pharmacy, id. at ¶¶ 397, 415, 524; Brian McClelland, id. at ¶ 507; Christopher Aarons, id. at ¶ 509; Danjal Hansen, id. at ¶ 498; David Strathy, id. at ¶ 485; Total Pharmacy Inc. d/b/a EZ Pharmacy, Nabila Chaudry and Qaiser Chaudhry, id. at ¶¶ 329-30, 541; Jacqueline Herrera, id. at ¶ 494; James H, Redecopp, id. at ¶ 508; Johnny K. Chan, id. at ¶ 511; Kimberly Stevens d/b/a Strips2Cash, id. at ¶¶ 455, 459, Luis Santiago, id. at ¶ 518; Magchop LLC, Kenneth Ruiz, and Noemi Ruis, id. at ¶¶ 112-13, 442, 449; Medex Supply Distributors Inc., Chaya Braish, and Moshe Braish, id. at ¶¶ 296-97, 529; NPR BioMedical Inc. and Paritosh Mazumder, id. at ¶¶ 157, 470-71; YS Marketing Inc. f/k/a NuMed Pharma Inc. and Joel Silberstein, id. at ¶¶ 115, 450; QRx Pharmacy and Healthcare Supplies, Inc, d/b/a QRx2 Pharmacy & Medical Supplies Inc. and Sayed Raza a/k/a Syed Hasan, id. at ¶¶ 327, 540; Raleigh Paolella-Titschinger, id. at ¶ 521; Savoy Medical Products, LLC d/b/a Savoy Medical Supply Co. and Guy Savia, id. at ¶¶ 122, 453; Sherwood Prime, Inc. d/b/a Sherwood Medical Supplies and Nouri Ftiha, id. at ¶¶ 211, 496; Overstockdrugstore.com LLC d/b/a SimpleMed Supply and Rick Evenson, id. at ¶¶ 39, 397, 399, 408, 414; TGIS Pharmacy Inc. d/b/a Sunrise Family Pharmacy and Sajid Javed, id. at ¶¶ 271, 399, 414; Thomas Gulik, id. at ¶ 488; Tiffany Riggs, id. at ¶ 501; Trusted Medical Supply LLC, id. at ¶ 497; Yusuf Muse a/k/a Yusuf Mohamed, id. at ¶ 504; Delwar Kahn, id. at ¶ 304; Marleny Canete, id. at ¶ 162. Therefore, the Court should grant Abbott's motion for a permanent injunction against these defendants.

of damages with a "reasonable probability." Innovation Ventures, LLC, 176 F. Supp. 3d at 162. An evidentiary hearing is not required; rather, in determining damages, the Court may rely on detailed affidavits and other documentary evidence. Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); see also 69 Bloomingdale, LLC v. Coral Graphics, Inc., No. 20-CV-2613, 2021 WL 7830149 (E.D.N.Y. July 14, 2021) (recommending a default judgment under CERCLA without holding an evidentiary hearing and instead determining damages based on affidavits), Report and Recommendation adopted, No. 20-CV-2613, (E.D.N.Y. Aug. 23, 2021).

Prevailing plaintiffs in a Lanham Act case are authorized "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). Actual damages "may include compensation for (1) lost sales or revenue; (2) sales at lower prices; (3) harm to market reputation; or (4) expenditures to prevent, correct, or mitigate consumer confusion." Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc., 80 F.3d 749, 753 (2d Cir. 1996).

Abbott argues it is entitled to a single damages award under its many Lanham Act claims. ECF No. 2084-1 at 15, fn. 5. Despite its entitlement to damages against all of the defaulted defendants, Abbott only seeks damages against twenty-eight[14] of the eighty-five defaulted defendants. ECF No. 2084-1 at 10. Abbott seeks actual damages against these twenty-eight

---

[14] As discussed supra, Abbott seeks damages against thirty-one defendants, however after the instant motion was filed, Abbott settled with three of the defaulted defendants (Insight Design, Inc., Anthony Kvenvold, and Wynne Treanor-Kvenvold); therefore Abbott seeks damages against twenty-eight defendants. The twenty-eight defendants with their corresponding entries of default are: Comply USA, Inc. (ECF No. 484); Kimberly Paszkiewicz (ECF No. 510); Ofek Messika (ECF No. 511); Carepointe Health Care Corporation (ECF No. 1841); Childrens Clinic Pharmacy (ECF No. 1841); Gregory S. Dixon (ECF No. 1842); Medical Discount Services, LLC d/b/a Medical Wholesale Supplies (ECF No. 1843); Nigel Huw Bush (ECF No. 1845); Danny Katz (ECF No. 1845); Irany Nir (ECF No. 1845); Douglas Parker Rudderham (ECF No. 1845); Erwin Ganzfried (ECF No. 1846); Mordechai Kritzler (ECF No. 1846); Pharmacy Wholesale Services, Inc. (ECF No. 1846); Product Trade Services, Ltd. (ECF No. 1846); Albert Krizler (ECF No. 1848); Tri-State Medical Supplies Equip, Corp. (ECF No. 1848); Delray Marketing, LLC (ECF No. 1849); Globe Wanted a/k/a Globewanted International (ECF No. 1849); Medical Discount Services, Inc. (ECF No. 1849); Priority Care Pharmacy LLC (ECF No. 1849); Globalmed Limited (ECF No. 2027); Absolute Freight Services, Inc. (ECF No. 2062). Paul Michael Capper (ECF No. 2078); Brian Mesika (ECF No. 2078); Steve Michaels (ECF No. 2078); Konie Minga (ECF No. 2078); Luis Soto (ECF No. 2078).

defendants based on its lost revenues stating its costs are identical "regardless of whether authentic (U.S. retail) or an infringing (international) box was sold."[15] Id. at 11, fn. 7.

While the number of boxes each defendant sold and whether they were 50-count or 100-count strip boxes differs by defendant, the formula for plaintiff's calculation of damages against each defendant is the same. Abbott states that each sale of an international box caused it to lose the sale of an equivalent U.S. box. The formula uses the U.S. wholesale price that Abbott would have received had the U.S. box been sold. This methodology which is supported by Abbott's expert, Dr. Gregory K. Bell, was already employed and accepted by the Court. Id. at 11-12.

At the inquest on Abbott's first motion for a default judgment, the Court found that Abbott had satisfied its burden to prove actual damages based on its lost revenue theory. ECF No. 1708 at 6. I likewise find that Abbott has satisfied its burden to prove actual damages here. The instant record supports an award of damages against the defaulted defendants based on Abbott's lost revenue theory. As to the differences between the defendants, Abbott's specific allegations support its calculation of damages against each defaulted defendant.

### a. Specific Damages Against Defendants.

#### i. *Carepointe Health Care Corporation and Gregory S. Dixon*

Abbott's amended complaint alleges that Carepointe Health Care Corporation purchased and diverted international FreeStyle test strips from Pharmacy Wholesale Services. ECF No. 307, ¶ 464. Abbott further alleges that Gregory S. Dixon is a principal of Carepointe and is a "moving, conscious, active force" behind Carepointe's unlawful conduct. Id., ¶ 146. Abbott's instant motion

---

[15] Abbott's basic theory of lost revenue is that for every infringing international box sold, Abbott lost a sale of a domestic box. ECF No. 1708 at 6. Abbott proved that its manufacturing costs are fixed and identical whether it produces an international or domestic box. See ECF No. 1708 at 14 ("[T]he evidence supports an entirely reasonable basis on which to conclude that but for the H&H defendants' infringing sales of international strips, Abbott would have instead sold a box of domestic strips each time.")

alleges that Carepointe defendants trafficked[16] 2,356 50-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 33. The business records for these transactions are attached as Exhibit B. ECF No. 2084-5. A list of transactions of these 2,356 boxes and the corresponding 50-count boxes is attached as Exhibit A and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-4. Abbott is entitled to $73,840.38 in actual damages from these transactions. Id.

### ii.  Children's Clinic Pharmacy

Abbott's amended complaint alleges that Children's Clinic Pharmacy purchased and diverted international FreeStyle test strips from Pharmacy Wholesale Services and the H&H defendants. ECF No. 307, ¶ 465. Abbott's instant motion alleges that Children's Clinic Pharmacy trafficked 2,194 50-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 34. The business records for these transactions are attached as Exhibit B. ECF No. 2084-5. A list of transactions of these 2,194 boxes and the corresponding 50-count boxes is attached as Exhibit C and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-6. Abbott is entitled to $77,035.48 in actual damages from these transactions. Id.

### iii.  Delray Marketing, LLC and Steve Michaels

Abbott's amended complaint alleges that Delray Marketing, LLC purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 436. Abbott further alleges that Steve Michaels is a principal of Delray and is a "moving, conscious, active force" behind Delray's unlawful conduct. Id., ¶ 89. Abbott's instant motion alleges that the Delray defendants trafficked 543 50-count boxes and 2,905 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-

---

[16] "Trafficked" means participated in the importing, buying, selling, and distributing of counterfeit international test strips not meant for use in the United States.

1 at 35. The business records for these transactions are attached as Exhibit E. ECF No. 2084-8. A list of transactions of these 543 50-count boxes and 2,905 100-count boxes is attached as Exhibit D and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-7. Abbott is entitled to $319,948.19 in actual damages from these transactions. Id.

> #### iv. *Globalmed Limited a/k/a Globalmed Pharmaceutical Wholesaler and Paul Michael Capper*

Abbott's amended complaint alleges that Globalmed Limited purchased and diverted international FreeStyle test strips. ECF No. 307, ¶¶ 480-81. Abbott further alleges that Paul Michael Capper is a principal of Globalmed and is a "moving, conscious, active force" behind Globalmed's unlawful conduct. Id., ¶¶ 178-79. Abbott's instant motion alleges that the Globalmed defendants trafficked 366,283 50-count boxes and 6,071 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 35-36. The business records for these transactions are attached as exhibits P112-113, P515, P252-53 and P517 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 366,283 50-count boxes and 6,071 100-count boxes and the corresponding damages calculation is attached as Exhibit F and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-9. Abbott is entitled to $15,882,626.79 in actual damages from these transactions. Id.

> #### v. *Globe Wanted a/k/a Globewanted International*

Abbott's amended complaint alleges that Globe Wanted a/k/a Globewanted International purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 438. Abbott's instant motion alleges that Globe Wanted trafficked 2 50-count boxes and 5,949 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 36-37. The business records for these transactions are attached as exhibits P112-113 (indexed at ECF No. 1417). ECF No. 2084-8. A list

of transactions of these boxes and the corresponding damages calculation is attached as Exhibit G and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-10. Abbott is entitled to $493,662.59 in actual damages from these transactions. Id.

### vi. Pharmacy Wholesale Services Inc. and Douglas Parker Rudderham

Abbott's amended complaint alleges that Pharmacy Wholesale Services Inc. a/k/a Professional Pharmacy Wholesale Services Inc. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶¶ 461, 465, 531. Abbott further alleges that Douglas Parker Rudderham is a principal of Pharmacy Wholesale Services Inc. and is a "moving, conscious, active force" behind Pharmacy Wholesale Services Inc.'s unlawful conduct. Id., ¶ 422. Abbott's instant motion alleges that the Pharmacy Wholesale Services Inc. trafficked 29,316 50-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 37-38. The business records for these transactions are attached as Exhibit B. ECF No. 2084-5. A list of transactions of these 29,316 50-count boxes and the corresponding damages calculation is attached as Exhibit H and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-11. Abbott is entitled to $1,044,978.68 in actual damages from these transactions. Id.

### vii. Tri-State Medical Supplies Equip. Corp., Erwin Ganzfried, Mordechai Kritzler and Albert Kritzler

Abbott's amended complaint alleges that Tri-State Medical Supplies Equip. Corp. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 421. Abbott further alleges that Erwin Ganzfried, Mordechai Kritzler and Albert Kritzler are principals of Tri-State Medical Supplies Equip. Corp. and are "moving, conscious, active forces" behind Tri-State Medical Supplies Equip. Corp.'s unlawful conduct. Id., ¶¶ 49-51. Abbott's instant motion alleges that the Tri-State defendants trafficked 25,965 50-count boxes of FreeStyle test strips in the United

States. ECF No. 2084-1 at 38. The business records for these transactions are attached as Exhibit J. ECF No. 2084-13. A list of transactions of these 25,965 50-count boxes and the corresponding damages calculation is attached as Exhibit I and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-12. Abbott is entitled to $1,087,425.48 in actual damages from these transactions.[17] Id.

> ### viii. Medical Discount Services, Inc., Medical Discount Services LLC, d/b/a Medical Wholesale Supplies, and Brian Mesika

Abbott's amended complaint alleges that Medical Discount Services, Inc. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 520, 423, 440. Abbott further alleges that Brian Mesika is a principal of Medical Discount Services, Inc. and is a "moving, conscious, active force" behind Medical Discount Services, Inc.'s unlawful conduct. Id., ¶ 55. Abbott's instant motion alleges that the Medical Discount Services, Inc. trafficked 26,104 50-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 39-40. The business records for these transactions are attached as exhibits P112-113, P454 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 26,104 50-count boxes and the corresponding damages calculation is attached as Exhibit K and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-14. Abbott is entitled to $1,039,066.07 in actual damages from these transactions.[18] Id.

> ### ix. Priority Care Pharmacy and Konie Minga

Abbott's amended complaint alleges that Priority Care Pharmacy LLC a/k/a Priority Healthcare Corp. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 442, 467. Abbott further alleges that Konie Minga is a principal of Priority Care Pharmacy LLC and is

---

[17] Abbott's motion alleges the damages as $1,087,425.49, however the Court's calculation is $1,087,425.48.
[18] Abbott's motion alleges the damages as $1,039,066.10, however the Court's calculation is $1,039,066.07.

a "moving, conscious, active force" behind Priority Care Pharmacy LLC's unlawful conduct. Id., ¶ 150. Abbott's instant motion alleges that the Priority Care Pharmacy LLC trafficked 2,984 50-count boxes and 200 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 40-41. The business records for these transactions are attached as exhibits P112-113, P454 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 2,984 50-count boxes and 200 100-count boxes and the corresponding damages calculation is attached as Exhibit M and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-16. Abbott is entitled to $145,379.53 in actual damages from these transactions.[19] Id.

    *x.  Absolute Freight Services, Inc. and Luis Soto*

   Abbott's amended complaint alleges that Absolute Freight Services, Inc. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 481. Abbott further alleges that Luis Soto is a principal of Absolute Freight Services, Inc. and is a "moving, conscious, active force" behind Absolute Freight Services, Inc.'s unlawful conduct. Id., ¶ 249. Abbott's instant motion alleges that the Absolute Freight Services, Inc. trafficked 131,442 50-count boxes and 1,557 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 41. The business records for these transactions are attached as exhibits P515 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 131,442 50-count boxes and 1,557 100-count boxes and the corresponding damages calculation is attached as Exhibit N and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-17. Abbott is entitled to $5,702,638.54 in actual damages from these transactions. Id.

    *xi.  Danny Katz*

---

[19] Abbott's motion alleges the damages as $145,379.54, however the Court's calculation is $145,379.53.

Abbott's amended complaint alleges that Danny Katz purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 484. Abbott's instant motion alleges that the Katz trafficked 349 50-count boxes and 24 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 42. The business records for these transactions are attached as Exhibit P. ECF No. 2084-19. A list of transactions of these 349 50-count boxes and 24 100-count boxes and the corresponding damages calculation is attached as Exhibit O and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-18. Abbott is entitled to $20,321.80 in actual damages from these transactions.[20] Id.

### xii.   Comply USA Inc., Irany Nir, Ofek Messika, and Kimberly Paszkiewicz

Abbott's amended complaint alleges that Comply USA Inc. purchased and diverted international FreeStyle test strips. ECF No. 307, ¶ 427. Abbott further alleges that Irany Nir, Ofek Messika, and Kimberly Paskiewicz are principals of Comply USA Inc. and are "moving, conscious, active forces" behind Comply USA Inc.'s unlawful conduct. Id., ¶¶ 65-67. Abbott's instant motion alleges that the Comply USA Inc. trafficked 8,329 50-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 43-44. The business records for these transactions are attached as exhibits P278-81, P252-53, P517 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 8,329 50-count boxes and the corresponding damages calculation is attached as Exhibit S and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-22. Abbott is entitled to $332,983.08 in actual damages from these transactions. Id.

### xiii.   Product Trade Services, Ltd. and Nigel Huw Bush

Abbott's amended complaint alleges that Product Trade Services, Ltd. purchased and

---

[20] Abbott's motion alleges the damages as $20,321.81, however the Court's calculation is $20,321.80.

diverted international FreeStyle test strips. ECF No. 307, ¶ 482. Abbott further alleges that Nigel Huw Bush is a principal of Product Trade Services, Ltd. and is a "moving, conscious, active force" behind Product Trade Services, Ltd.'s unlawful conduct. Id., ¶ 181. Abbott's instant motion alleges that Product Trade Services, Ltd. trafficked 17,628 50-count boxes and 800 100-count boxes of FreeStyle test strips in the United States. ECF No. 2084-1 at 44-45. The business records for these transactions are attached as exhibits P252-253, P517 (indexed at ECF No. 1417). ECF No. 2084-8. A list of transactions of these 17,628 50-count boxes and 800 100-count boxes and the corresponding damages calculation is attached as Exhibit U and includes the U.S. wholesale price, the maximum international unit price as well as the damages per box. ECF No. 2084-17. Abbott is entitled to $803,100.90 in actual damages from these transactions.[21] Id.

### a. A Damages Enhancement is Warranted.

Abbott seeks double damages against defendants under Section 32 of the Lanham Act, which states, "[i]n assessing damages [for violation of a trademark], the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). This enhancement was meant "to enable courts to redress fully plaintiffs whose actual damages were difficult to prove." Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 110 (2d Cir. 1988). While enhancement of damages is specifically provided for by the Lanham Act, Congress "preclude[d] punitive damages as a remedy for trademark infringement." Id. In other words, Congress provided damages enhancement under the Lanham Act to compensate a party, not to punish a bad actor.

Abbott proffers that courts in this district have awarded treble damages under the Lanham Act where the infringer engaged in willful behavior, where plaintiff's damages calculation is

---

[21] Abbott's motion alleges the damages as $803,100.89, however the Court's calculation is $803,100.90.

conservative, and where deterrence is needed. See Ortho Sleep Products, LLC v. Dreamy Mattress Corp., No. 11-CV-6049, 2012 WL 6621288, at *10 (E.D.N.Y. Aug. 29, 2012) ("Courts have held that treble damages may be appropriate where, as here, the infringer has engaged in willful behavior.") citing Tanning Research Laboratories, Inc. v. Worldwide Import & Export Corp., 803 F. Supp. 606, 610 (E.D.N.Y. 1992); AW Industries, Inc. v. Sleepingwell Mattress Inc., No. 10-CV-4439, 2011 WL 4404029 (E.D.N.Y. Aug. 31, 2011) (awarding treble damages where damage estimates were "on the conservative side" and defendants' behavior was willful); Merck Eprova AG v. Brookstone Pharmaceuticals, LLC, 920 F. Supp. 2d 404, 431 (S.D.N.Y. 2013) (finding that it was appropriate to treble the monetary award to compensate plaintiff and provide deterrence).

Abbott maintains that its expert Dr. Bell's calculations of its damages is conservative. ECF No. 2084-1 at 16. Specifically, Dr. Bell applied a "2% prompt-payment discount and an inventory management fee for each U.S. wholesale price" and his assumptions had the effect of "either lowering the U.S. price or raising the international price [so that errors in his assumptions would be in favor of the defendants]." Id. at 15-16. Dr. Bell additionally made conservative assumptions where the box size was not provided for a particular defendant and where a purchase date was missing.[22] Id. at 17. Plaintiff seeks damages for defendants' trafficking of over 600,000 infringing boxes. Dr. Bell's conservative assumptions have a large impact across such a large quantity of infringing boxes. Indeed, the Court already recognized "the record plainly contains support for Abbott's contention that Dr. Bell's actual damages calculation utilized several conservative assumptions that had the effect of understating Abbott's damages calculation." ECF No. 1708 at 17.

Abbott has properly established that there is a basis for an enhancement of damages given

---

[22] The purchase date impacts the ultimate damages calculation because the U.S. approved wholesale price changed depending on the month.

Dr. Bell's conservative estimates of the damages as well as the damage to Abbott's goodwill. <u>See</u> ECF No. 1708 at 18 ("Enhancements that compensate for lost good will have previously been awarded, and some enhancement is supported here by that loss, especially given that Abbott's loss of good will is both non-speculative and a factual allegation of harm pleaded in the operative complaint, which is deemed admitted upon default (internal citation omitted)."). However, given that Dr. Bell's estimates will result in an award to plaintiff of over $27 million in damages against these defendants, a treble damages award would engender a "lottery level windfall" to plaintiff. This is not necessary to deter future bad acts. Therefore, the Court should grant Abbott's motion for double (not treble) damages.

### b. Prejudgment Interest Should Not be Awarded

Awarding prejudgment interest is "within the discretion of the trial court and is normally reserved for 'exceptional' cases." <u>4 Pillar Dynasty, LLC v. New York & Co., Inc.</u>, 933 F.3d 202, 215 (2d. Cir. 2019) (citation omitted). The district courts have wide latitude to determine what is an exceptional case under the Lanham Act. Courts "may consider factors including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." <u>Id.</u> at 215. (internal citations omitted) <u>citing</u> <u>Octane Fitness, LLC v .ICON Health & Fitness, Inc.</u>, 572 U.S. 545 (2014).[23] The case here against the defaulting defendants is not exceptional.

Willful infringement by itself does not entitle a plaintiff to recover attorney's fees. <u>BBK Tobacco & Foods, LLP v. Galaxy VI Corp.</u>, 408 F. Supp. 3d 508, 522 (S.D.N.Y. 2019). Indeed,

---

[23] Although <u>Octane Fitness, LLC</u>, discusses an attorney fee shifting provision in the Patent Act, it is based on the appropriate standard. In the Second Circuit, "our case law draws no distinction between the showing required to support such an award [of prejudgment interest] and that required to justify an award of attorney's fees." <u>4 Pillar Dynasty, LLC</u>, 933 F.3d at 216. What makes a case "exceptional" under the Patent Act considers the same criteria as the provision in the Lanham Act. <u>Id.</u> at 215.

"courts in this Circuit have interpreted <u>Octane</u> 'to mean that default judgment does not necessarily make a case 'exceptional.''" <u>Sirius XM Radio Inc. v. Aura Multimedia Corp. et al.</u>, No. 21-cv-6963, 2024 WL 1756854 (S.D.N.Y. Apr. 6, 2024) <u>report and recommendation adopted by</u> 2024 WL 1739905 (collecting cases).

Abbott relies heavily on the notion that their cases against the defaulted defendants should be deemed exceptional because of defendants' willful infringement. ECF No. 2084-1 at 31-32. However, here, unlike in Abbott's case against the H&H defendants, there is no allegation, nor record support, that any of these defendants engaged in "substantial litigation misconduct." <u>Id.</u> at *7. In fact, most of these defaulting defendants "could not have litigated unreasonably because [they] did not litigate at all." <u>Sirius XM Radio Inc. v. Aura Multimedia Corporation et al.</u>, No. 21-cv-6963, 2024 WL 1756854, at *7 (E.D.N.Y. Apr. 6, 2024) <u>citing</u> <u>Linhope Int'l Ltd. v. Jianqing Ltd.</u>, No. 21-cv-00871, 2023 WL 2473007, at *6 (D. Conn. Mar. 13, 2023). As recently noted, "most post-<u>Octane</u> cases awarding fees continue to involve substantial litigation misconduct." <u>Sirius XM Radio Inc.</u>, 2024 WL 1756854, at *7, <u>citing</u> <u>Hockeyline, Inc. v. STATS LLC</u>, No. 13-cv-1446, 2017 WL 1743022, at *5 (S.D.N.Y. Apr. 27, 2017). These defendants' cases are not "special, extraordinary, or unusual." <u>4 Pillar Dynasty, LLC</u> 933 F.3d 215. They are not exceptional cases. As there is no basis to award prejudgment interest here, Abbott's motion for prejudgment interest should be denied.

## CONCLUSION

Accordingly, I respectfully recommend that Abbott's motion under Fed. R. Civ. P. 55(b) should be granted, except plaintiff's request for prejudgment interest should be denied. The Court

should enter a permanent injunction against the defaulting defendants.[24] Plaintiff's motion for a default judgment should be granted and plaintiff should be awarded damages against defendants as follows:[25]

- Carepointe Health Care Corporation and Gregory S. Dixon: $147,680.76;

- Children's Clinic Pharmacy: $154,070.96;

- Delray Marketing, LLC and Steve Michaels: $639,896.38;

- Globalmed Limited a/k/a Globalmed Pharmaceutical Wholesaler and Paul Michael Capper: $31,765,253.58;

- Globe Wanted a/k/a Globewanted International: $987,325.18;

- Pharmacy Wholesale Services Inc. and Douglas Parker Rudderham: $2,089,957.36;

- Tri-State Medical Supplies Equip. Corp., Erwin Ganzfried, Mordechai Kritzler and Albert Kritzler: $2,174,850.96;

- Medical Discount Services, Inc., Medical Discount Services LLC d/b/a Medical Wholesale Supplies, and Brian Mesika: $2,078,132.14;

- Priority Care Pharmacy and Konie Minga: $290,759.06;

- Absolute Freight Services, Inc. and Luis Soto: $11,405,277.08;

- Danny Katz: $40,643.60;

- Comply USA Inc., Irany Nir, Ofek Messika, and Kimberly Paszkiewicz: $665,966.16; and

- Product Trade Services, Ltd. and Nigel Huw Bush: $1,606,201.80.

---

[24] Abbott already obtained a permanent injunction against the following defendants named in the instant motion: Absolute Freight Services, Inc., Globalmed Limited a/k/a Globalmed Pharmaceutical Wholesaler, Konie Minga, Luis Soto, Paul Michael Capper, and Priority Care Pharmacy, LLC. ECF No. 1577-1.
[25] These totals reflect the enhancement doubling the actual damages.

Abbott is hereby ordered to serve a copy of this Report on defendants at their last known addresses and to file proof of service with the Court forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated:  August 22, 2024
       Brooklyn, New York